# Exhibit 3

## Part 2

Wagner could amend to allege that: 1) the spams and the *OnDemand Research.com* website include references to "completing sponsor offers" such as buying or signing up for commercial offers, and 2) in addition to taking a survey, a person must also give Spire Vision demographic and behavioral data.

**D.   Wagner's Cause of Action For B&P Code § 17529.5 is Not Preempted by the CAN-SPAM Act**

Spammers frequently argue that the federal CAN-SPAM Act, 15 U.S.C. § 7701 *et seq*., preempts California's anti-spam law except for common-law fraud.  Spammers do not have an inherent interest in the doctrine of preemption, but they always argue preemption because the CAN-SPAM Act does not let spam recipients (consumers or businesses) sue.  15 U.S.C. § 7706.  In other words, spammers seek to avoid plaintiffs' arguments on the merits by stopping plaintiffs on the basis of standing.

Relying exclusively on *federal* cases from the Ninth and Fourth Circuits, Defendants claim that the federal CAN-SPAM Act preempts state anti-spam laws (such as B&P Code § 17529.5) except for claims of common-law fraud.  Defendants may wish that spam recipients had to meet the heightened pleading standard associated with fraud, but there is no authority for this proposition in the case law or in the plain language of the CAN-SPAM Act's exception to preemption provision, which refers to *falsity or deception* in (b)(1), not *fraud*.

> (1) In general. This Act supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, *except* to the extent that any such statute, regulation, or rule prohibits *falsity or deception* in any portion of a commercial electronic mail message or information attached thereto.
> (2) State law not specific to electronic mail. This Act shall not be construed to preempt the applicability of –
>    (A) State laws that are not specific to electronic mail, including State trespass, contract, or tort law; or
>    (B) other State laws to the extent that those laws relate to acts of *fraud* or computer crime.

15 U.S.C. § 7707(b) (emphasis added).

Spire Vision's claim that "As Wagner's attorneys – Daniel Balsam and Timothy Walton – well know, the CAN-SPAM Act explicitly preempts all complaints about unsolicited commercial email that do not allege fraud or damages," Demurrer at 1:22-23 – a claim based on a single unpublished ruling in a federal case that it not even final – is false.  Balsam and Walton know nothing of the sort; in fact, they obtained a ruling from a California Court of Appeal that B&P Code § 17529.5 is *not* preempted.  Balsam Decl. at ¶ 7.

*1.   Congress Preempted State Anti-Spam Laws Only as to Truthful Spams*

In the interest of a creating a national uniform standard for commercial email, Congress chose to exclusively occupy the field of *truthful* commercial email.  But Congress deliberately limited the scope of federal preemption, expressly authorizing the states to define and regulate *false or deceptive* spam. 15 U.S.C. § 7707(b)(1).  "If Congress had intended to completely displace all state regulation of commercial email, it certainly could have done so in CAN-SPAM.  It could have provided for no exceptions.  But, it did not do so."

7

*Free Speech Coalition Inc. v. Shurtleff*, No. 2:05CV949DAK, 2007 U.S. Dist. LEXIS 21556 at *29-30 (D. Utah Mar. 23, 2007) (order on motions to dismiss, to strike, and for preliminary injunction).

### 2.  The Exception to Preemption Cannot Depend on Common-Law Fraud, Because Such Claims Were Never Preempted in the First Place

The preemption clause at issue deals only with *positive enactments* ("statute, regulation or rule"), not common law. *See Sprietsma v. Mercury Marine*, 537 U.S. 51, 63 (2002). The CAN-SPAM Act preempts certain positive enactments and then saves a subcategory of those laws. 15 U.S.C. § 7707(b)(1). Thus, there is no need to "save" common-law fraud claims, because *they were never preempted in the first place*. To give the savings clause meaning, it should be interpreted to cover state laws prohibiting falsity or deception *other* than common-law claims. *Asis Internet Services v. VistaPrint USA Inc.*, 617 F. Supp. 2d 982, 993 (N.D. Cal. 2009) (order re: motion to dismiss). Significantly, Congress did not use the word "fraud" to describe these saved claims, but rather "falsity," a word with a well-known legal meaning, broader than common-law fraud.

### 3.  "Falsity" Does Not Mean "Fraud," and "Deception" Does Not Mean "Fraud"

Congress' Use of "Falsity" and "Fraud" So Close Together Indicates that Congress Meant Two Different Things. Congress used the words "falsity or deception" in the exception to preemption provision applicable to state laws regulating email, 15 U.S.C. § 7707(b)(1), but used the word "fraud" immediately afterwards in § 7707(b)(2)(B) to address laws not specific to email. Different terms, so close together, indicate that Congress did *not* intend that state anti-spam laws survive federal preemption only when a plaintiff alleges common-law fraud (i.e., reliance and actual damages). *See e.g. Asis Internet Services v. ConsumerBargain Giveaways LLC et al*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009) (order re Rule 12 motion). *If* Congress had intended (b)(1) to mean *fraud*, then (b)(1) would be superfluous, because it would be subsumed by (b)(2)(B).

The Disjunctive "Or" Demonstrates that the Exception to Preemption Cannot Depend on Fraud. As the Senate Report accompanying the CAN-SPAM Act explained, in the interest of creating a national standard for truthful commercial email,

> The legislation would preempt State and local statutes, regulations, and rules that expressly regulate the use of e-mail to send commercial messages except for statutes, regulations, or rules that target fraud *or deception* in such e-mail. Thus, a State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted. By contrast, a state law prohibiting fraudulent *or deceptive* headers, subject lines, or content in a commercial e-mail would not be preempted.

Senate Report No. 108-102 at *21 (2003) (emphasis added). The repeated use of "*or deceptive*" confirms that: 1) *deception* cannot mean *fraud*, for if it did, then the phrase "fraudulent or deceptive" itself would be redundant, and 2) Congress did not intend that the exception-to-preemption depends *only* upon a finding of fraud; deception is sufficient to avoid preemption.

Congress was Aware of State Anti-Spam Laws Prohibiting "False" Spams When it Enacted the CAN-SPAM Act, and Chose Not to Use "Fraud" in the Exception to Preemption Provision. *Hoang v. Reunion.com Inc.* noted that Congress was aware that many states prohibited false and deceptive spams *without* requiring reliance or actual damages, and still chose to preempt state anti-spam laws except for *falsity*, not fraud.

> A review of the state laws in effect at the time Congress enacted CAN-SPAM provides further support for the above-discussed interpretation of CAN-SPAM's preemption provision. Historically, many states have enacted consumer protection laws prohibiting the dissemination of false or misleading statements made in connection with the advertising of products or services, and *have not required the plaintiff to prove actual reliance on the false or misleading statement*, but, rather, to prove that the false or misleading statement is, objectively, the type of statement likely to deceive a reasonable consumer. . . .

> Consequently, this Court will presume Congress was aware of such [state] statutes [already in effect prior to the CAN-SPAM Act] and the absence of any language therein requiring a showing of actual reliance, and finds the legislative history identified in *Gordon* . . . *is properly understood as exempting from preemption statutes such as § 17529.5.* . . .

No. C-08-3518 MMC, 2010 U.S. Dist. LEXIS 34466 at *17-19 (N.D. Cal. Mar. 31, 2010) (emphasis added). *Hypertouch* came to the same conclusion. 192 Cal. App. 4th at 828. Thus, if Congress really wanted to preempt state laws except for *fraud*, it could have simply used the word "fraud" in the exception to preemption provision. But it did not do so.

### 4. California Law Distinguishes "Deceit" and "Fraudulent Deceit"

Even *if* Congress meant *fraud* instead of *falsity*, Congress cannot write laws for the states. It is well established under California law that in the context of Business & Professions Code § 17500 actions, "fraud" does not mean the traditional common law tort (including reliance), but rather the *likelihood of deception.* "Allegations of actual deception, reasonable reliance, and damage are unnecessary." *Day v. AT&T Corp.,* 63 Cal. App. 4th 325, 332 (1st Dist. 1998). And,

> The evils of deceptive advertising cannot be reached effectively if legislation to that end is interpreted to require proof of actual reliance upon a false statement knowingly made, as in a common law action in deceit.

*Ford Dealers Assoc. v. Dept. of Motor Vehicles,* 32 Cal. 3d 347, 359 (1982).

Additionally, under California law, "deception" does not mean "fraud." Civil Code § 1710 defines "deceit" and § 1709 defines "fraudulent deceit" Not only is there no mention of reliance in Section 1710's definition of "deceit," but the fact that there are *separate* code sections for "deceit" and "fraudulent deceit" indicates that "deceit" on its own does *not* require the elements of common-law fraud, including reliance.

### 5. Preemption is Disfavored, Especially as to Areas Traditionally Regulated by States

As the U.S. Supreme Court has held, "[W]hen the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Altria Group Inc. v. Good,* 555 U.S. 70, 77 (2008) (citation omitted). And, "Where … the field which Congress is said to have

9

1   pre-empted includes areas that have 'been traditionally occupied by the States,' congressional intent to

2   supersede state laws must be 'clear and manifest.'" *Jevne v. Superior Court*, 35 Cal. 4th 935, 949 (2005).

3   Advertising is traditionally an area of state regulation.

> [B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In all pre-emption cases, and particularly in those in which Congress has "legislated … in a field which the States have traditionally occupied," we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." We apply this presumption to the *existence* as well as the *scope* of preemption. . . . There can be no doubt that the presumption applies with particular force here. As the Court of Appeal acknowledged here, "[c]onsumer protection laws such as the [UCL], false advertising law, and CLRA, are within the states' historic police powers and therefore are subject to the presumption against preemption."

11  *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1088 (2008). Therefore, there is a presumption *against*

12  preemption of laws prohibiting deceptive advertising… laws such as B&P Code § 17529.5.

### 6. Omega World Travel v. Mummagraphics *is Distinguishable on the Facts and Does Not Stand for the Proposition of Preemption Except for Fraud*

15  Defendants cite *Omega World Travel Inc. v. Mummagraphics,* 469 F.3d. 348 (4th Cir. 2006),

16  addressing preemption of Oklahoma's anti-spam law, to support their position. But in the *Omega* spams, the

17  only alleged falsity was immaterial technical errors that most email users would never see, arising from a

18  software configuration error. The *Omega* opinion repeatedly referred to "immaterial error," "immaterial

19  misrepresentations," "bare error," and "an isolated error," and the court noted that state laws providing a cause

20  of action for "bare error" in commercial email would frustrate Congress' goal of a "national standard." *Id.* at

21  353-55, 359. There were no allegations that the *Omega* spams had misleading Subject Lines, misrepresented

22  From Names, or misleading and untraceable domain name registrations, as Wagner alleges here. Unlike the

23  instant spams, which Spire Vision sent from domain names registered to untraceable random word pairings and

24  boxes at The UPS Store in other states, "The [Omega] e-mails at issue were chock full of methods to 'identify,

25  locate, or respond to' the sender or to 'investigate [an] alleged violation' of the CAN-SPAM Act." *Id.* at 357.

26  *Omega* does *not* state that the CAN-SPAM Act categorically preempts all state anti-spam laws except

27  for common-law fraud. The *Omega* court only considered the claims of a particular plaintiff suing under

28  Oklahoma law, and found that *his* claims were preempted because they were based on immaterial falsity and

29  technical error. *Id.* at 353-55, 359. In fact, *Omega*'s facts and holding are so narrow that the District Court in

30  Maryland – *part of the Fourth Circuit* – did not follow *Omega* when it held that CAN-SPAM did *not* preempt

31  Maryland's anti-spam law. *Beyond Systems v. Keynetics Inc.*, No. PJM 04-686 (D. Md. Mar. 26, 2007) (order

32  denying defendant's motion for other relief under FRCP 7 and second renewed motion to dismiss for lack of

33  personal jurisdiction). Thus, *Omega* cannot have general applicability.

**10**

### 7. **Gordon v. Virtumundo *is Distinguishable and Does Not Support the Assertion that the CAN-SPAM Act Preempts State Laws Except for Fraud***

Wagner does not disagree with the Ninth Circuit's holding in *Gordon*. In fact, Wagner embraces *Gordon*, noting that three out of four post-*Gordon* rulings in the Northern District of California and – far more importantly – two out of two rulings in California Courts of Appeal confirm that the exception to preemption is based on *falsity*, without requiring a plaintiff to plead reliance and damages.

To the extent that Ninth Circuit authority may be persuasive, Wagner notes that Defendants quote *Gordon* incompletely and out of context. The court said that "the siren song of substantial statutory damages would entice opportunistic plaintiffs to join the fray, which would lead to undesirable results," Demurrer at 5:9-11, but the very next sentence, which Defendants conveniently omitted from their Demurrer, reads:

> While Congress did not intend that standing be limited to fee-for-service [Internet Service Provider] operations, we think it did intend to exclude plaintiffs who, despite certain identifying characteristics, did not provide the actual, *bona fide* service of a legitimate operation.

575 F.3d at 1050. Thus, the "opportunistic plaintiffs" to whom the court referred were really individuals with unclean hands, pretending to be Internet Service Providers, who were actively seeking spam. The Ninth Circuit found that Jim Gordon was not a true ISP. Gordon and his "clients" deliberately set up "spam traps" and opted in to various online promotions. Gordon would then threaten various advertisers with anti-spam lawsuits on behalf of friends and family members who had abandoned their email accounts. Gordon admitted to operating an anti-spam business; he had had no employment or income for at least five years, other than settlements from anti-spam litigation. Gordon sued Virtumundo and others under the federal CAN-SPAM Act and several *Washington* laws, seeking several million dollars. *Id.* at 1045-46, 1049, 1056.

In sharp contrast, Wagner has a real job, never claimed to be an ISP, and never sued (or threatened to sue) under the CAN-SPAM Act. Wagner never sought to receive spam for profit or any other motive. Wagner never gave direct consent to receive commercial email to any of the Defendants. Wagner received the spams at issue at an email address that he uses every day, not an "abandoned" email address. Wagner Decl. at ¶ 3.

Moreover, Defendants attempt to mislead this Court as to what *Gordon* really says. The Ninth Circuit did *not* unequivocally hold that CAN-SPAM preempts all state law claims except those arising from "traditional tort theories such as claims arising from fraud or deception." Demurrer at 6:19-21. Defendants draw an overbroad conclusion from that sentence fragment. In fact, *Gordon* states that "Congress carved out from preemption state laws that proscribe 'falsity *or deception*' in commercial e-mail communications" and that "Congress did not intend that states retain unfettered freedom to create liability for *immaterial* inaccuracies or omissions." 575 F.3d at 1061-62 (emphasis added). Here, Wagner alleges material falsity and deception – he could not identify anyone from the generic From Names, or from the domain names that Spire Vision registered to untraceable random word pairings and boxes at The UPS Store. Wagner Decl. at ¶ 2.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' DEMURRER**

Additionally, *Asis Internet Services v. SubscriberBase Inc.* pointed out that Jim Gordon's claims were preempted *not* because he did not allege reliance and damages, but rather because Washington's anti-spam law was too broad and "purport[ed] to regulate a vast array of *non*-deceptive acts and practices." No. 09-3503 SC, 2010 U.S. Dist. LEXIS 33645 at *31-32 (N.D. Cal. Apr. 1, 2010). Therefore, *Gordon* has little relevance to this Action because the Ninth Circuit found that *Washington's* anti-spam law was preempted because it was overly broad, prohibiting even "truthful spam." But *California's* anti-spam law has a standalone subsection, § 17529.5, that is expressly limited to falsified, misrepresented, forged, and misleading spam. Therefore, B&P Code § 17529.5 fits squarely within the exception to preemption set forth in 15 U.S.C. § 7707(b)(1).

### 8. The Majority of Post-*Gordon* Cases in the Northern District of California Confirm That the Exception to Preemption is Based on Falsity, not Fraud

To the extent that the federal courts are persuasive to this California proceeding, Wagner points out that most Northern District rulings before *Gordon*, and – more importantly – three out of four *after Gordon*, ruled that the exception to preemption does *not* require pleading reliance and damages.

Wagner could quote at length from *ConsumerBargainGiveaways, VistaPrint USA, Asis Internet Services v. SubscriberBase Inc.*, No. 09-3503 SC, 2009 U.S. Dist. LEXIS 112852 (N. D. Cal. Dec. 4, 2009) and 2010 U.S. Dist. LEXIS 33645 (N.D. Cal. Apr. 1, 2010); and *Asis Internet Services v. Member Source Media LLC*, No. C-08-1321 EMC, 2010 U.S. Dist. LEXIS 47865 (N.D. Cal. Apr. 20, 2010), all of which carefully analyzed the text and structure of the CAN-SPAM Act's exception to preemption provision, and concluded that allegations of falsity and deception are sufficient to avoid preemption; actual reliance and damages are not required.

Wagner would call attention in particular to *Hoang v. Reunion.com*, in which the court *initially* granted Reunion.com's motion to dismiss on preemption grounds because Hoang did not allege common-law fraud (i.e., reliance and actual damages). No. C-08-3518 MMC, 2008 U.S. Dist. LEXIS 103659 (N.D. Cal. Dec. 23, 2008). But *after and in direct response* to *Gordon*, the judge *reversed herself* on Hoang's motion for reconsideration, ruling that "plaintiffs' failure to allege they relied to their detrimental [sic] on the alleged false statements in defendant's e-mails does not constitute a ground for dismissal of their claims." 2010 U.S. Dist. LEXIS 34466 (N.D. Cal. Mar. 31, 2010) at *21.

Defendants over-rely on *one* contrary ruling, a recent unpublished order in a declaratory relief action that held that the spam recipient's counter-claims are preempted. *Davison Design & Development, Inc. v. Riley*, No. 4:11-cv-02970 (PJH), 2012 U.S. Dist. LEXIS 131087 (N.D. Cal. Sept. 13, 2012). Demurrer at 5:19-6:17. However, the legal analysis in *Davison* is scant compared to the three other post-*Gordon* rulings, the case is still being litigated, and Wagner is informed that Riley plans to appeal. Wagner Decl. at ¶ 4.

### 9. *California Cases* Hypertouch *and* Balsam *Hold that B&P Code § 17529.5 is Not Preempted*

In *Hypertouch*, the Court of Appeal of the Second District thoroughly analyzed the statutory language and reviewed the California and federal case law as to the issue of CAN-SPAM preemption of state laws, including *Omega* and *Gordon*, and held that B&P Code § 17529.5 is *not* preempted.

> The trial court concluded that the CAN-SPAM Act's savings clause, which permits states to regulate "falsity or deception" in a commercial e-mail, only applies to state statutes that require the plaintiff to establish every element of common law fraud. For the reasons that follow, we disagree with the trial court's interpretation of the CAN-SPAM Act and hold that *the federal statute does not preempt state laws claims arising under section 17529.5.*

> Neither *[Gordon]* nor *Omega* decided the issue presented here: whether a state law that targets commercial e-mails containing deceptive content is preempted by the CAN-SPAM Act because it does not require the plaintiff to establish all elements of a traditional fraud claim. . . .

> California's decision to remove the elements of common law fraud does not affect the type of statement that might subject a defendant to liability and, as a result, *[Gordon's]* and *Omega*'s analyses are of limited relevance.

> The CAN-SPAM Act's savings clause applies to any state law that prohibits material falsity or material deception in a commercial e-mail regardless of whether such laws require the plaintiff to prove and plead each and every element of common law fraud.

*Id.* at 825, 832-33 (emphasis added).

The Court of Appeal of the First District ruled identically: "We find the reasoning of *Hypertouch* persuasive on this [preemption] issue, and adopt it here." *Balsam*, 203 Cal. App. 4th at 1102.

Defendants' statement that "Neither *Balsam* nor *Hypertouch* reconcile the vast judicial and statutory authority that only state laws that codify 'traditional tort theories' survive preemption," Demurrer at 11:13-14, is but wishful thinking, as both courts went into considerable detail as to precisely why their rulings are consistent with *Gordon*, namely, because *Gordon* did *not* hold that state anti-spam laws are preempted except for common-law fraud. Nor do Defendants identify what comprises their "vast" authority. Defendants presented only a Fourth Circuit case (*Omega*) and a Ninth Circuit case (*Gordon*), neither of which actually stands for the proposition of categorical preemption except for common law fraud, and a single Northern District case (*Davison*) that misapplied *Gordon* and which the spam recipient intends to appeal. Defendants did not present *any* California cases in their "vast" set of authority that support their position.

Defendants' suggestion that *Hypertouch* and *Balsam* are not persuasive, Demurrer at 11:15-16, is not only incorrect, but actually does not go far enough. *Hypertouch* and *Balsam* are not only persuasive authorities, they are in fact *binding* authorities. Unlike, say, *Omega, Gordon,* and *Davison.*

### E. Wagner Does Not Need to Prove Common Law Fraud or Deceit

Defendants are correct that Wagner did not allege facts supporting all the elements of common law fraud or deception. Demurrer at 8:13-14. But he does not have to. *Hypertouch* and *Balsam, supra.*

Defendants misstate Wagner's position when they claim that "The only misrepresentations Wagner alleges involve his belief that the email header information should have been more specific." Demurrer at 8:23-24. The issue is not *specificity*, but rather that the From Names completely fail to identify who the spams are *from, supra*. Wagner also alleges untraceable domain names and false and misleading Subject Lines.

Whether or not *Wagner* was personally misled is irrelevant, Demurrer at 9:12, as B&P Code § 17529.5 expressly sets forth an objective, "reasonable person" standard. Wagner properly pled violations of the statute.

**F.  Wagner Was Harmed by Defendants' Unlawful Spams**

Although Defendants baldly claim that Wagner was not harmed by receiving their spams, the California Legislature stated in no uncertain terms that recipients of spam *are* harmed. *See* B&P Code § 17529(d), (e), (g), and (h). *See also Ferguson v. FriendFinders Inc.*, 94 Cal. App. 4th 1255, 1268 (1st Dist. 2002) (referring to the "harmful effects of deceptive spam).

Congress did *not* state that only ISPs or government agencies are likely to be harmed by spam, as Defendants suggest. Demurrer at 5:12-14. In fact, the CAN-SPAM Act, upon which Defendants rely heavily in their Demurrer, even acknowledges that spam recipients *are* harmed.

> The receipt of unsolicited commercial electronic mail may result in *costs to recipients* who cannot refuse to accept such mail and who incur costs for the storage of such mail, or for *the time spent* accessing, reviewing, and discarding such mail, or for both.

15 U.S.C. § 7701(a)(3) (emphasis added). And in *Gordon*, upon which Defendants also heavily rely, the Ninth Circuit recognized "the *harmful effects* spam and spamming practices, both lawful and unlawful, have upon businesses *and consumers*." 575 F.3d at 1057 (emphasis added).

Spire Vision attempts to minimize the scope of its unlawful actions by arguing that the 49 spams Wagner received is only a "handful," Demurrer at 5:15, but the fact that the Legislature enacted B&P Code § 17529.5 in the first place, including the liquidated damages provision, fatally undermines Spire Vision's claim that Wagner's decision to exercise his statutory rights[2] is somehow a "vast overreaction." Demurrer at 10:6. Regardless, Wagner alleged he was harmed, Verified Complaint at ¶¶ 6, 46, 48, 151, which Defendants must accept as true for purposes of their Demurrer.

**G.  California Courts Will Award Liquidated Damages of $1,000 Per Unlawful Spam**

Civil Code § 3533 states that "The law disregards trifles," Demurrer at 9:18, but Wagner's claims and the spam problem perpetuated by Defendants are not trifling. Wagner submits that the more relevant maxim of

---

[2] Defendants complain that Wagner "did not negotiate or even make a demand. He proceeded straight to litigation []." Demurrer at 10:6-7. Defendants fail to mention that the last time Balsam made a demand of Spire Vision, Spire Vision and one of its clients sued Balsam's client for a declaratory judgment. *Davison, supra*. Accordingly, any attempt to negotiate here would have been futile. Wagner decided he would rather be a plaintiff than a defendant, and initiated this Action. Balsam Decl. at ¶ 8, Wagner Decl. at ¶ 5.

14

1  jurisprudence is Civil Code § 3523: "For every wrong there is a remedy." Conveniently, the Legislature stated

2  *exactly* the remedy a spam recipient can claim: $1,000 per spam. B&P Code § 17529.5(b)(1)(B)(ii).

3      Again relying on a federal case, *Hoang (2008)*, Defendants meritlessly claim that the harm Wagner

4  suffered is insufficient under California law. Demurrer at 10:10. Unbelievably, Defendants also claim that

5  "California Courts will not award damages to plaintiffs [such as Wagner] whose harm is inconsequential."

6  Demurrer at 9:19-20. Defendants' claim is false on its face; as Spire Vision and its attorneys well know, in

7  *Balsam*, the trial court awarded the plaintiff $1,000 in liquidated damages for each of seven unlawful spams

8  and $81,900 for attorneys' fees, and the Court of Appeal affirmed. 203 Cal. App. 4th at 1093, 1103, 1105.

9  ## V. WAGNER'S CLAIMS UNDER B&P CODE § 17538.5 ARE MERITORIOUS

10      Defendants claim that B&P Code § 17538.5 "allows a private citizen to pursue only an action for an

11  injunction, not an action for penalties," Demurrer at 13:18-19, relying on *Chern v. Bank of America*, 15 Cal.3d

12  866 (1976). But *Chern* addressed a bank's false statements as to calculating interest, in violation of B&P Code

13  § 17500. Section 17538.5 was not at issue. Defendants also claim that B&P Code § 17538.5 "requires any

14  private citizen to demonstrate that he has 'suffered injury in fact and has lost money or property as a result of a

15  violation of this chapter,'" Demurrer at 13:20-21 (emphasis in original), but nothing in the statute says anything

16  of the sort. Wagner maintains that he is entitled to recover the civil fines set forth in B&P Code § 17538.5(a),

17  because the spams failed to disclose the legal name under which Spire Vision, as the sender of the spams, does

18  business and the complete street address from which Spire Vision actually conducted business, and Wagner

19  was harmed by receiving the spams.

20  ## VI. CONCLUSION

21      Defendants are not permitted to file a Demurrer now that this Action has been remanded, because they

22  filed Answers while the Action was in federal court. The Demurrer also fails substantively, as Defendants

23  constantly rely on federal cases, which do not even stand for the proposition for which they are presented, and

24  ignore California cases while actively misstating facts and Wagner's arguments. Defendants will still have the

25  opportunity to make their arguments, but they should be affirmative defense in an Answer, not in a Demurrer.

26  This Court should overrule the Demurrer in its entirety and order Defendants to file Verified Answers, or at a

27  minimum, grant Wagner leave to amend.

28                             THE LAW OFFICES OF DANIEL BALSAM

29

30  Dated:_____July 16, 2013_____          *Daniel L Balsam*          (by fax)

31                             DANIEL BALSAM
                           Attorneys for Plaintiff Christopher Wagner

32

33

**15**

1   Timothy J. Walton (State Bar No. 184292)
2   Jim C. Twu (State Bar No. 175032)
    WALTON TWU LLP
3   9515 Soquel Drive, Suite 207
    Aptos, CA 95003-4137
4   Phone (831) 685-9800
5   Fax: (650) 618-8687

6   Daniel L. Balsam (State Bar No. 260423)
7   THE LAW OFFICES OF DANIEL BALSAM
    2912 Diamond Street #218
8   San Francisco, CA 94131
9   Phone: (415) 869-2873
    Fax: (415) 869-2873
10

11  Attorneys for Plaintiff Christopher Wagner

12

13

14                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15              **COUNTY OF SONOMA (UNLIMITED JURISDICTION)**

16  CHRISTOPHER WAGNER,                 )   Case No.:      SCV-252580
17                                      )
                                        )
18            Plaintiff,                )   **DECLARATION OF DANIEL BALSAM IN**
                                        )   **SUPPORT OF PLAINTIFF'S OPPOSITION**
19     v.                               )   **TO DEFENDANTS' DEMURRER**
                                        )
20  SPIRE VISION LLC *et al*,           )   Code Civ. Proc. § 430.10
21                                      )
                                        )
22            Defendants.               )   Date:      August 7, 2013
                                        )   Time:      3:30 p.m.
23                                      )   Judge:     Hon. Nancy Case Shaffer
                                        )   Dept:      18
24  _____)

25  I, Daniel L. Balsam declare:

26  1.  I am an attorney duly licensed to practice law in all courts of the State of California. I represent Plaintiff

27      Christopher Wagner ("Wagner") in this Action. The following facts are based on my own personal

28      knowledge. If called as a witness, I could and would testify competently to the declared facts under oath.

29  2.  Wagner filed this Action against Defendants on October 25, 2012, alleging violations of Business &

30      Professions Code §§ 17529.5 and 17538.5. Defendant Spire Vision LLC alone improperly removed the

31      Action to the U.S. District Court for the Northern District of California on January 4, 2013, incorrectly

32      alleging complete diversity.

33

                                        1
    **DECLARATION OF DANIEL BALSAM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' DEMURRER**

3. While the Action was in federal court, the various Spire Vision entities collectively filed a Corrected First Amended Answer (federal docket #32) on February 27, 2013 and Accelerize New Media Inc. – represented by the same attorneys – filed an Answer (federal docket #26) on February 6. Exhibit A is a true and correct copy of the first page of each Answer.

4. Wagner filed a Motion to Remand, which the federal court granted on March 8, and sent a letter to this Court on March 11 so stating.

5. The Spire Vision entities and Accelerize New Media Inc. then filed the instant Demurrer in this – the original – Court, and refused to withdraw it even after I served (on May 20) and filed (on June 24) a Motion for Sanctions.

6. Wagner was unable to identify Spire Vision based on the registrations of the sending domain names. However, I have certain knowledge of Spire Vision's business practices, based on other litigation, and I was able to identify the Spire Vision entities as the source of the instant spams.

7. My co-counsel Timothy Walton and I do not "know [that] the CAN-SPAM Act explicitly preempts all complaints about unsolicited commercial email that do not allege fraud or damages." In fact, Timothy Walton represented me in *Balsam v. Trancos Inc. et al*, 203 Cal. App. 4th 1083 (1st Dist. 2012), *petition for review denied*, 2012 Cal. LEXIS 4979 (Cal. May 23, 2012), *petition for certiorari denied*, 2012 U.S. LEXIS 8423 (U.S. Oct. 29, 2012), *petition for rehearing denied*, 2013 U.S. LEXIS 243 (U.S. Jan. 7, 2013), in which the Court of Appeal expressly ruled that claims under Business & Professions Code § 17529.5 are *not* preempted by the CAN-SPAM Act.

8. The last time I made a demand of Spire Vision on behalf of another client, when those negotiations failed, Spire Vision and one of its advertisers (Davison Design & Development Inc.) sued my client – the recipient of their spams – in federal court for a declaratory judgment. Accordingly, any attempt to negotiate here would have been futile. Wagner decided that he would rather be a plaintiff than a defendant, and initiated this Action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed in San Francisco, California, on July 16, 2013.

Daniel L Balsam
_____ (by fax)
DANIEL L. BALSAM

2

**DECLARATION OF DANIEL BALSAM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' DEMURRER**

Exhibit A

1  John Du Wors, State Bar No. 233913
   john@newmanlaw.com
2  Leeor Neta, State Bar No. 233454
3  leeor@newmanlaw.com
   NEWMAN DU WORS LLP
4  1201 Third Avenue, Suite 1600
   Seattle, WA 98101
5  Telephone:  (206) 274-2800
6  Facsimile:  (206) 274-2801

7  Attorneys for Defendants

8

9              UNITED STATES DISTRICT COURT
10            NORTHERN DISTRICT OF CALIFORNIA

11

12  Christopher Wagner, an individual,        No. 13-cv-00054-YGR

13              Plaintiff,                     **ANSWER AND AFFIRMATIVE**
                                              **DEFENSES OF ACHIEVE**
14       v.                                   **OPPORTUNITIES, AGREEWIZARD,**
                                              **DIGITAL PUBLISHING**
15  Spire Vision LLC, a Delaware limited      **CORPORATION, MEDIACTIVATE LLC,**
16  liability company, et al.,                **ON DEMAND RESEARCH,**
                                              **OPPORTUNITY CENTRAL, PATHS**
17              Defendants                     **DIRECT, PRIME ADVERTISERS LLC,**
                                              **PULLSMART, SERVE CLICKS LLC,**
18                                            **SPIRE VISION LLC, SPIRE VISION**
                                              **HOLDINGS INC., WARD MEDIA INC.,**
19                                            **AND XL MARKETING CORPORATION**
20

21

22       Defendants Achieve Opportunities, AgreeWizard, Digital Publishing Corporation,

23  MediActivate LLC, On Demand Research LLC, Opportunity Central, Paths Direct, Prime

24  Advertisers LLC, PullSmart, Serve Clicks LLC, Spire Vision LLC, Spire Vision

25  Holdings Inc., Ward Media Inc., and XL Marketing Corporation, (Collectively,

26  "Answering Defendants") answer Plaintiff's complaint as follows. Each numbered

27  paragraph corresponds to the numbered paragraph in the complaint.

28       1.    Answering Defendants DENY the allegations in Paragraph 1.

1  John Du Wors, State Bar No. 233913
   john@newmanlaw.com
2  Leeor Neta, State Bar No. 233454
   leeor@newmanlaw.com
3  NEWMAN DU WORS LLP
4  1201 Third Avenue, Suite 1600
   Seattle, WA 98101
5  Telephone:   (206) 274-2800
6  Facsimile:   (206) 274-2801

7  Attorneys for Defendants

8

9              UNITED STATES DISTRICT COURT
10            NORTHERN DISTRICT OF CALIFORNIA

11

12  Christopher Wagner, an individual,         No. 13-cv-00054-YGR

13              Plaintiff,              **ANSWER AND AFFIRMATIVE**
                                        **DEFENSES OF ACCELERIZE NEW**
14        v.                            **MEDIA, INC.**

15  Spire Vision LLC, a Delaware limited
    liability company, et al.,          **JURY TRIAL DEMANDED**
16

17              Defendants

18

19       Defendant Accelerize New Media, Inc. ("Accelerize") answers Plaintiff's

20  complaint as follows. Each numbered paragraph corresponds to the numbered paragraph

21  in the complaint.

22       1.     Accelerize DENIES the allegations in Paragraph 1.

23       2.     Accelerize DENIES the allegations in Paragraph 2.

24       3.     Accelerize DENIES the allegations in Paragraph 3.

25       4.     Accelerize DENIES the allegations in Paragraph 4.

26       5.     Accelerize DENIES the allegations in Paragraph 5.

27       6.     Accelerize has insufficient information to form a belief as to and therefore

28  DENIES the allegations in Paragraph 6.

Timothy J. Walton (State Bar No. 184292)
Jim C. Twu (State Bar No. 175032)
WALTON TWU LLP
9515 Soquel Drive, Suite 207
Aptos, CA 95003-4137
Phone (831) 685-9800
Fax: (650) 618-8687

Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2912 Diamond Street #218
San Francisco, CA 94131
Phone: (415) 869-2873
Fax: (415) 869-2873

Attorneys for Plaintiff Christopher Wagner

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SONOMA (UNLIMITED JURISDICTION)

| | |
|---|---|
| CHRISTOPHER WAGNER, | ) Case No.:   SCV-252580 |
| Plaintiff, | ) |
| | ) **DECLARATION OF CHRISTOPHER** |
| | ) **WAGNER IN SUPPORT OF PLAINTIFF'S** |
| v. | ) **OPPOSITION TO DEFENDANTS'** |
| | ) **DEMURRER** |
| SPIRE VISION LLC *et al*, | ) |
| | ) Code Civ. Proc. § 430.10 |
| Defendants. | ) |
| | ) Date:       August 7, 2013 |
| | ) Time:       3:30 p.m. |
| | ) Judge:      Hon. Nancy Case Shaffer |
| | ) Dept:       18 |

I, Christopher Wagner, declare:

1. I am the Plaintiff in this Action. The following facts are based on my own personal knowledge. If called as a witness, I could and would testify competently to the declared facts under oath.

2. Despite significant effort, I was unable to identify any of the actual Spire Vision companies on my own because the From Names did not say who the spams were from, and Spire Vision registered the domain names they used to send the spams to two random words strung together, claiming addresses at boxes at branches of The UPS Store. My attorney Daniel Balsam had to identify Spire Vision for me.

1

**DECLARATION OF CHRISTOPHER WAGNER**
**IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' DEMURRER**

3.  I have a job, I never claimed to be an ISP, and I never sued (or threatened to sue) anyone under the CAN-SPAM Act. I never sought to receive spam for profit or any other motive. I never gave direct consent to receive commercial email to any of the Defendants. I received the spams at issue at an email address that I use every day, not an "abandoned" email address.

4.  I am informed and believe and thereon allege that Riley plans to appeal the order in *Davison Design & Development, Inc. v. Riley*, No. 4:11-cv-02970 (PJH), 2012 U.S. Dist. LEXIS 131087 (N.D. Cal. Sept. 13, 2012) that ruled that her claims under Business & Professions Code § 17529.5 without proof of reliance and actual damages.

5.  After my attorney Daniel Balsam told me that Spire Vision sued one of his other clients when they were unable to reach a settlement as to claims under Business & Professions Code § 17529.5, I decided that I would rather be a plaintiff than a defendant I asked Daniel Balsam to represent me and sue Spire Vision.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed in Rohnert Park, California, on July 16, 2013.

_____ (by fax)
CHRISTOPHER WAGNER

**2**

| | |
|---|---|
| *Attorney or Party Without Attorney* <br> Daniel L. Balsam (State Bar No. 260423) <br> THE LAW OFFICES OF DANIEL BALSAM <br> 2912 Diamond Street #218 <br> San Francisco, CA 94131 <br> *Telephone No.:*   415-869-2873 <br> *Fax No.:*   415-869-2873 <br> *Attorney for:*   Plaintiff Christopher Wagner | |
| *Insert name of Court, and Judicial District and Branch Court:* <br> Superior Court of California, County of Sonoma <br> 3055 Cleveland Avenue <br> Santa Rosa, CA 95403 <br> Civil and Family Law Courthouse | |

| | | |
|---|---|---|
| *Plaintiff/Petitioner:*   Christopher Wagner | *Case Number:* | |
| *Defendant/Respondent:*   Spire Vision LLC *et al* | SCV-252580 | |

| | | |
|---|---|---|
| **PROOF OF SERVICE – CIVIL** <br> Check method of service *(only one):* <br> [  ] By Personal Service    [  ] By Mail    [ X ] By Overnight Delivery <br> [  ] By Messenger Service    [  ] By Fax    [  ] By Electronic Service | *Judge:* | Shaffer |
| | *Courtroom:* | 18 |

*(Do not use this proof of service to show service of a Summons and complaint.)*

1.   At the time of service I was at least 18 years of age and not a party to this action.

2.   My residence or business address is: The Law Offices of Daniel Balsam, 2912 Diamond Street #218, San Francisco, CA 94131

4.   On *(date):*    July 23, 2013    I served the following **documents** *(specify):*

Plaintiff's Opposition to Defendants' Demurrer; Declarations of Daniel Balsam and Christopher Wagner

5.   I served the documents on the person or persons below, as follows:
   a.   Name of person served:    John Du Wors, attorney for Spire Vision entities and Accelerize New Media Inc.

   b.   [ X ]   *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)* <br> Business or residential address where person was served: Newman Du Wors LLP, 1201 Third Avenue, Suite 1600, Seattle, WA 98101

6.   The documents were served by the following means *(specify):*
   c.   [ X ]   **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Date:    July 23, 2013

Daniel L. Balsam <br> Type or Print Name of Declarant

Signature of Declarant

1  John Du Wors, State Bar No. 233913
2  john@newmanlaw.com
   Leeor Neta, State Bar No. 233454
3  leeor@newmanlaw.com
   NEWMAN DU WORS LLP
4  1201 Third Avenue, Suite 1600
   Seattle, WA 98101
5  Telephone:  (206) 274-2800
6  Facsimile:  (206) 274-2801

7  Attorneys for Defendants

8

ENDORSED
FILED

JUL 2 5 2013

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

9
                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10                          **COUNTY OF SONOMA**

11

12  Christopher Wagner, an individual,            Civil Case No. SCV-252580

13                     Plaintiff,                 **DEFENDANTS' OPPOSITION TO
14           v.                                   PLAINTIFF'S MOTION FOR
                                                  SANCTIONS**
15  Spire Vision LLC, a Delaware limited liability
16  company, et al.,                             **Code Civ. Proc. §§ 128.7, 430.90**

17                     Defendants.                Hearing Date: August 7, 2013
18                                                Hearing Time: 3:30 p.m.
                                                  Dept. No. 18
19                                                Judge: Hon. Nancy Case Shaffer

20                     **I.    INTRODUCTION**

21        Plaintiff Christopher Wagner ("Plaintiff") is seeking sanctions because Defendants

22  Spire Vision LLC, et al. ("Defendants") filed a demurrer after this case was remanded

23  from federal court. Plaintiff does not contend that Defendants' demurrer is untimely. And

24  Plaintiff concedes that neither this Court nor the remanding federal court have addressed

25  the important issues raised in Defendants' demurrer. Instead, Plaintiff claims he is

26  entitled to sanctions because Defendants filed a federal court answer prior to remand and

27  Section 430.90 of the Code of Civil Procedure prevents a defendant who answers in

28  federal court from demurring in state court following remand.

                                    1
            **OPPOSITION TO MOTION FOR SANCTIONS – SCV-252580**

1    Plaintiff is misreading Section 430.90, which was merely intended to prevent a

2 defendant from asking a state court to revisit a demurrer or motion to strike that was

3 already filed *and* resolved prior to remand. At best, the parties have competing, but

4 reasonable interpretations of Section 430.90. Under these circumstances, sanctions are

5 inappropriate.

## II.    PROCEDURAL HISTORY

6

7 **A.    Defendants Filed An Answer And A Motion To Dismiss In Federal Court.**

8    Plaintiff filed his complaint on October 25, 2012. (*See* Complaint, dated October

9 25, 2012.) With the exception of Defendant LifeScript, Inc., none of the Defendants

10 generally appeared in state court before removing this matter to federal court on

11 January 4, 2013. (*See* Notice of Removal and related documents, filed on January 4, 2013

12 and January 9, 2013.) Once the matter was removed to federal court, Defendants Achieve

13 Opportunities, AgreeWizard, Digital Publishing Corporation, MediActivate LLC, On

14 Demand Research LLC, Opportunity Central, Paths Direct, Prime Advertisers LLC,

15 PullSmart, Serve Clicks LLC, Spire Vision LLC, Spire Vision Holdings Inc., Ward

16 Media Inc., and XL Marketing Corporation jointly moved to dismiss the complaint. (*See*

17 Motion to Dismiss Plaintiff's Complaint, dated January 28, 2013.) Numerous Defendants

18 later joined in this Motion, including Juniper Marketing LLC (*see* Joinder, dated

19 February 4, 2013); Accelerize New Media (*see* Joinder, dated February 6, 2013);

20 Furturesdrive, Junctionlights, Youradshere (*see* Joinder, dated February 7, 2013); and

21 LifeScript, Inc. (*see* Joinder, dated February 8, 2013). In their motion to dismiss,

22 Defendants point out that Plaintiff's claims are preempted by federal law and that

23 Plaintiff has failed to state a cause of action.

24    Defendants Achieve Opportunities, AgreeWizard, Digital Publishing Corporation,

25 MediActivate LLC, On Demand Research LLC, Opportunity Central, Paths Direct, Prime

26 Advertisers LLC, PullSmart, Serve Clicks LLC, Spire Vision LLC, Spire Vision

27 Holdings Inc., Ward Media Inc., and XL Marketing Corporation also filed an answer (*see*

28 Answer, dated January 28, 2013) in which several other Defendants later joined,

including Juniper Marketing LLC (*see* Amended Answer, dated February 4, 2013),

Accelerize New Media (*see* Answer, dated February 6, 2013), Furturesdrive,

Junctionlights, and Youradshere (*see* Answer, dated February 7, 2013.)

**B.   The Federal Court Never Heard Defendants' Motion To Dismiss.**

The federal court never heard Defendants' motion to dismiss. On March 8, 2013,

the Honorable Yvonne Gonzalez Rogers directed the clerk of the U.S. District Court to

remand the matter to this Court. (*See* Order Granting In Part Plaintiff's Motion to

Remand, Denying Request for Attorneys' Fees, dated March 8, 2013.) On March 11,

2013, the clerk of the U.S. District Court transmitted to this Court copies of the federal

court docket, including Judge Rogers' remand order, and asked that the Court

acknowledge receipt. (*See* Letter Transmitting Order and Docket Entries, dated March

11, 2013.)

**C.   Following Remand, Defendants Filed A Demurrer That Raised The Same Issues As The Motion To Dismiss Which The Federal Court Never Heard.**

It is unclear when this Court in fact received the order of remand. On May 2, after

extending this Court an opportunity to express its wishes regarding next steps—either in

the form of a scheduling or case management order—Defendants' filed a demurrer that

raised similar issues to those contained in the motion to dismiss they filed in federal court

prior to remand. (*See* Demurrer and all related documents, filed May 2, 2013.) Again, the

federal court never addressed the issues raised in Defendants' demurrer.

### III.   DISCUSSION

**A.   Wagner Is Misinterpreting Section 430.90 Of The Code Of Civil Procedure.**

Plaintiff's sanctions motion is predicated on a misreading of Section 430.90 of the

Code of Civil Procedure. Section 430.90 provides responsive deadlines in certain limited

circumstances where a civil action was removed to federal court and later remanded to

the original court. Subsection (a)(2) provides certain responsive deadlines where a

defendant did *not* file an answer in the original state court prior to removal:

(2)  If the defendant has not filed an answer in the original court, then 30

3

days from the day the original court receives the case on remand to do any of the following:

(A) Answer the complaint.

(B) Demur or move to strike all or a portion of the complaint if: (i) an answer was not filed in the federal court, and (ii) a demurrer or motion to strike raising the same or similar issues was not filed and ruled upon by the original court prior to the removal of the action to federal court or was not filed and ruled upon in federal court prior to the remand. If the demurrer or motion to strike is denied by the court, the defendant shall have 30 days to answer the complaint unless an answer was filed with the demurrer or motion to strike.

Code Civ. Proc., § 430.90.

While this language seems to address some potential scenarios following remand, it does not address all of them. For example, it is clear that a defendant who has not filed an answer in the original court has 30 days from the date of the original court's receipt of the remand to file a state court answer if the defendant so wishes. But it is not clear what timeframe governs a defendant who has not filed an answer in the original court and who wishes to file a demurrer or motion to strike following remand. The Code seems to require that a demurrer or motion to strike be filed within 30 days of the original court receiving the order of remand only when *both* of two conditions are met: (1) an answer was not filed in federal court; *and* (2) a demurrer or motion to strike raising the same or similar issues was *not* previously filed *and* ruled upon by either the original court or the federal court.

Section 430.90 does not address the specific circumstances presented here. Defendants did not file a responsive state court pleading before removing this matter to federal court. Defendants filed an answer in federal court. But Defendants also filed a Rule 12(b)(6) motion in federal court that raised similar issues to those pressed in the state court demurrer they later filed following remand. The federal court did not rule upon or address Defendants' Rule 12(b)(6) motion prior to ordering remand. As a result, our procedural posture does not meet Section 430.90's specific limitations, i.e., no answer filed in federal court *and* no demurrer or motion to strike raising the same or similar issues filed *and* ruled upon. And—for that reason—Defendants were free to

1    demurrer following remand to this Court.

2        Plaintiff misstates Defendants' position. It is not Defendants' position that Section

3    430.90 applies no conditions to the filing of a demurrer following remand. (*See* Plaintiff's

4    Motion for Sanctions, dated June 29, 2013, at 5.) Defendants merely contend that Section

5    430.90 does not speak to the procedural posture of this case, i.e., where an answer was

6    filed in federal court *and* a demurrer was previously filed *but not* ruled upon by either the

7    original court or the federal court.

8        Plaintiff claims that Section 430.90 expressly bars a defendant who filed a federal

9    court answer from filing a demurrer following remand. But if that were true, the

10   legislature would not have written Section 430.90 so as to include subsection

11   (a)(2)(B)(ii). If the legislature's intention were as Plaintiff suggests, section 430.90,

12   subsection (a)(2), would read as follows:

13       (2)  If the defendant has not filed an answer in the original court, then 30
             days from the day the original court receives the case on remand to do
14            any of the following:

15       (A)  Answer the complaint.

16       (B)  Demur or move to strike all or a portion of the complaint: (i) if an
             answer was not filed in the federal court, and (ii) a demurrer or motion
17            to strike raising the same or similar issues was not filed and ruled upon
             by the original court prior to the removal of the action to federal court
18            or was not filed and ruled upon in federal court prior to the remand. If
             the demurrer or motion to strike is denied by the court, the defendant
19            shall have 30 days to answer the complaint unless an answer was filed
             with the demurrer or motion to strike.
20

21       (b)  For the purposes of this section, time shall be calculated from the date
             of the original court's receipt of the order of remand.

22   Instead, the legislature limited Section 430.90 to a number of specific circumstances,

23   none of which are at issue in this case.

24       Defendants submit that Section 430.90 was intended to prevent a defendant from

25   asking a state court to revisit a demurrer or motion to strike that was already filed *and*

26   resolved prior to remand. But where the issues in the demurrer or motion to strike were

27   not resolved before remand, Section 430.90 would not prevent a defendant from posing

28   the same questions to the original court after remand. Were Section 430.90 read

5

otherwise—as Plaintiff suggests—state courts would be prevented from reaching important questions raised in a demurrer or motion to strike whenever a defendant files a federal court answer prior to remand. There is no rationale for such a reading of Section 430.90.

Because neither Section 430.90 nor any other section of the Code of Civil Procedure speaks to the procedural posture of this case, Defendants contend that their state court demurrer is not inappropriate.

**B.   Even If Plaintiff Is Not Misinterpreting Section 430.90, Defendants' Reading Is Certainly Neither Frivolous Nor Harassing.**

Plaintiff's motion for sanctions is predicated on the claim that Section 430.90 expressly bars Defendants from filing a demurrer following remand because they filed a federal court answer prior to remand. Plaintiff's reading seems to ignore subsection (a)(2)(B)(ii) of Section 430.90.

Defendants contend that Section 430.90 does not speak to the specific procedural posture of this case, i.e., where an answer was filed in federal court *and* a demurrer was filed *but not* previously ruled upon by either the original court or the federal court.

Defendants do not suggest they could have filed a demurrer in state court even if the federal court had already decided the same or similar issues. Defendants are confident that their demurrer raises important questions as to whether Plaintiff's claims are preempted and whether Plaintiff has stated a cause of action. And despite Plaintiff's claims to the contrary, at least one court deserves the opportunity to address these questions.

The procedural posture of this case does not suggest that Defendants' reading of Section 430.90 is "frivolous" or that their demurrer was "motivated by an intention to harass." (*See* Plaintiff's Motion for Sanctions, dated June 29, 2013, at 3-4.) At best, the parties have a reasonable dispute as to the scope and interpretation of Section 430.90. As such, sanctions are inappropriate.

## IV.   CONCLUSION

Plaintiff is not entitled to sanctions. His request depends on an incorrect and irrational reading of Code of Civil Procedure, Section 430.90. Section 430.90 was merely intended to prevent a defendant from asking a state court to revisit a demurrer or motion to strike that was already filed *and* resolved prior to remand. Here, however, the issues raised in the post-remand demurrer were not previously addressed by any court. Even if this Court were inclined to give credence to Plaintiff's reading of Section 430.90, it is obvious there are competing, but reasonable interpretations of Section 430.90. There is no merit to Plaintiff's suggestion that these circumstances support a sanctions order.

Date: July 25, 2013                    **NEWMAN DU WORS LLP**

_____
Leeor Neta, State Bar No. 233454
John Du Wors, State Bar No. 233913
Attorneys for Defendants
Spire Vision LLC, et al.

1  John Du Wors, State Bar No. 233913
   john@newmanlaw.com
2  Leeor Neta, State Bar No. 233454
   leeor@newmanlaw.com
3  NEWMAN DU WORS LLP
4  1201 Third Avenue, Suite 1600
   Seattle, WA 98101
5  Telephone:   (206) 274-2800
6  Facsimile:   (206) 274-2801

**RECEIVED**

JUL **25** 2013

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

7  Attorneys for Defendants

8

9                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10                             **COUNTY OF SONOMA**

11

12  Christopher Wagner, an individual,              Civil Case No. SCV-252580

13                Plaintiff,                          **[PROPOSED] ORDER DENYING
                                                     PLAINTIFF'S MOTION FOR
14        v.                                         SANCTIONS**

15  Spire Vision LLC, a Delaware limited liability
    company, et al.,                                Hearing Date:  August 7, 2013
16                                                   Hearing Time:  3:30 p.m.
17                Defendants.                        Dept. No. 18
                                                     Judge: Hon. Nancy Case Shaffer
18

19        Plaintiff's Motion for Sanctions came on for hearing in Department 18 of this

20  Court on August 7, 2013. Leeor Neta appeared on behalf of Defendants Spire Vision

21  LLC, et al. _____ appeared on behalf of Plaintiff Christopher

22  Wagner.

23        Having read and considered the motion, the memoranda filed by the parties, and

24  having heard argument of counsel,

25        IT IS ORDERED THAT Plaintiff's Motion for Sanctions, dated May 20, 2013, is

26  DENIED.

27

28

                                          1
         **ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS – SCV-252580**

1    DATED THIS _____ DAY OF _____, 2013.

2

3

4                                            _____

5                                            Honorable Nancy Case Shaffer
                                             Judge of the Superior Court
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS – SCV-252580**

POS-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Leeor Neta (State Bar 233454 )<br>Newman Du Wors<br>1201 Third Avenue, Suite 1600<br>Seattle, WA  98101<br>TELEPHONE NO.: (206) 274-2800    FAX NO. *(Optional):* (206) 274-2801<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):*  Spire Vision LLC et al. | *FOR COURT USE ONLY* |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Sonoma
STREET ADDRESS: 3055 Cleveland Avenue
MAILING ADDRESS:
CITY AND ZIP CODE:  Santa Rosa CA 95403
BRANCH NAME:  Civil and Family Law Courthouse

PLAINTIFF/PETITIONER:  Wagner

DEFENDANT/RESPONDENT  Spire Vision LLC et al.

| PROOF OF SERVICE—CIVIL | CASE NUMBER:<br>SCV-252580 |
|---|---|
| **Check method of service** *(only one):*<br>☐ **By Personal Service**  ☐ **By Mail**  ☑ **By Overnight Delivery**<br>☐ **By Messenger Service**  ☐ **By Fax**  ☐ **By Electronic Service** | JUDGE:  Mark Tansil<br>DEPT.:  18 |

*(Do not use this proof of service to show service of a Summons and complaint.)*

1. At the time of service I was over 18 years of age and **not a party to this action.**

2. My residence or business address is:

    1201 Third Avenue, Suite 1600, Seattle, WA  98101

3. ☐  The fax number or electronic notification address from which I served the documents is *(complete if service was by fax or electronic service):*

4. On *(date):* July 25, 2013        I served the following **documents** *(specify):*

    DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS, [PROPOSED] ORDER
    DENYING PLAINTIFF'S MOTION FOR SANCTIONS

    ☑  The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:

    a.  Name of person served:  Daniel L. Balsam

    b. ☑  *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*

        Business or residential address where person was served:

        Law Offices of Daniel Balsam, 2912 Diamond Street #218, San Francisco, CA 94131

    c. ☐  *(Complete if service was by fax or electronic service.)*

        (1)  Fax number or electronic notification address where person was served:

        (2)  Time of service:

    ☑  The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify):*

    a. ☐  **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

    *(Continued on back)*

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**

Code of Civil Procedure., §§ 1010.6, 1011, 1013, 1013a,
2015.5;  Cal. Rules of Court, rules 2.260, 2.306
*www.courtinfo.ca.gov*

American LegalNet, Inc.
www.FormsWorkflow.com

POS-040

| CASE NAME | CASE NUMBER: |
|---|---|
| Wagner v. Spire Vision LLC | SCV-252580 |

6. b. ☐ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one):*

    (1) ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    (2) ☐ placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

    I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):*

  c. ☑ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

  d. ☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

  e. ☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

  f. ☐ **By electronic service.** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in item 5. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: July 25, 2013

Lindsey Rowson
_____
      (TYPE OR PRINT NAME OF DECLARANT)

▶ _____
      (SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

## DECLARATION OF MESSENGER

☐ **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

    At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

    I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
      (NAME OF DECLARANT)

▶ _____
      (SIGNATURE OF DECLARANT)

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**

POS-040(P)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Wagner v. Spirevision LLC et al | SCV-252580 |

## ATTACHMENT TO PROOF OF SERVICE—CIVIL (PERSONS SERVED)

*(This attachment is for use with form POS-040.)*

**NAMES, ADDRESSES, AND OTHER APPLICABLE INFORMATION ABOUT PERSONS SERVED:**

| <u>Name of Person Served</u> | <u>Where Served</u> | <u>Time of Service</u> |
|---|---|---|
| *(If the person served is an attorney, the party or parties represented should also be stated.)* | *(Provide business or residential address where service was made by personal service, mail, overnight delivery, or messenger service. For other means of service, provide fax number or electronic service address, as applicable.)* | *(Complete for service by fax transmission or electronic service.)* |
| Lifescript, Inc.<br>Kevan Fornasero | Perkins Coie LLP<br>4 Embarcadero Center, Suite 2400<br>San Francisco, CA 94111 | Time: _____ |
| Christopher Wagner<br>Timothy James Walton | Law Offices of Timothy Walton<br>9515 Soquel Drive, Suite 207<br>Aptos, CA 95003 | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |

**ATTACHMENT TO PROOF OF SERVICE—CIVIL (PERSONS SERVED)**
**(Proof of Service)**

1   Timothy J. Walton (State Bar No. 184292)
2   Jim C. Twu (State Bar No. 175032)
    WALTON TWU LLP
3   9515 Soquel Drive, Suite 207
4   Aptos, CA 95003-4137
    Phone (831) 685-9800
5   Fax: (650) 618-8687

6
    Daniel L. Balsam (State Bar No. 260423)
7   THE LAW OFFICES OF DANIEL BALSAM
    2912 Diamond Street #218
8   San Francisco, CA 94131
9   Phone: (415) 869-2873
    Fax: (415) 869-2873
10

11  Attorneys for Plaintiff Christopher Wagner

12

13

14          SUPERIOR COURT OF THE STATE OF CALIFORNIA

15          COUNTY OF SONOMA (UNLIMITED JURISDICTION)

16  CHRISTOPHER WAGNER,              ) Case No.:      SCV-252580
17                                   )
            Plaintiff,               ) **PLAINTIFF'S REPLY TO**
18                                   ) **DEFENDANTS' OPPOSITION TO**
                                     ) **PLAINTIFF'S MOTION FOR**
19          v.                       ) **SANCTIONS**
                                     )
20  SPIRE VISION LLC *et al,*        )
21                                   ) **Code Civ. Proc. §§ 128.7, 430.90**
            Defendants.              )
22                                   )
                                     ) Date:          August 7, 2013
23                                   ) Time:          3:30 p.m.
                                     ) Judge:         Hon. Nancy Case Shaffer
24                                   ) Dept:          18
25  ─────────────────────────────────

26                      I.  **INTRODUCTION**

27          The Parties basically agree on the procedural history.  There is no dispute that Code of

28  Civil Procedure § 430.90 ("Section 430.90"), subsection (a)(2) applies to the current procedural

29  posture of this Action, because Defendants Spire Vision LLC and its numerous related

30  companies and "brands" (collectively, "Spire Vision") and Defendant Accelerize New Media

31

---

                                        1

Received
AUG 01 2013
NEWMAN | DUWORS

Inc. ("Accelerize") did *not* file Answers in this Court, improvidently removed the Action, *did* file Answers in federal court, and now that the case has been remanded, they filed a Demurrer.

However, Defendants [mis]interpret Section 430.90(a)(2) in a manner that defies logic, statutory construction, grammar, and civil procedure. Based on the plain language of the statute, any reasonable attorney should know that a defendant in a state court action who: a) does not file an answer in state court, b) removes the action to federal court, c) files an answer while in federal court, and d) is then remanded to state court, cannot then file a demurrer in state court.

Defendants' position is utterly without merit and shows intent to stall the proceedings and to run up Plaintiff Christopher Wagner's ("Wagner") attorneys' fees. Defendants should have withdrawn their Demurrer to Wagner's Verified Complaint after he served the Motion for Sanctions. They did not do so, even though they could have turned the substance of their Demurrer into affirmative defenses in an Answer. This Court should award Wagner sanctions because he incurred significant attorneys' fees preparing the Motion for Sanctions and this Reply, and opposing Defendants' improper Demurrer.

## II. DISCUSSION

Defendants previously led Wagner to believe that they were refusing to withdraw their Demurrer because they interpreted Section § 430.90(a)(2)(B) such that the two conditions only applied to motions to strike, and not to demurrers. Wagner rebutted this interpretation in his Motion for Sanctions and in his Opposition to Defendant's Demurrer, and will not repeat it here.

In their Opposition to the Motion for Sanctions, Defendants now take a different approach: Ignoring the first condition – that a demurrer is permissible after remand only if an answer was not filed in federal court – altogether.

### A. Defendants Admit that Their Demurrer Was Only Permissible If They Had Not Filed Answers in Federal Court

Defendants paraphrase Section 430.90(a)(2)(B) in their Opposition at 4:14-19 and admit that "only when *both* of two conditions are met" (emphasis in original) can a defendant file a demurrer after remand. Those conditions are:

- *Condition #1:* An answer was not filed in federal court.
- *Condition #2:* A demurrer or motion to strike raising the same or similar issues was not previously filed and ruled upon by the original court or the federal court.

2

1    But Defendants *did* file an Answer in federal court, rendering their Demurrer improper and their

2    attempt to justify the Demurrer frivolous.

3    **B.   The Fact That the Federal Court Did Not Rule on Defendants' Rule 12(b)(6) Motion to**

4    **Dismiss is Irrelevant; It Does Not Change the Fact That Defendants Filed Answers in**
     **Federal Court**

5           Defendants gripe that the federal court did not rule on their Rule 12(b)(6) Motion to

6    Dismiss while the matter was in federal court.  Opposition at 4:22-25.  That is true – the federal

7    court did *not* rule.  The federal court *could* not rule, because there never was federal jurisdiction,

8    which is precisely why the federal court granted Wagner's Motion to Remand after the improper

9    removal.

10          The specific circumstances of this dispute – Defendants filed a Motion to Dismiss in

11   federal court that was not heard  prior to remand – is precisely what Condition #2 addresses.  The

12   procedural posture of this dispute meets Condition #2, but that matters not a bit, because

13   Defendants already admitted that "only when *both* of two conditions are met," Opposition at

14   4:16 (emphasis in original), could they file a Demurrer to Wagner's Complaint.  There is no

15   dispute that Defendants filed Answers in federal court.  Therefore, there can be no dispute that

16   Condition #1 fails.  As Condition #1 fails, so does Defendants' opportunity to file a Demurrer in

17   this Court after remand.

18          Defendants' protestations aside, it really is that simple.  Defendants' acknowledgment

19   that they can only file a Demurrer if they have *not* filed an Answer in federal court is precisely

20   what renders Defendants' filing and refusing to withdraw the Demurrer sanctionable conduct.

21   **C.   Defendants Confuse the Procedural Posture of this Action With the Required**

22   **Conditions for a Demurrer After Remand.  Defendants' Interpretation Ignores**
     **Condition #1: A Demurrer is Only Permissible if an Answer Has *Not* Been Filed in**

23   **Federal Court**

24          Defendants attempt to muddy the waters by proposing hypothetical statutory language in

25   their Opposition at 5:16-20.  But Defendants' hypothetical does not follow from Wagner's

26   position.  All Condition #2 says is that defendants do not get a second bite at the apple; i.e., if a

27   demurrer *had* already been filed and ruled upon in state or federal court, then a defendant cannot

28   file a similar demurrer in state court after remand.  So, whether Condition #2 is present here or

29   not, nothing changes the fact that Condition #1 permits a demurrer in state court after remand

30   *only* if an answer were *not* filed in federal court.  It is not subject to dispute that Defendants *did*

31   file Answers in federal court.

**Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for Sanctions**

Defendants appear to confuse the procedural posture of this case with the necessary conditions for a demurrer after remand:

> Defendants contend that Section 430.90 does not speak to the specific procedural posture of this case, i.e., where an answer was filed in federal court *and* a demurrer was filed *but not* previously ruled upon by either the original court or the federal court.

Opposition at 6:14-16.

As stated immediately above, "...*and* a demurrer [actually a Rule 12(b)(6) motion] was filed *but not* previously ruled upon" is an accurate description of what happened while this action was in federal court, but that does not mean in any way that Section 430.90(a)(2)(B) does not apply to the current status of this Action. Rather, Section 430.90(a)(2) applies because Defendants did not answer before removal and now the case has been remanded, and subsection (B) sets forth two conditions, and *both* of those conditions must be met for Defendants to file a Demurrer. Here, Condition #1 is *not* met.

Defendants then claim that

> Section 430.90 was intended to prevent a defendant from asking a state court to revisit a demurrer or motion to strike that was already filed *and* resolved prior to remand. But where the issues in the demurrer or motion to strike were not resolved before remand, Section 430.90 would not prevent a defendant from posing the same questions to the original court after remand.

Demurrer at 5:24-28. Wagner actually agrees with *this* part of Defendants' submission; preventing re-litigating the same issue is precisely why Section 430.90(a)(2)(B) includes Condition #2: A demurrer or motion to strike raising the same or similar issues was *not* previously filed and ruled upon by either the original court or the federal court.

But, of course, that assumes that the defendant *only* filed a demurrer (or Rule 12(b)(6) Motion to Dismiss) in federal court which was not ruled on, and the defendant did *not* file an answer in federal court.

Defendants' logic fails in the second part of their submission:

> Were Section 430.90 read otherwise – as Plaintiff suggests – state courts would be prevented from reaching important questions raised in a demurrer or motion to strike whenever a defendant files a federal court answer prior to remand. There is no rationale for such a reading of Section 430.90.

4

Demurrer at 5:28-6:3.  This is precisely what Wagner suggests: State courts *are* "prevented from reaching important questions raised in a demurrer or motion to strike" after remand, if the defendant filed an answer in federal court before remand.  Defendants fail to explain how their position can possibly make sense, given that Section 430.90(a)(2)(B) includes Condition #1 – an answer was *not* filed in the federal court – and Defendants *did* file Answers in federal court.

Wagner's position – that a state court cannot entertain a demurrer after remand when defendant filed an answer in federal court before remand – makes intuitive sense.  A demurrer tests whether the plaintiff has stated a valid claim; a defendant files an answer when a plaintiff *has* stated a claim.  Therefore, it makes no sense, procedurally, to allow a defendant to demur and argue that the plaintiff has *not* stated a claim after the defendant has *already answered* – a tacit admission that the plaintiff *did* state a claim.

**D.  Wagner Increases His Request for Attorneys' Fees**

If Defendants had withdrawn their Demurrer after Wagner's informal request, or after Wagner's formal service of the Motion for Sanctions, Wagner would not have had to write this Reply or oppose the Demurrer.

Wagner's attorney Daniel Balsam predicted – at the time that he filed the Motion for Sanctions – that he would have to spend 7.0 hours opposing the Demurrer.  However, Defendants raised many issues in their Demurrer, and because it takes more text to explain *why* false statements of fact and law are false than to actually make the false statements in the first place, and given the limit of only 15 pages, it actually took Wagner's attorney Daniel Balsam 17.0 hours to write, serve, and file the Opposition to the Demurrer, versus the expected 7.0 hours.  Declaration of Daniel Balsam at ¶ 4.  Balsam also spent 2.1 hours on the Motion for Sanctions, 3.0 hours for this Reply, and expects to spend 4.5 hours traveling to and attending the hearing.  *Id.* at ¶¶ 2, 3, 5.  Balsam's regular billing rate is $250 per hour.  *Id.* at ¶ 6.

## III.  CONCLUSION

Defendants' position makes no sense, whether viewed from the perspective of logic, statutory construction, plain language, grammar, or civil procedure.  Defendants' Demurer is the very essence of a frivolous motion, because they completely ignore the fact that Section 430.90 unequivocally states that a defendant can only file a demurrer after remand if the defendant did *not* file an answer while in federal court.

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

1    Defendants can still make the substantive arguments from their Demurrer -- the emails

2  aren't spams, and even if the emails are spams they don't violate Business & Professions Code

3  § 17529.5, and even if the spams do violate Business & Professions Code § 17529.5 Wagner's

4  claims are preempted by the federal CAN-SPAM Act, etc. -- but they will have to make those

5  arguments as affirmative defenses in their Answers.  Wagner should not have had to incur

6  attorneys' fees opposing Defendants' Demurrer that never should have been filed in the first

7  place.

8    After overruling Defendants' Demurrer in its entirety, this Court should grant Wagner's

9  Motion for Sanctions in the amount of $90 for costs, *id.* at ¶ 7, and $6,650 for attorneys' fees

10  (26.6 hours x $250 per hour).

11

12                                          THE LAW OFFICES OF DANIEL BALSAM

13  Date:        July 30, 2013              BY:  *Daniel L Balsam*

14                                               DANIEL L. BALSAM
                                                 Attorneys for Plaintiff Christopher Wagner

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

Timothy J. Walton (State Bar No. 184292)
Jim C. Twu (State Bar No. 175032)
WALTON TWU LLP
9515 Soquel Drive, Suite 207
Aptos, CA 95003-4137
Phone (831) 685-9800
Fax: (650) 618-8687

Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2912 Diamond Street #218
San Francisco, CA 94131
Phone: (415) 869-2873
Fax: (415) 869-2873

Attorneys for Plaintiff Christopher Wagner

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SONOMA (UNLIMITED JURISDICTION)

| | |
|---|---|
| CHRISTOPHER WAGNER, | ) Case No.:     SCV-252580 |
| | ) |
| Plaintiff, | ) **DECLARATION OF DANIEL BALSAM** |
| | ) **IN SUPPORT OF PLAINTIFF'S REPLY** |
| v. | ) **TO DEFENDANTS' OPPOSITION TO** |
| | ) **PLAINTIFF'S MOTION FOR** |
| SPIRE VISION LLC *et al*, | ) **SANCTIONS** |
| | ) |
| Defendants. | ) **Code Civ. Proc. §§ 128.7, 430.90** |
| | ) |
| | ) Date:        August 7, 2013 |
| | ) Time:        3:30 p.m. |
| | ) Judge:       Hon. Nancy Case Shaffer |
| | ) Dept:        18 |

I, Daniel L. Balsam declare:

1.    I am an attorney duly licensed to practice law in all courts of the State of California. I represent Plaintiff Christopher Wagner in this lawsuit. The following facts are based on my own personal knowledge. If called as a witness, I could and would testify competently to the declared facts under oath.

---

**1**

**DECLARATION OF DANIEL BALSAM IN SUPPORT OF**
**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

2.     I spent 2.1 hours preparing Wagner's Motion for Sanctions.

3.     Because Defendants did not timely withdraw their Demurrer to Wagner's Verified Complaint after being served with Wagner's Motion for Sanctions, I spent 3.0 hours preparing this Reply to Defendants' Opposition to Wagner's Motion for Sanctions.

4.     Because Defendants did not timely withdraw their Demurrer to Wagner's Verified Complaint after being served with Wagner's Motion for Sanctions, I spent 17.0 hours opposing Defendants' Demurrer. (I predicted – at the time that I filed Wagner's Motion for Sanctions – that I would have to spend 7.0 hours opposing the Demurrer. However, Defendants raised many issues in their Demurrer, and because it takes more text to explain why false statements are false than to make false statements in the first place, and given the limit of only 15 pages, it actually took me far longer than I originally expected.)

5.     I expect to spend at least 4.5 hours appearing at the hearing on Wagner's Motion for Sanctions and Defendants' Demurrer to Wagner's Verified Complaint.

6.     My professional rate is $250 per hour, which I believe is consistent with attorneys at my level of experience in the San Francisco Bay Area.

7.     Wagner incurred costs of $90 for filing this Motion for Sanctions and reporting.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed in San Francisco, California, on July 30, 2013.

<em>Daniel L Balsam</em>

DANIEL L. BALSAM

DECLARATION OF DANIEL BALSAM IN SUPPORT OF
PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

| | |
|---|---|
| *Attorney or Party Without Attorney*<br>Daniel L. Balsam (State Bar No. 260423)<br>THE LAW OFFICES OF DANIEL BALSAM<br>2912 Diamond Street #218<br>San Francisco, CA 94131<br>   *Telephone No.:*  415-869-2873<br>     *Fax No.:*  415-869-2873<br>  *Attorney for:*  Plaintiff Christopher Wagner | |
| *Insert name of Court, and Judicial District and Branch Court:*<br>Superior Court of California, County of Sonoma<br>Civil and Family Law Courthouse<br>3055 Cleveland Avenue<br>Santa Rosa, CA 95403 | |

| | | |
|---|---|---|
| *Plaintiff/Petitioner:*  Christopher Wagner<br>*Defendant/Respondent:*  Spire Vision LLC et al | *Case Number:*<br>     SCV-252580 | |

| | | |
|---|---|---|
| **PROOF OF SERVICE – CIVIL**<br>**Check method of service** *(only one):*<br>[  ]  By Personal Service    [  ]  By Mail    [ X ] By Two-Day Delivery<br>[  ]  By Messenger Service    [  ]  By Fax    [  ]  By Electronic Service | *Judge:*    Shaffer<br><br>*Courtroom:*    18 | |

*(Do not use this proof of service to show service of a Summons and complaint.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. My residence or business address is:
   The Law Offices of Daniel Balsam, 2912 Diamond Street #218, San Francisco, CA 94131

4. On *(date):*   July 30, 2013              I served the following **documents** *(specify):*

   Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for Sanctions, Declaration of Daniel Balsam

5. I served the documents on the person or persons below, as follows:
   a.   Name of person served:
        John Du Wors – attorney for Spire Vision entities, Accelerize New Media Inc.

   b.   [ X ]  *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
        Business or residential address where person was served:
        Newman Du Wors LLP, 1201 Third Avenue, Suite 1600, Seattle, WA 98101

6. The documents were served by the following means *(specify):*

   c.   [ X ]  **By two-day delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery
        carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for
        collection and two-day delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the
foregoing is true and correct.

Date:    July 30, 2013

Daniel L. Balsam
Type or Print Name of Declarant                         Signature of Declarant

**PROOF OF SERVICE – CIVIL**

John Du Wors, State Bar No. 233913
john@newmanlaw.com
Leeor Neta, State Bar No. 233454
leeor@newmanlaw.com
NEWMAN DU WORS LLP
1201 Third Avenue, Suite 1600
Seattle, WA 98101
Telephone: (206) 274-2800
Facsimile: (206) 274-2801

Attorneys for Defendants

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SONOMA

| | |
|---|---|
| Christopher Wagner, an individual,<br><br>Plaintiff,<br>v.<br><br>Spire Vision LLC, a Delaware limited liability company, et al.,<br><br>Defendants. | Civil Case No. SCV-252580<br><br>**DECLARATION OF LEEOR NETA REGARDING MEET AND CONFER CONFERENCE ON DEFENDANTS' DEMURRER TO COMPLAINT OF PLAINTIFF CHRISTOPHER WAGNER (SONOMA COUNTY LOCAL RULE 5.4)**<br><br>Hearing Date: August 7, 2013<br>Hearing Time: 3:30 pm<br>Dept. No. 18<br>Judge: Hon. Nancy Case Shaffer |

I, Leeor Neta, declare as follows:

1.    I am an attorney with Newman Du Wors LLP, counsel for Defendants Spire Vision LLC, et al. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2.    On Thursday, August 1, counsel for Plaintiff Christopher Wagner, Dan Balsam, and I spoke by telephone for 45 minutes in a reasonable and good faith attempt to informally resolve Defendants' demurrer to Plaintiff Wagner's complaint.

ENDORSED
FILED

AUG − 5 2013

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

COPY

By Fax

Box 145

1       3.     After discussing them at length, the parties were unable to resolve the

2  issues raised in Defendants' demurrer.

3

4       I declare under penalty of perjury that the foregoing is true and correct.

5

6       Executed in San Francisco, California on August 5, 2013.

7

8

9                      _____

                            Leeor Neta

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**POS-040**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Leeor Neta (State Bar 233454 )<br>Newman Du Wors<br>1201 Third Avenue, Suite 1600<br>Seattle, WA 98101<br>TELEPHONE NO.: (206) 274-2800 FAX NO. *(Optional):* (206) 274-2801<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Spire Vision LLC et al. | **FOR COURT USE ONLY**<br><br>**ENDORSED<br>FILED**<br><br>AUG − 5 2013<br><br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SONOMA |

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sonoma<br>STREET ADDRESS: 3055 Cleveland Avenue<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Santa Rosa CA 95403<br>BRANCH NAME: Civil and Family Law Courthouse | |
| PLAINTIFF/PETITIONER: Wagner | |
| DEFENDANT/RESPONDENT Spire Vision LLC et al. | CASE NUMBER:<br>SCV-252580 |

| PROOF OF SERVICE—CIVIL | |
|---|---|
| **Check method of service** *(only one):*<br>☐ **By Personal Service** ☐ **By Mail** ☑ **By Overnight Delivery**<br>☐ **By Messenger Service** ☐ **By Fax** ☐ **By Electronic Service** | JUDGE: Nancy Shaffer<br>DEPT.: 18 |

*(Do not use this proof of service to show service of a Summons and complaint.)*

1. At the time of service I was over 18 years of age and **not a party to this action.**

2. My residence or business address is:

   1201 Third Avenue, Suite 1600, Seattle, WA 98101

3. ☐ The fax number or electronic notification address from which I served the documents is *(complete if service was by fax or electronic service):*

4. On *(date):* August 5, 2013    I served the following **documents** *(specify):*

   DECLARATION OF LEEOR NETA REGARDING MEET AND CONFER CONFERENCE ON DEFENDANTS' DEMURRER TO COMPLAINT OF PLAINTIFF CHRISTOPHER WAGNER (SONOMA COUNTY LOCAL RULE 5.4)

   ☐ The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:

   a. Name of person served: Daniel L. Balsam

   b. ☑ *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*

   Business or residential address where person was served:

   Law Offices of Daniel Balsam, 2912 Diamond Street #218, San Francisco, CA 94131

   c. ☐ *(Complete if service was by fax or electronic service.)*

   (1) Fax number or electronic notification address where person was served:

   (2) Time of service:

   ☑ The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify):*

   a. ☐ **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

   *(Continued on back)*

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>POS-040 [Rev. January 1, 2009] | **PROOF OF SERVICE—CIVIL**<br>**(Proof of Service)** | Code of Civil Procedure., §§ 1010.6, 1011, 1013, 1013a,<br>2015.5; Cal. Rules of Court, rules 2.260, 2.306<br>*www.courtinfo.ca.gov*<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |

*(left margin)* COPY

*(left margin)* By Fax

*(left margin)* Box 145

**POS-040**

| CASE NAME | CASE NUMBER: |
|---|---|
| Wagner v. Spire Vision LLC | SCV-252580 |

6. b. ☐ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one):*

    (1) ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    (2) ☐ placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

    I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):*

c. ☑ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. ☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. ☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

f. ☐ **By electronic service.** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in item 5. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 5, 2013

Sarah Skaggs
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

### DECLARATION OF MESSENGER

☐ **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
(NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**

POS-040(P)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Wagner v. Spirevision LLC et al | SCV-252580 |

## ATTACHMENT TO PROOF OF SERVICE—CIVIL (PERSONS SERVED)

*(This attachment is for use with form POS-040.)*

**NAMES, ADDRESSES, AND OTHER APPLICABLE INFORMATION ABOUT PERSONS SERVED:**

| **Name of Person Served** | **Where Served** | **Time of Service** |
|---|---|---|
| *(If the person served is an attorney, the party or parties represented should also be stated.)* | *(Provide business or residential address where service was made by personal service, mail, overnight delivery, or messenger service. For other means of service, provide fax number or electronic service address, as applicable.)* | *(Complete for service by fax transmission or electronic service.)* |
| Lifescript, Inc.<br>Kevan Fornasero | Perkins Coie LLP<br>4 Embarcadero Center, Suite 2400<br>San Francisco, CA 94111 | Time: _____ |
| Christopher Wagner<br>Timothy James Walton | Law Offices of Timothy Walton<br>9515 Soquel Drive, Suite 207<br>Aptos, CA 95003 | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |

**ATTACHMENT TO PROOF OF SERVICE—CIVIL (PERSONS SERVED)**
**(Proof of Service)**

Timothy J. Walton (State Bar No. 184292)
Jim C. Twu (State Bar No. 175032)
WALTON TWU LLP
9515 Soquel Drive, Suite 207
Aptos, CA 95003-4137
Phone (831) 685-9800
Fax: (650) 618-8687

Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2912 Diamond Street #218
San Francisco, CA 94131
Phone: (415) 869-2873
Fax: (415) 869-2873

Attorneys for Plaintiff Christopher Wagner

Received
AUG 05 2013
NEWMAN | DUWORS

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SONOMA (UNLIMITED JURISDICTION)

| | |
|---|---|
| CHRISTOPHER WAGNER, | ) Case No.:    SCV-252580 |
| | ) |
| Plaintiff, | ) **DECLARATION OF DANIEL BALSAM** |
| | ) **RE: MEET AND CONFER BEFORE** |
| v. | ) **HEARING** |
| | ) |
| SPIRE VISION LLC *et al*, | ) Date:     August 7, 2013 |
| | ) Time:     3:30 p.m. |
| Defendants. | ) Judge:    Hon. Nancy Case Shaffer |
| | ) Dept:     18 |

I, Daniel L. Balsam declare:

1.   I am an attorney duly licensed to practice law in all courts of the State of California.

2.   I represent Plaintiff Christopher Wagner in this lawsuit.

3.   On August 1, 2013, I met and conferred with Leeor Neta (representing the Spire Vision and

Accelerize New Media Inc. defendants) by telephone for approximately 45 minutes as to:

   • Defendants' Demurrer to the Complaint,

   • Wagner's Motion for Sanctions as to Defendants' Demurrer to the Complaint, and

   • Wagner's Demurrer to Defendants' Answers.

---

**1**

**DECLARATION OF DANIEL BALSAM RE: MEET AND CONFER BEFORE HEARING**

4.    Neither one of us was able to convince the other that the other's position is incorrect.  We
were unable to resolve any of our issues through the meet and confer process.

I declare under penalty of perjury under the laws of the State of California that the foregoing is
true and correct, and that this Declaration was executed in San Francisco, California, on August
1, 2013.

DANIEL L. BALSAM

| | |
|---|---|
| *Attorney or Party Without Attorney*<br>Daniel L. Balsam (State Bar No. 260423)<br>THE LAW OFFICES OF DANIEL BALSAM<br>2912 Diamond Street #218<br>San Francisco, CA 94131<br>    *Telephone No.:*  415-869-2873<br>        *Fax No.:*  415-869-2873<br>    *Attorney for:*  Plaintiff Christopher Wagner | |
| *Insert name of Court, and Judicial District and Branch Court:*<br>Superior Court of California, County of Sonoma<br>Civil and Family Law Courthouse<br>3055 Cleveland Avenue<br>Santa Rosa, CA 95403 | |

| | | |
|---|---|---|
| *Plaintiff/Petitioner:*  Christopher Wagner<br>*Defendant/Respondent:*  Spire Vision LLC et al | *Case Number:* | SCV-252580 |

| | | | |
|---|---|---|---|
| **PROOF OF SERVICE – CIVIL**<br>**Check method of service *(only one)*:** | | *Judge:* | Shaffer |
| [  ]  By Personal Service     [ X ]  By Mail     [  ]  By Overnight Delivery<br>[  ]  By Messenger Service   [  ]  By Fax     [  ]  By Electronic Service | | *Courtroom:* | 18 |

*(Do not use this proof of service to show service of a Summons and complaint.)*

1.   At the time of service I was at least 18 years of age and not a party to this action.

2.   My residence or business address is:
   The Law Offices of Daniel Balsam, 2912 Diamond Street #218, San Francisco, CA 94131

4.   On *(date):*  August 1, 2013          I served the following **documents** *(specify):*

   Declaration of Daniel Balsam re: Meet and Confer Before Hearing

5.   I served the documents on the person or persons below, as follows:
   a.    Name of person served:
      John Du Wors – attorney for Spire Vision entities, Accelerize New Media Inc.

   b.   [ X ]   *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
      Business or residential address where person was served:
      Newman Du Wors LLP, 1201 Third Avenue, Suite 1600, Seattle, WA 98101

6.   The documents were served by the following means *(specify):*

   b.   [ X ]   **By United States mail.**  I enclosed the documents in a sealed envelope or package addressed to the persons at
      the addresses in item 5 and *(specify one):*
      (1)  [ X ]   deposited the sealed envelope with the United States Postal Service, with the postage fully
            prepaid..
      I am a resident or employed in the county where the mailing occurred.  The envelope or package was placed
      in the mail at *(city and state):*  San Francisco, CA

I declare under penalty of perjury under the laws of the State of California and the United States of America that the
foregoing is true and correct.

Date:      August 1, 2013

Daniel L. Balsam                                          *[signature]*
Type or Print Name of Declarant                    Signature of Declarant

**PROOF OF SERVICE – CIVIL**

1  Timothy J. Walton (State Bar No. 184292)
2  Jim C. Twu (State Bar No. 175032)
   WALTON TWU LLP
3  9515 Soquel Drive, Suite 207
   Aptos, CA 95003-4137
4  Phone (831) 685-9800
5  Fax: (650) 618-8687

6  Daniel L. Balsam (State Bar No. 260423)
7  THE LAW OFFICES OF DANIEL BALSAM
   2912 Diamond Street #218
8  San Francisco, CA 94131
9  Phone: (415) 869-2873
   Fax: (415) 869-2873
10

11 Attorneys for Plaintiff Christopher Wagner

12

13

14              SUPERIOR COURT OF THE STATE OF CALIFORNIA

15              COUNTY OF SONOMA (UNLIMITED JURISDICTION)

16 CHRISTOPHER WAGNER,              ) Case No.:   SCV-252580
17                                  )
          Plaintiff,                ) [PROPOSED] ORDER RE: 1) DEFENDANTS'
18                                  ) DEMURRER TO COMPLAINT,
19        v.                        ) 2) PLAINTIFF'S DEMURRER TO
                                    ) DEFENDANTS' ANSWERS, AND
20 SPIRE VISION LLC et al,          ) 3) PLAINTIFF'S MOTION FOR SANCTIONS
21                                  )
          Defendants.               ) Date:       August 7, 2013
22                                  ) Time:       3:30 p.m.
23                                  ) Judge:      Hon. Nancy Case Shaffer
24 _____ ) Dept:       18

25

26        The Demurrer filed jointly by Defendants Spire Vision LLC et al "Spire Vision" and
27 Accelerize New Media Inc. ("Accelerize") to Plaintiff Christopher Wagner's ("Wagner") Verified
28 Complaint came on regularly for hearing by the Court on August 7, 2013 in Department 18 of the
29 Superior Court of Sonoma County, along with Wagner's Demurrer to Spire Vision and Accelerize's
30 (separate) Answers, and Wagner's Motion for Sanctions for Defendants' refusal to withdraw their
31 Demurrer.  The Parties appeared through their counsel of record.  Having considered the papers
32 submitted and oral argument, the Court determined accordingly:

1

33    [PROPOSED] ORDER RE: 1) DEFENDANTS' DEMURRER TO COMPLAINT, 2) PLAINTIFF'S
      DEMURRER TO DEFENDANTS' ANSWERS, AND 3) PLAINTIFF'S MOTION FOR SANCTIONS

## Background

This case was originally filed in Sonoma County Superior Court; then removed to federal district court. The federal court remanded the case back to this court. Defendants Spire Vision LLC (hereafter "Spire Vision") and Accelerize New Media, Inc. (hereafter "Accelerize") did not file responsive pleadings until after the case had been removed to federal court, where they filed answers and a motion to dismiss. After the case was remanded by the federal court, the plaintiff filed a demurrer to the answers that Spire Vision and Accelerize had filed in the federal action, which were not on file in this case. On May 2, 2013, defendants Spire Vision and Accelerize filed a demurrer to the complaint. Plaintiff has filed a motion seeking sanctions against the moving defendants alleging they acted improperly by filing demurrers to the complaint.

On May 29, 2013, this court heard the plaintiff's demurrer to their answer. The hearing was continued to August 7, 2013 because no answers on behalf of defendants Spire Vision or Accelerize were on file in this action. The plaintiff filed the answers filed while the case was pending in federal court as an attachment to the order after hearing.

## Demurrer to Complaint

The demurrer to the complaint filed by defendants Spire Vision and Accelerize is overruled. See Code Civ. Proc. §430.90(b)(2)(B):

> Where the defendant has removed a civil action to federal court without filing a response in the original court and the case is later remanded for improper removal, the time to respond shall be as follows: . . . Demur or move to strike all or a portion of the complaint if: (i) an answer was not filed in the federal court, **and** (ii) a demurrer or motion to strike raising the same or similar issues was not filed and ruled upon by the original court prior to the removal of the action to federal court or was not filed and ruled upon in federal court prior to the remand . . .

Since the defendants Spire Vision and Accelerize answered the complaint in the federal court, the only responsive pleading they may file upon remand is an answer. (CCP §430.90(a)(2)(A)). Section 430.90(a)(2)(A) does not allow a defendant to adopt an answer filed in the federal court. On the contrary, this section requires that the defendant file an answer "if [it] has not filed an answer in the original court."

Defendants Spire Vision and Accelerize shall have ten days from the date of service of this order to file answers to the complaint.

//

//

**2**

[PROPOSED] ORDER RE: 1) DEFENDANTS' DEMURRER TO COMPLAINT, 2) PLAINTIFF'S
DEMURRER TO DEFENDANTS' ANSWERS, AND 3) PLAINTIFF'S MOTION FOR SANCTIONS

**Demurrer to Answer**

Since no operative answer is on file in this case, the plaintiff's demurrer is premature and is overruled, without prejudice.

**Motion for Sanctions**

Based on the demurrers to the complaint filed by defendants Spire Vision and Accelerize, plaintiff has filed a motion for sanctions. Plaintiff has satisfied the procedural requirements for filing a motion for sanctions pursuant to CCP §128.7. Under all of the circumstances before the court, taking into consideration both demurrers before the court, sanctions are denied.

IT IS SO ORDERED.

Date:        August 7, 2013          By: _____

HON. NANCY CASE SHAFFER

---

3

[PROPOSED] ORDER RE: 1) DEFENDANTS' DEMURRER TO COMPLAINT, 2) PLAINTIFF'S
DEMURRER TO DEFENDANTS' ANSWERS, AND 3) PLAINTIFF'S MOTION FOR SANCTIONS

1  Timothy J. Walton (State Bar No. 184292)
2  Jim C. Twu (State Bar No. 175032)
   WALTON TWU LLP
3  9515 Soquel Drive, Suite 207
   Aptos, CA 95003-4137
4  Phone (831) 685-9800
5  Fax: (650) 618-8687

6
   Daniel L. Balsam (State Bar No. 260423)
7  THE LAW OFFICES OF DANIEL BALSAM
   2912 Diamond Street #218
8  San Francisco, CA 94131
9  Phone: (415) 869-2873
   Fax: (415) 869-2873
10

11 Attorneys for Plaintiff Christopher Wagner

12

13

14               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15           **COUNTY OF SONOMA (UNLIMITED JURISDICTION)**

16 CHRISTOPHER WAGNER,                ) Case No.:      SCV-252580
17                                     )
              Plaintiff,               ) **PLAINTIFF'S OPPOSITION TO**
18                                     ) **DEFENDANTS' MOTION FOR**
                                       ) **PROTECTIVE ORDER (BY FAX)**
19      v.                             )
                                       )
20 SPIRE VISION LLC *et al*,           ) Date:          August 21, 2013
21                                     ) Time:          3:30 p.m.
              Defendants.              ) Judge:         Hon. Nancy Case Shaffer
22                                     ) Dept:          18
23 ────────────────────────────────────

24                           [Caption Only]

25

26

27

28

29

30

31

32

                                      i
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

**Page**

Table of Contents ..................................................................................................................... ii

Table of Authorities ................................................................................................................. iv

I.  **INTRODUCTION** ............................................................................................................1

II.  **FACTUAL BACKGROUND** ..........................................................................................1

III.  **DISCUSSION** ..................................................................................................................2

    A.  Legal Standard ...........................................................................................................2

    B.  By Refusing Wagner's Offer to Treat the Spire Vision Companies
        Collectively for Discovery Purposes and Refusing to Enter Into any
        Stipulations, Spire Vision Chose to Submit to Voluminous Discovery ......................3

    C.  Wagner's Discovery Seeks Highly Relevant Information ...........................................5

        *1.  The Number of Spams that Spire Vision Sent and/or Advertised In, and
        the Number of Email Addresses to Which Spire Vision Spams Were Sent,
        Are Relevant* ........................................................................................................5*

        *2.  The Amount of Money Received from Advertising Clients is Relevant* ..................6

        *3.  The Consideration Each Spire Vision Company Received for Wagner's
        Email Addresses is Relevant* ................................................................................6

        *4.  Each Spire Vision Company's Corporate Structure and Affiliation
        With the Others is Relevant* ..................................................................................6

        *5.  Spire Vision's Brands, Addresses and Domain Names are Highly
        Relevant* ...............................................................................................................6

        *6.  Spire Vision's Alleged Efforts to Tailor Marketing Campaigns to Its
        Advertising Client is Related to the Direct Consent Requirement* ........................7

        *7.  Contracts, Communications, Checks and Electronic Payments
        Between the Spire Vision Entities are Relevant* ...................................................8

        *8.  Wagner Did Not Needlessly Duplicate Requests by Using Synonyms* ..................8

        *9.  Compound Requests Are the Result of Spire Vision's Refusal to
        Identify Which Entity(-ies) Sent Which Spams* ....................................................9

ii

## TABLE OF CONTENTS (cont.)

Page

    10. "Identify" As Used in the Requests for Admissions Is Sufficiently Clear..............10

    11. "Sending Commercial Emails to [Plaintiff]" As Used in the Form Interrogatories Is Not Vague .............................................................................10

    12. Spire Vision's Claim that Third Parties Have Relevant Information is Insufficient Grounds to Refuse to Respond..................................................11

    13. Wagner Only Sought the Identity of Employees with Relevant Information ........................................................................................11

    14. How Spire Vision Marketed Its "Brands" Is Relevant to Its Misleading and Deceptive Practices ...................................................................11

    15. Spire Vision Raised Issues and Made Claims about Wagner's Attorney Daniel Balsam; Wagner is Entitled to Discovery About the Bases for Spire Vision's Claims ..............................................................................12

    16. Defendants Are Not Entitled to a Protective Order or a Stay of Discovery ..........................................................................................13

    17. Appointment of a Discovery Referee Would Waste Judicial Resources ...............13

    18. Spire Vision's Attempts to Avoid Discovery Do Not Merit a Case Management Order and Should Not Result In Relaxed Discovery Deadlines ..............................................................................14

IV.     CONCLUSION .....................................................................15

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Balsam v. Trancos Inc. et al,*
    203 Cal. App. 4th 1083 (1st Dist. 2012), *petition for review denied,*
    2012 Cal. LEXIS 4979 (Cal. May 23, 2012), *petition for certiori denied,* 2012
    U.S. LEXIS 8423 (U.S. Oct. 29, 2012), *petition for rehearing denied,* 2013
    U.S. LEXIS 243 (U.S. Jan. 7, 2013) .............................................................7

*Colonial Life & Accident Ins. Co. v. Superior Court,*
    31 Cal. 3d 785 (1982) .................................................................................3

*Courtney v. Waring,*
    191 Cal. App. 3d 1434 (4th Dist. 1987)....................................................15

*Davies v. Superior Court,*
    36 Cal. 3d 291 (1984) .................................................................................3

*Hypertouch v. ValueClick Inc.,*
    192 Cal. App. 4th 805 (2d Dist. 2011).....................................................15

*Kopp v. Fair Political Practices Commission,*
    11 Cal. 4th 607 (1995) .............................................................................15

*People v. Crittenden,*
    9 Cal. 4th 83 (1994) ................................................................................15

**Statutes**

Bus. & Prof. Code § 17529.5 ..................................................................... *passim*
Bus. & Prof. Code § 17538.5 .........................................................................1, 14
Code Civ. Proc. § 430.90..................................................................................13
Code Civ. Proc. § 2017(a)...........................................................................2, 3, 5
Code Civ. Proc. § 2031.230.............................................................................11

**Other Authorities**

Weil & Brown, CAL. PRACTICE GUIDE: CIVIL PROCEDURE BEFORE TRIAL (The Rutter
    Group 1996)...............................................................................................3

iv

## I. **INTRODUCTION**

Defendants Spire Vision LLC and its related companies and "brands" (collectively, "Spire Vision") and Accelerize New Media Inc.[1] ("Accelerize") are seeking a protective order from voluminous discovery that Spire Vision has inflicted upon itself.  More specifically, although the 10 Spire Vision companies treat themselves collectively in pleadings and motions – including *this* Motion for Protective Order – they refused to allow Plaintiff Christopher Wagner ("Wagner") to treat them collectively for discovery purposes, insisting that Wagner propound discovery to each Defendant.  If Spire Vision had agreed to respond collectively, it would have eliminated 90% of the discovery and nearly all the discovery requests that Spire Vision complains are burdensome and harassing.

Furthermore, Wagner suggested various stipulations that would have significantly reduced the amount of discovery even *within* the remaining 10%.

In brief, Spire Vision is playing a corporate shell game amongst the 10 companies (and eight "brands") and complaining that discovery is forcing Spire Vision to reveal all the shells at once.  Spire Vision is using every conceivable tactic to delay and obstruct the discovery of highly relevant information.  As such, the Court should order Spire Vision to provide substantive responses to all of the discovery requests at issue in this Motion.

## II. **FACTUAL BACKGROUND**

Wagner sued Spire Vision and others for material violations of California's anti-spam law, Business and Professions Code § 17529.5, as for failing to make required disclosures in its advertising as set forth by Business and Professions Code § 17538.5.  *See* Verified Complaint, generally.  There are 49 unlawful spams at issue constituting email advertising that promotes Spire Vision and/or was sent by Spire Vision to Wagner.  Wagner has been unable to definitively determine which of the Spire Vision entities advertised in or sent the individual emails, due in no small part to Spire Vision's deliberate blurring of corporate boundaries.  For example:

- The *CobraHealthChoices.com* domain name is registered to SERVE CLICKS LLC, but the *CobraHealthChoices.com* website's Terms of Use state that JUNIPER MARKETING LLC operates the website.

---

[1] Accelerize's participation in the Motion for Protective Order is puzzling, since Wagner has not even served discovery on Accelerize.

1

- WAGNER received a spam advertising the *EveryDayFamily.com* website from the domain name *TheMagnify.net*, which is registered to YOURADSHERE at a box at a branch of The UPS Store in Rosemead, California. However, a graphic in the body of that same spam claims the spam was sent from 221 N. Hogan Street #386 in Jacksonville, Florida, which is an address claimed by both FURTURESDRIVE and PULLSMART.
- WAGNER received various spams identifying DIGITAL PUBLISHING CORPORATION as the advertiser, but when he clicked the links, he ended up at various websites, the domain names for which are registered to WARD MEDIA INC.

Verified Complaint at ¶ 32.

Given that there are (at least) 10 interrelated Spire Vision corporate entities involved (plus eight random word pairings that Spire Vision refers to as "brands"), Wagner's attorneys knew that separate discovery would of necessity be extensive. For that reason, Wagner repeatedly offered to allow the Spire Vision entities to respond collectively to almost all of the discovery requests, before *and* after Wagner served his discovery. Declaration of Daniel Balsam ("Balsam Decl.") at ¶ 2. Spire Vision admits this. Motion at 1:16-17. However, as Spire Vision also admits, it refused that offer… claiming on the one hand that each individual Defendant would respond to the discovery responses differently, preventing a collective response… while on the other hand seeking a protective order because the resulting discovery that *they insisted* that Wagner propound separately to each Spire Vision entity is "duplicative and burdensome." Motion at 9:24-10:1.

### III. DISCUSSION

#### A. Legal Standard

Code of Civil Procedure § 2017(a) governs the scope of discovery permissible under California law. It provides in pertinent part:

> Unless otherwise limited by order of the court in accordance with this article, any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence. Discovery may relate to the claim or defense of the party seeking discovery or of any other party to the action. Discovery may be obtained of the identity and

2

location of persons having knowledge of any discoverable matter, as well as of the existence, description, nature, custody, condition, and location of any document, tangible thing, or land or other property.

For discovery purposes, information is relevant if it "might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement." Weil & Brown, CAL. PRACTICE GUIDE: CIVIL PROCEDURE BEFORE TRIAL ¶ 8:66.1, p. 8C-1 (The Rutter Group 1996). Admissibility is not the test and information, unless privileged, is discoverable if it might reasonably lead to admissible evidence. *Davies v. Superior Court*, 36 Cal. 3d 291, 301 (1984). The phrase "reasonably calculated to lead to the discovery of admissible evidence" makes it clear that the scope of discovery extends to any information that reasonably might lead to other evidence that would be admissible at trial. "Thus, the scope of permissible discovery is one of reason, logic and common sense." Weil & Brown at ¶ 8:67, p. 8C-2. These rules are applied liberally in favor of discovery. *Colonial Life & Accident Ins. Co. v. Superior Court*, 31 Cal. 3d 785, 790 (1982).

**B.   By Refusing Wagner's Offer to Treat the Spire Vision Companies Collectively for Discovery Purposes and Refusing to Enter Into any Stipulations, Spire Vision Chose to Submit to Voluminous Discovery**

Spire Vision claims that it felt "compelled to refuse" Wagner's request to treat them collectively, "concerned with how they would provide a collective response to requests regarding multiple emails for which everyone was not even allegedly responsible." Motion at 3:23-25. In a way this makes the point – Spire Vision entities have made this amount of discovery necessary because they are not even clear amongst themselves about who sent or was advertised in which email.

Wagner explained repeatedly that if *any* entity would admit to a question, then the collective response would be "admit," and if *no* entity would admit, then the collective response would be "deny." Spire Vision's attorney Leeor Neta claimed that he didn't understand this. Balsam Decl. at ¶ 3. Of course, nothing prohibits one or more Spire Vision entities from providing a more detailed response to any particular question, if necessary. Moreover, since all of the companies are "affiliated," Motion at 3:22, if this Action results in a monetary judgment in Wagner's favor, presumably the entities could allocate that judgment amongst themselves.

Spire Vision repeatedly cites the 6,155 discovery requests Wagner propounded for the proposition that the number *itself* proves that the discovery is burdensome and harassing. But, that number is spread over eighteen separate (but related) Spire Vision companies and "brands."

**3**

1    Even by Spire Vision's own count, each company/brand received only 23 form
2  interrogatories.  Wagner propounded 241 special interrogatories to each of nine Spire Vision
3  companies and 244 to On Demand Research LLC.  Wagner propounded 248 requests for
4  admission to each of nine Spire Vision companies and 260 to On Demand Research LLC.
5  Wagner propounded 47 requests for production of documents to each of nine Spire Vision
6  companies and 52 to On Demand Research LLC.  Balsam Decl. at ¶ 4.  The different counts
7  undermines Spire Vision's attorney Leeor Neta's claim that "*No* effort was made to tailor each
8  request to each Defendant."  Motion at 6:8-9 (emphasis added).  Wagner *did*, in fact, tailor
9  specific questions for On Demand Research LLC.  But he could not tailor specific questions for
10 the other nine companies because he does not know which company is responsible for which
11 spams.  This is *why* Wagner needs the discovery – to figure out who did what.  Of *course* the
12 discovery is duplicative between (although not within) the Spire Vision companies.

13    Given that there are 49 spams at issue in this Action, and it is unclear which Spire Vision
14 entity advertised in/sent which emails, the discovery to each individual Defendant is not unduly
15 burdensome.  After all, Spire Vision is the one that refused Wagner's offer to provide a
16 collective response.

17    Spire Vision claims that in his May 6 email, Wagner's attorney Daniel Balsam

18       suggested that the discovery could be reduced by "NINETY PERCENT" if
         Defendants provided a collective response.  Mr. Balsam also suggested that a
19       collective response would eliminate the need for a response to 170 – or less than
         3% – of the whole volume, and perhaps more, but provided no details.
20

21 Motion at 6:19-24.  This statement is false in two separate ways.  First, as described above, a
22 collective response means that 10 corporate entities could have provided a single *one* set of
23 responses, eliminating *nine* sets of responses to special interrogatories, requests for admission,
24 and requests for production of documents... a 90% reduction.  Second, Balsam *did* provide
25 details.  Balsam identified four stipulations that would have reduced the need for many questions
26 even *within* the one remaining set of discovery:

27       If you'll stipulate that Wagner did NOT give direct consent to any Spire Vision
         company or any of its advertising clients, that would eliminate a lot of questions
28       about direct consent.

29       A stipulation that Spire Vision (collectively) owns and operates a certain list of
30       domain names would eliminate a lot of SROGs.

31       A stipulation that none of the "brands" (Achieve Opportunities, etc.) are readily
         traceable to any Spire Vision entity would remove a number of questions.
32

4

> A stipulation that Spire Vision does not target its advertising would remove a number of questions about targeting, criteria, etc.

Balsam Decl. at ¶ 5 and Ex. A. As shown, Wagner offered Spire Vision the means to easily eliminate more than 90% of the discovery, but Spire Vision rejected the offer. Spire Vision claims that a collective response is "impossible," Motion 6:8. However, as noted throughout the Motion and Neta's supporting declaration, the Spire Vision entities have no problem collectively objecting to the discovery requests. If they can collectively litigate, they can collectively respond to discovery.

Spire Vision makes false assumptions and engages in gross exaggeration when it claims that it would take a lawyer working full-time six months to respond to Wagner's discovery. Motion at 9:17-20. First, Spire Vision has always had it within its power to reduce the discovery by 90%. Second, even *if* each Spire Vision company responded individually, in most cases an answer could be copied-and-pasted into the other companies' responses… taking mere seconds, not 10 minutes. As for requests for admissions, it is likely one company would respond "admit" and nine would respond "deny"… again, taking mere seconds, not 10 minutes.

## C.  Wagner's Discovery Seeks Highly Relevant Information

Spire Vision makes a conclusory statement in the Motion that

> Upon review, it became clear that most of the requests had little direct connection to the elements of the Plaintiff's causes of action, i.e. whether the emails at issue contain unauthorized third-party domain names; falsified, misrepresented, or forged header information; or objectively and materially misleading subject lines. Most of the requests failed to address the matter of direct consent to receive the emails, as well as Defendants' efforts to effectively prevent unsolicited commercial email advertisements.

Motion at 4:2-8. Spire Vision takes a myopically narrow view of the scope of permissible discovery under California law, which permits discovery if the information "either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." Code Civ. Proc. § 2017(a). Here, the requests and interrogatories are highly calculated to lead to the discovery of admissible evidence.

### 1.  The Number of Spams that Spire Vision Sent and/or Advertised In, and the Number of Email Addresses to Which Spire Vision Spams Were Sent, Are Relevant

Spire Vision claims that the number of email advertisements sent, and the number of email addresses to which the spams were sent, is not reasonably calculated to lead to the discovery of admissible evidence. However, both are relevant to the issues of whether Spire

5

Vision had effective policies and procedures to prevent advertising in unlawful spam and whether the recipients had given direct consent to Spire Vision and/or its advertisers to send them commercial email advertisements.

### 2.  The Amount of Money Received from Advertising Clients is Relevant

The amount of money each Spire Vision company received from advertising clients is relevant to the issue of damages.  It is also relevant to the identities of DOE Defendants, because Spire Vision is playing a corporate shell game.  How much money each entity received from unsolicited commercial email advertisements is relevant to whether each one is or was properly capitalized.  In fact, in some cases, it appears that one Spire Vision entity is sending spams advertising a different Spire Vision entity, suggesting that the entities might not be following proper corporate formalities, lending support to Wagner's belief that the Spire Vision companies are all alter-egos of each other and under common control.

### 3.  The Consideration Each Spire Vision Company Received for Wagner's Email Addresses is Relevant

The consideration received in exchange for Wagner's email addresses is relevant to the issue of direct consent, as it provides relevant information as to how Spire Vision actually obtained Wagner's email addresses and from whom, potentially identifying DOE defendants and shed light as to if there actually was direct consent.  Knowing how Spire Vision got Wagner's email addresses also provides relevant information on whether Spire Vision had effective policies and procedures to prevent the sending of unsolicited commercial emails.  The value of Wagner's email addresses may also lead to admissible evidence relating to Wagner's damages.

### 4.  Each Spire Vision Company's Corporate Structure and Affiliation With the Others is Relevant

Given that 10 Spire Vision entities (excluding the "brands") are related to each other in a corporate sense, knowing how each entity is structured and its relation to the others is necessary for an understanding of which of the various entities are liable for the unlawful conduct.  The information is also relevant to the issue of damages and whether Spire Vision uses multiple corporate identities to swap assets amongst its various companies and attempt to avoid liability as they send and advertise in unlawful spams.

### 5.  Spire Vision's Brands, Addresses and Domain Names are Highly Relevant

Spire Vision claims the requests relating to their brand names, addresses, and domain names, and explanations as to how they facially identify any Spire Vision companies is not

reasonably calculated to lead to the discovery of admissible evidence.  Motion 4:15-17.  This claim is meritless, because

> header information in a commercial e-mail is falsified or misrepresented for purposes of section 17529.5(a)(2) when it uses a sender domain name that neither identifies the actual sender on its face nor is readily traceable to the sender using a publicly available online database such as WHOIS.

*Balsam v. Trancos Inc. et al,* 203 Cal. App. 4th 1083, 1101 (1st Dist. 2012), *petition for review denied,* 2012 Cal. LEXIS 4979 (Cal. May 23, 2012), *petition for certiori denied,* 2012 U.S. LEXIS 8423 (U.S. Oct. 29, 2012), *petition for rehearing denied,* 2013 U.S. LEXIS 243 (U.S. Jan. 7, 2013).

Therefore, Spire Vision's pattern and practice of deliberately registering domain names so that recipients cannot trace them to any real Spire Vision entity is highly relevant as to violations of California's anti-spam statute.  Wagner argues that when one of the Spire Vision entities – he cannot determine which one (or ones) – sends a spam from, to name but one example, the domain name *eproductiveblog.com,* which does not identify any Spire Vision entity on its face and which is registered to "AgreeWizard," claiming its address to be a box at a branch of The UPS Store in Sterling Heights, Michigan – a state in which Spire Vision has no physical presence – such practice violates the statute because it prevents him from readily identifying any of the actual Spire Vision companies by a Whois query.  *Trancos, supra.*

Wagner also argues that when Spire Vision registers *all* of its domain names in such a manner, it undermines a defense of "practices and procedures to prevent advertising in unlawful spam."

### 6.  *Spire Vision's Alleged Efforts to Tailor Marketing Campaigns to Its Advertising Client is Related to the Direct Consent Requirement*

Spire Vision's alleged efforts to tailor marketing campaigns to the needs of its advertising clients are relevant to Spire Vision's or the other advertisers' claim of direct consent from the recipients of their email advertisements, and whether they had effective policies and procedures to prevent the sending of unlawful spams.

For example, EverydayFamily Inc. claims that its website *EverydayFamily.com* is

> a family driven website – in every sense – featuring a growing community of people who share in the everyday experience of parenting. We strive to be an online home for experts and parents who have advice and information to share, as well as those who are seeking guidance and support as they move through their family's journey, from pre-conception to preschool and beyond.

7

Welcome to EverydayFamily.com!, http://www.everydayfamily.com/about (last visited August 7, 2013).  Wagner is not a parent and has no plans to be a parent in the foreseeable future.  The fact that Spire Vision sent a spam advertising *EverydayFamily.com* to Wagner undermines Spire Vision's claim that it provides tailored marketing campaigns for its clients *and* its claim that Wagner gave direct consent to send him commercial email.

### 7.  *Contracts, Communications, Checks and Electronic Payments Between the Spire Vision Entities are Relevant*

Again, since the Spire Vision companies are all related and treat themselves collectively except when responding to discovery, Wagner must determine the specific corporate relationships. This is what discovery is *for*.  Moreover, this information, to the extent it is not covered by any privilege, is relevant to who may have sent each of the emails to Wagner and whether there are grounds to pierce the corporate veil.

### 8.  *Wagner Did Not Needlessly Duplicate Requests by Using Synonyms*

Spire Vision gripes that Wagner asked each entity the following allegedly duplicative special interrogatories #14-16 (emphasis added):

> If you contend that the damages alleged in Plaintiff Wagner's Verified Complaint were not caused by you, but were caused by one or more third parties whose activities were not *approved* by you, state all facts that support your contention (including identifying those third parties).

> If you contend that the damages alleged in Plaintiff Wagner's Verified Complaint were not caused by you, but were caused by one or more third parties whose activities were not *ratified* by you, state all facts that support your contention (including identifying those third parties).

> If you contend that the damages alleged in Plaintiff Wagner's Verified Complaint were not caused by you, but were caused by one or more third parties whose activities were not *controlled* by you, state all facts that support your contention (including identifying those third parties).

Motion at 4:24-5:1.  But the words "approved," "ratified," and "controlled" are *not* synonyms. Spire Vision might or might not *approve* certain From Names or Subject Lines before spams are sent, and might or might not *ratify* them after the fact, and neither approval nor ratification has anything to do with whether or not Spire Vision actually *controlled* its third party marketing agents.

Moreover, if Wagner had attempted to put those three terms into a single interrogatory, Spire Vision could have objected to a compound request, and it would have been correct to do so.

**8**

Spire Vision also complains that Wagner asked each entity allegedly duplicative requests for admissions #7-12:

> **REQUEST FOR ADMISSION #7**
> Admit that at least some of the COMMERCIAL EMAIL ADVERTISEMENTS that you sent in 2012 were sent to people who did not agree to receive them.

> **REQUEST FOR ADMISSION #8**
> Admit that at least some of the COMMERCIAL EMAIL ADVERTISEMENTS that you sent in 2012 were sent to people who did not give you DIRECT CONSENT to send them.

> **REQUEST FOR ADMISSION #9**
> Admit that at least some of the COMMERCIAL EMAIL ADVERTISEMENTS that you sent in 2012 were sent to people who did not give your advertising clients DIRECT CONSENT to send them.

> **REQUEST FOR ADMISSION #10**
> Admit that at least some of the COMMERCIAL EMAIL ADVERTISEMENTS sent by third parties in 2012 in which you advertised were sent to people who did not agree to receive them.

> **REQUEST FOR ADMISSION #11**
> Admit that at least some of the COMMERCIAL EMAIL ADVERTISEMENTS sent by third parties in 2012 in which you advertised were sent to people who did not give you DIRECT CONSENT to send them.

> **REQUEST FOR ADMISSION #12**
> Admit that at least some of the COMMERCIAL EMAIL ADVERTISEMENTS sent by third parties in 2012 in which you advertised were sent to people who did not give the third parties DIRECT CONSENT to send them.

Perhaps if Spire Vision and its attorneys had read the questions more carefully, they would have realized that these are *not* duplicative. RFAs #7-9 target commercial emails sent *by Spire Vision*. RFA #7 asks if the recipients agreed – implicitly to *anyone* – to receive commercial emails. RFA #8 asks if the recipients gave *Spire Vision* "direct consent" to send them commercial email. RFA #9 asks if the recipients gave Spire Vision's *advertising clients* "direct consent" to send them commercial email. In contrast, RFAs #10-12 target commercial emails in which Spire Vision advertised but that were sent *by third parties*.

### 9. Compound Requests Are the Result of Spire Vision's Refusal to Identify Which Entity(-ies) Sent Which Spams

Spire Vision complains that numerous discovery requests are "compound." Motion at 5:1-4. However, the use of the word "every" does not make a question compound. Indeed,

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

because the use of the "every" occurs in a dependent clause each time it occurs, Spire Vision might not need to answer at all.  If Spire Vision insists that *every* single commercial email advertisement that it sent and/or advertised in complies with the law (despite specific examples set forth in the Verified Complaint and in the discovery requests themselves), then Wagner is entitled to know the basis for that belief.

Moreover, Spire Vision refuses to identify which entity sent which emails.  Additionally, by grouping some requests, Spire Vision is still able to answer common issues in singular discovery requests rather than numerous duplicative requests of which it complains elsewhere in the Motion.  Spire Vision is complaining on one hand that discovery requests are compound while at the same time complaining that they are also duplicative.  In effect, Spire Vision wants to have its cake and eat it too.

### 10. "Identify" As Used in the Requests for Admissions Is Sufficiently Clear

Spire Vision asserts that the request to "identify" frustrates its responses.  Motion at 5:6. However, the use of "identify" in those requests does no such thing.  "Identify" addresses one of the central issues in this case: whether the emails that Spire Vision (or others) sent to Wagner are misleading and deceptive by failing to identify the actual sender of the email or the advertiser of the email, i.e. which Spire Vision entity or its third-party publishers.

Spire Vision is merely trying to avoid responding to discovery that it understands perfectly well because, as it has retained competent lawyers, experienced at defending spammers, Balsam Decl. at ¶ 6, it knows that these discovery items address the central issue of liability in this Action.  In fact, Spire Vision's understanding is evidenced by its inability to explain how the discovery questions "frustrate a response."  Motion at 5:5-6.

### 11. "Sending Commercial Emails to [Plaintiff]" As Used in the Form Interrogatories Is Not Vague

Spire Vision claims that the form interrogatories are "impossible to answer" because the incident "[s]ending of commercial emails to [Plaintiff]" is vague.  Motion at 5:8-11.  However, Wagner has filed a Verified Complaint that clearly sets forth the facts and legal theories of his case.  He has also provided to Spire Vision the emails at issue in this case.  As such, Spire Vision, who specializes in email marketing, has the capacity to understand the term "[s]ending of commercial emails to [Plaintiff]" and the ability to answer the form interrogatories, given the legal and factual issues involved in the Action.

**10**

### 12. Spire Vision's Claim that Third Parties Have Relevant Information is Insufficient Grounds to Refuse to Respond

Spire Vision claims that information responsive to some of the discovery requests is in the hands of third parties. Motion at 5:11-16. However, the California Discovery Act considers such a contingency at Code of Civil Procedure § 2031.230, which provides in pertinent part:

> A representation of inability to comply with the particular demand for inspection, copying, testing, or sampling shall affirm that a diligent search and a reasonable inquiry has been made in an effort to comply with that demand. This statement shall also specify whether the inability to comply is because the particular item or category has never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in the possession, custody, or control of the responding party. *The statement shall set forth the name and address of any natural person or organization known or believed by that party to have possession, custody, or control of that item or category of item.* (emphasis added).

Therefore, to the extent relevant information is in the possession of third parties, Spire Vision has a duty to conduct a diligent search for such information, and if it still cannot comply, Spire Vision must state the name and address – must *identify* – anyone that the Spire Vision entities (either individually or collectively) knows or believes to have possession of that item.

### 13. Wagner Only Sought the Identity of Employees with Relevant Information

Spire Vision claims that Wagner's special interrogatories seek the names and contact information of nearly all of the Defendants' employees. Motion at 5:17-19. However, interrogatories 208-214 only seek the identity of witnesses with information about the emails sent to Wagner. These individuals will have relevant information on Spire Vision's practices and procedures to prevent the sending of unsolicited commercial emails, whether Wagner gave direct consent to receive commercial emails, how Spire Vision obtained Wagner's email address, who wrote the allegedly unlawful From Names and Subject Lines, and who registered the domain names used to send the spams. All these issues are highly relevant to Wagner's claims and all of these witnesses, by definition, have that information. If nearly every employee has knowledge about Spire Vision's use of email advertising, Wagner has all the more right to learn the identity of material witnesses.

### 14. How Spire Vision Marketed Its "Brands" is Relevant to Its Misleading and Deceptive Practices

Spire Vision states that Wagner has "fixed upon each Defendants' [sic] efforts to market or promote another Defendant's brand, e.g. 'State all actions you have taken to promote 'Achieve Opportunities' as a brand.'" Motion at 5:19-23.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

1    The fact is, Spire Vision does not register the domain names it uses to send spams to any

2  of the actual corporate entities.  Instead, Spire Vision registers the domain names to its "brands":

3  AchieveOpportunities, AgreeWizard, FurturesDrive [sic], JunctionLights, Opportunity Central,

4  PathsDirect, PullSmart, YourAdsHere.

5    Serious marketers take their brands seriously.  For example, in 1992-1993, the Procter &

6  Gamble Company advertised its brand "Crisco Shortening" and conducted research to determine

7  consumer perceptions of Crisco.  A person could easily determine that Crisco Shortening was a

8  P&G brand simply by looking at the packaging or a print advertisement.  Balsam Decl. at ¶ 7.

9    In contrast, Wagner alleges that:

10  • Spire Vision registers its spamming domain names to two random words slapped

11    together that it calls a "brand."

12  • A member of the public cannot readily trace the "brands" back to any actual Spire

13    Vision company.

14  • Spire Vision has not promoted its brands or done anything to differentiate them.

15    In the marketing world, *brand* has a meaning, and Wagner is entitled to explore whether

16  AchieveOpportunities, AgreeWizard, FurturesDrive [sic], JunctionLights, Opportunity Central,

17  PathsDirect, PullSmart, and YourAdsHere are really brands, as Spire Vision has claimed., or if

18  they are just two random words thrown together solely for the purposes of r egistering domain

19  names in a manner that prevents a person from tracing the "brands" back to any actual Spire

20  Vision company by a Whois query.

21  ### 15. Spire Vision Raised Issues and Made Claims about Wagner's Attorney Daniel
22  Balsam; Wagner is Entitled to Discovery About the Bases for Spire Vision's Claims

23    After Spire Vision improperly removed this Action to federal court, Wagner filed a

24  Motion to Remand.  When Spire Vision filed its Opposition, it referred to *Balsam* – Wagner's

25  attorney and not a party – throughout, and alleged that

26    "The present lawsuit is simply the latest filed by Daniel Balsam ("Balsam")—on
    behalf of his proxy clients—against the Spire Vision Family of companies, brands
27    and affiliates."  Opposition at 1:2-4.

28    "Wagner Is A Mere Proxy For His Attorney Daniel Balsam. . . . For ten years,
    Balsam has threatened the email marketing industry and wasted invaluable court
29    resources on his specious complaints about spam. (Id.) In either his name or the
    names of his proxy clients, Balsam has bilked over $1 million in court
30    judgments."  Opposition at 2:5-8.

31

32

**12**

"At its heart, this case is just one chapter in an extended dispute between Balsam and the Spire Vision Family." Opposition at 8:4-5.

"Because Balsam knew that he could never win in federal court, he attempted to craft the present lawsuit in a way that might avoid removal. He chose again to target the Spire Vision Family." Opposition at 8:11-13.

Balsam Decl. at ¶ 8 and Ex. B.

Spire Vision essentially accuses Wagner of being a mindless pawn of his attorney Balsam. Therefore, Wagner believes that Spire Vision might attempt to challenge his standing to bring this lawsuit. Indeed, Spire Vision has already alleged that Wagner has unclean hands. Spire Vision made these accusations, and Wagner is entitled to explore Spire Vision's bases – if any exist – for such claims.

### 16. Defendants Are Not Entitled to a Protective Order or a Stay of Discovery

Spire Vision requested a stay of discovery pending the resolution of its Demurrer. However, Spire Vision already secured ample time to gather the relevant information by filing an improper removal to federal court, buying additional time to which it is not entitled. Additionally, while this Action was still in the United States District Court for the Northern District of California, Spire Vision answered the Complaint, precluding it from filing a Demurrer in this Action. Code Civ. Proc. § 430.90. On August 7, this Court entered an Order overruling the Demurrer. The issue of a stay is therefore moot.

### 17. Appointment of a Discovery Referee Would Waste Judicial Resources

Spire Vision has engaged in a litigation strategy of obstruction and delay by improperly removing this case to federal court, filing an improper Demurrer, and insisting on individual discovery to each entity while simultaneously objecting to the volume of discovery. Spire Vision is the party who is attempting to turn a straightforward civil case into a "complex discovery nightmare," Motion at 13:5, through its refusal to answer Wagner's discovery and by filing the instant meritless Motion for Protective Order.

Moreover, the *volume* of discovery does not automatically make the discovery *complex*. Wagner concedes there is a significant amount of discovery, but that is the logical and foreseeable result of 49 spams and 10 different Spire Vision companies, plus the eight "brands." None of Wagner's questions are *complex*. Spire Vision is simply trying to stall and run up Wagner's costs.

**13**

This Court should order Spire Vision to respond collectively, or order each entity to respond on its own and stop complaining about the volume. If the Spire Vision companies can manage to collectively remove to federal court, answer, demurrer, and object to discovery, it should not be much additional effort to collectively respond to discovery.

### 18. Spire Vision's Attempts to Avoid Discovery Do Not Merit a Case Management Order and Should Not Result In Relaxed Discovery Deadlines

This case does not meet the exceptional circumstances criteria necessitating a case management order, as Spire Vision claims in the Motion at 14:2-24.

1. The subject matter of the Action is unlawful spamming in violation of Business & Professions Code § 17529.5, and failure to disclose the advertiser's real name and address in violation of Business & Professions Code § 17538.5. That does not make it complex.

2. There are 10 Spire Vision companies and eight "brands," but they are all affiliated. Motion at 3:22. They all retained the same counsel of record. They already filed numerous pleadings and motions (including this one) collectively, which should indicate that that the issues among them can be managed collectively without any conflict of interest. If they can file motions collectively, they can respond to discovery collectively as well. *If* there are any issues of separate interest, the only place it could occur is between Spire Vision and Accelerize New Media Inc., and yet the same attorneys represent both.

3. This lawsuit is about unlawful spam, but it is *not* about technical labeling requirements, nor is it about non-commercial email "correspondence." Spire Vision's bald declaration that "the issues . . . are decidedly complex," Motion at 14:12-13, does not make it so. In fact, the issues are actually rather simple. Advertisers are strictly liable for advertising in unlawful spam, generic From Names and domain names registered so as to not be readily traceable violate Business & Professions Code § 17529.5, and Subject Lines claiming that people can receive gift cards by taking surveys without even hinting at any purchase requirements are false and misleading. To the extent that anything about this case might be "complex," it has solely been due to Spire Vision's actions to delay and obstruct, actions that could be and can be easily avoided.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

4.  Defendants EverydayFamily Inc. and Zulu Marketing LLC have been dismissed. Balsam Decl. at ¶ 9.

5.  The nature of the discovery is straightforward. Admittedly, the discovery is voluminous, but that is a problem of Spire Vision's own making.

6.  Spire Vision sets forth no facts explaining why trial will be lengthy.

7.  There are no other actions or proceedings that may affect the case, other than the rulings of two California Court of Appeal cases addressing Business & Professions Code § 17529.5: *Balsam v. Trancos, supra*, and *Hypertouch v. ValueClick Inc.*, 192 Cal. App. 4th 805 (2d Dist. 2011). Although Spire Vision might wish it to be so, this Court is not bound by decisions of the lower federal courts. *See, e.g., Kopp v. Fair Political Practices Commission*, 11 Cal. 4th 607, 620 (1995); *People v. Crittenden*, 9 Cal. 4th 83, 120 (1994); *Courtney v. Waring*, 191 Cal. App. 3d 1434, 1440 (4th Dist. 1987).

8.  Law and Motion will not be particularly difficult. This Court has already resolved Spire Vision's Demurrer to the Complaint and Wagner's Motion for Sanctions.

## IV.  CONCLUSION

For the reasons stated above, Wagner respectfully requests that Defendants' Motion for Protective Order be denied in its entirety, and that this Court order Spire Vision to respond to all of Wagner's discovery requests at issue in this Motion.

THE LAW OFFICES OF DANIEL BALSAM

Dated:  _____August 8, 2013_____      *Daniel L Balsam*      (by fax)
                                        Daniel Balsam
                                        Attorneys for Plaintiff Christopher Wagner

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

1  Timothy J. Walton (State Bar No. 184292)
2  Jim C. Twu (State Bar No. 175032)
   WALTON TWU LLP
3  9515 Soquel Drive, Suite 207
   Aptos, CA 95003-4137
4  Phone (831) 685-9800
5  Fax: (650) 618-8687

6
   Daniel L. Balsam (State Bar No. 260423)
7  THE LAW OFFICES OF DANIEL BALSAM
   2912 Diamond Street #218
8  San Francisco, CA 94131
9  Phone: (415) 869-2873
   Fax: (415) 869-2873
10

11 Attorneys for Plaintiff Christopher Wagner

12

13

14              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15          **COUNTY OF SONOMA (UNLIMITED JURISDICTION)**

16 CHRISTOPHER WAGNER,            )  Case No.:      SCV-252580
17                                )
        Plaintiff,                )  **DECLARATION OF DANIEL BALSAM**
18                                )  **IN SUPPORT OF PLAINTIFF'S**
19      v.                        )  **OPPOSITION TO DEFENDANTS'**
                                  )  **MOTION FOR PROTECTIVE ORDER,**
20 SPIRE VISION LLC *et al,*      )  **OR, IN THE ALTERNATIVE, FOR A**
21                                )  **STAY IN DISCOVERY AND**
        Defendants.               )  **IMPLEMENTATION OF A CASE**
22                                )  **MANAGEMENT ORDER (BY FAX)**
23                                )
                                  )  Date:      August 21, 2013
24                                )  Time:      3:30 p.m.
25                                )  Judge:     Hon. Nancy Case Shaffer
26 _____ )  Dept:      18

27 I, Daniel L. Balsam declare:

28 1.  I am an attorney duly licensed to practice law in all courts of the State of California.  I
29     represent Plaintiff Christopher Wagner ("Wagner") in this Action.  The following facts are
30     based on my own personal knowledge.  If called as a witness, I could and would testify
31     competently to the declared facts under oath.
32

---

**1**

**DECLARATION OF DANIEL BALSAM IN SUPPORT OF**
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

2. I repeatedly offered to allow the Spire Vision entities to respond collectively to almost all of the discovery requests, before *and* after I served Wagner's discovery.

3. Regarding collective responses, I explained repeatedly that if *any* entity would admit to a question, then the collective response would be "admit," and if *no* entity would admit, then the collective response would be "deny." Spire Vision's attorney Leeor Neta claimed that he didn't understand this.

4. I propounded 241 special interrogatories to each of nine Spire Vision companies and 244 to On Demand Research LLC. I propounded 248 requests for admission to each of nine Spire Vision companies and 260 to On Demand Research LLC. I propounded 47 requests for production of documents to each of nine Spire Vision companies and 52 to On Demand Research LLC.

5. Exhibit A is a true and correct copy of an email I sent to Leeor Neta on May 6, 2013 stating that collective responses and stipulations could drastically reduce the amount of discovery.

6. I have personal knowledge that the firm of Newman Du Wors LLP has defended spammers in numerous federal and state Actions, and has represented numerous spammers in negotiations that did not result in litigation.

7. In 1992-1993, I was an Assistant Account Executive at Grey Advertising (New York), working in the Procter & Gamble group on the Crisco Shortening account. I have personal knowledge that Grey and P&G conducted research to determine consumer perceptions of Crisco. I have personal knowledge that a person could easily determine that Crisco Shortening was a P&G brand simply by looking at the packaging or a print advertisement.

8. Exhibit B is a true and correct copy of several pages from the Opposition to Wagner's Motion to Remand that the Spire Vision entities (collectively) filed after improperly removing this Action from this Court to the U.S. District Court for the Northern District of California.

9. Defendants EverydayFamily Inc. and Zulu Marketing LLC have been dismissed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed in San Francisco, California, on August 8, 2013.

*Daniel L. Balsam* (by fax)

DANIEL L. BALSAM

2

**DECLARATION OF DANIEL BALSAM IN SUPPORT OF**
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Exhibit A

## Dan Balsam

| | |
|---|---|
| **From:** | Dan Balsam [legal@danbalsam.com] |
| **Sent:** | Monday, May 06, 2013 5:11 PM |
| **To:** | 'Leeor Neta'; 'John Du Wors' |
| **Cc:** | 'twalton@twalton.net'; 'Keith Scully' |
| **Subject:** | Wagner's discovery to Spire Vision |

Mr. Neta,

On our call last Friday, you complained that Wagner's discovery to Spire Vision is excessive, duplicative, burdensome, etc.

However, this is a problem entirely of Spire Vision's own making.

First, Spire Vision chose to create at least 10 companies, at least 10 brands, and dozens of domain names. That necessitated extensive discovery, and we strongly believe that every question propounded is appropriate.

Second, you rejected our repeated requests to treat the Spire Vision entities collectively for discovery purposes, even though they have treated themselves collectively in pleadings and motions.

Nevertheless, we again offer your clients the opportunity to provide one set of responses to RFAs, SROGs, and RFPDs on behalf of all Spire Vision entities. That would immediately reduce your required responses by NINETY PERCENT. It would ALSO reduce the discovery WITHIN the one remaining set, because it would make unnecessary questions such as, for example, connections between the companies and which company owns certain properties (SROGs #29-31, 163-168, 223-240, and perhaps more).

We could also consider certain stipulations that would remove entire categories of questions. On the call, I posed a hypothetical that if you'll stipulate that Wagner did NOT give direct consent to any Spire Vision company or any of its advertising clients, that would eliminate a lot of questions about direct consent. Other hypothetical possibilities include:

* A stipulation that Spire Vision (collectively) owns and operates a certain list of domain names would eliminate a lot of SROGs.
* A stipulation that none of the "brands" (Achieve Opportunities, etc.) are readily traceable to any Spire Vision entity would remove a number of questions.
* A stipulation that Spire Vision does not target its advertising would remove a number of questions about targeting, criteria, etc.

We could probably come up with more examples too. Note, we are NOT committing to any of these at this moment without our client's approval. They're merely hypotheticals; food for discussion.

Finally, we might be open to extending your time to respond, so long as we agree that the responses will be substantive, and not merely objections.

Please let us know your thoughts.

========================================
Dan Balsam
Sue a Spammer! www.DanHatesSpam.com

8/8/2013

Exhibit B

1  John Du Wors, State Bar No. 233913
   john@newmanlaw.com
2  Leeor Neta, State Bar No. 233454
   leeor@newmanlaw.com
3  NEWMAN DU WORS LLP
4  1201 Third Avenue, Suite 1600
   Seattle, WA 98101
5  Telephone:  (206) 274-2800
6  Facsimile:   (206) 274-2801

7  Attorneys for Defendants

8

9                    UNITED STATES DISTRICT COURT
10                   NORTHERN DISTRICT OF CALIFORNIA

11

12  Christopher Wagner, an individual,          No. 13-cv-00054-YGR

13              Plaintiff,                       **DEFENDANTS' OPPOSITION TO
                                                 PLAINTIFF'S MOTION TO
14         v.                                    REMAND AND REQUEST FOR
                                                 COSTS**
15  Spire Vision LLC, a Delaware limited liability
    company, et al.,                            The Honorable Yvonne G. Rogers
16                                               Date:  March 5, 2013
17              Defendants                       Time:  2:00 pm
                                                 Location:  Courtroom 5, 2nd Floor
18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

The present lawsuit is simply the latest filed by Daniel Balsam ("Balsam")—on behalf of his proxy clients—against the Spire Vision Family of companies, brands and affiliates. Last year when Balsam made identical claims against the Spire Vision Family, the Honorable Phyllis J. Hamilton of this Court applied Ninth Circuit precedent to dismiss the claims with prejudice, finding that they were pre-empted by the federal CAN-SPAM Act. The present lawsuit—on behalf of Christopher Wagner—presents identical claims. To avoid the preclusive effect of Judge Hamilton's ruling, Balsam filed in state court and joined three sham California defendants. But there is no possibility that Wagner will recover against two of these defendants, one of which was dismissed with prejudice well before removal. Claims against the other sham California defendant—LifeScript, Inc.—bear no connection to the other claims and parties and prove that LifeScript was fraudulently misjoined. It is clear, moreover, that the amount in controversy already exceeds $75,000. All of the identifiable co-defendants have either joined in the removal or have been dismissed with prejudice. Remand is inappropriate.

While Balsam also seeks the fees and costs associated with seeking remand, fees are only awarded where there is no objectively reasonable ground for removal. Balsam refused to meet and confer regarding the grounds for removal. There is simply no basis for awarding fees and costs here.

Defendants' Opposition to Plaintiff's Motion for Remand and Request for Costs is supported by the accompanying Declaration of Daniel Berger, dated February 8, 2013 ("BD"), the accompanying Declaration of John Du Wors, dated February 8, 2013 ("DD"), the accompanying Declaration of Leeor Neta, dated February 8, 2013 ("ND"), the accompanying Declaration of Lindsey Rowson, dated February 8, 2013 ("RD"), the accompanying Declaration of Damon Stein, dated February 8, 2013 ("SD"), and the exhibits thereto submitted herewith.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

**A.   Wagner Is A Mere Proxy For His Attorney Daniel Balsam.**

California Business and Professions Code, Section 17529.5[1]—California's anti-spam statute—is the cornerstone of Daniel Balsam's ("Balsam") very lucrative practice. (DD, ¶ 2.) For ten years, Balsam has threatened the email marketing industry and wasted invaluable court resources on his specious complaints about spam. (Id.) In either his name or the names of his proxy clients, Balsam has bilked over $1 million in court judgments. (Id.)

**B.   This Court Dismissed Claims Identical To Those Brought By Balsam On Behalf Of A Similarly Situated Plaintiff.**

Spire Vision is a family of companies, one or more of which create and/or distribute email internet advertisements. (BD, ¶ 2.) This family includes XL Marketing Corp.; Mediactive LLC; Prime Advertisers LLC; Serve Clicks LLC; Spire Vision Holdings, Inc.; Spire Vision, LLC; Ward Media, Inc.; and several other brands and affiliates, together with Achieve Opportunities, AgreeWizard, Digital Publishing Corporation, Juniper Marketing LLC, On Demand Research LLC, Opportunity Central, Paths Direct and Pullsmart ("the Spire Vision Family"). (Id.) Advertising emails sent by the Spire Vision Family are permission-based, and the Spire Vision Family has strict guidelines regarding direct consent. (Id.)

The Spire Vision Family is well-acquainted with Balsam. Between March 2011 and May 2011, Balsam sent a series of demand letters to the Spire Vision Family. (DD, ¶ 3.) In these letters, Balsam alleged that his client and wife, Cathy Riley, was due $118,000 in statutory damages because she received a series of advertising emails for which the Spire Vision Family was allegedly responsible. (Id.) The letters attempt to extort money from the Spire Vision Family by threatening litigation pursuant to Section 17529.5. (Id.) Refusing to be falsely accused and held hostage by Balsam, the

---

[1] Hereinafter, all section references are to the California Business and Professions Code.

1

### III.   DISCUSSION

2

**A.    Balsam Filed In State Court For The Sole Purpose Of Avoiding The**
3     **Preclusive Effect Of Judge Hamilton's Ruling In A Nearly Identical Case.**

4          At its heart, this case is just one chapter in an extended dispute between Balsam

5     and the Spire Vision Family. In the last chapter, Judge Hamilton of this Court dismissed

6     with prejudice identical claims brought by Balsam on behalf of a similarly-situated

7     plaintiff. (DD, ¶ 6, Ex. B.) Her ruling applied clearly established Ninth Circuit precedent

8     that the federal CAN-SPAM Act preempts complaints regarding advertising emails that

9     fail to allege reliance or compensatory damages. *See Gordon v. Virtumundo, Inc.*, 575

10    F.3d 1040, 1050 (9th Cir. 2009). (Id.)

11         Because Balsam knew that he could never win in federal court, he attempted to

12    craft the present lawsuit in a way that might avoid removal. He chose again to target the

13    Spire Vision Family. But this time, Balsam added several California "middleman"

14    defendants—Accelerize New Media, Inc.; Adconion Media, Inc.; and LifeScript, Inc.—

15    under a joint and several liability doctrine that finds no support in the law. (See Section

16    C, infra.) He also fraudulently misjoined LifeScript, Inc. as an advertiser defendant,

17    despite the fact that the claims against LifeScript have no relation to the other defendants.

18    (See id.) And he prayed for liquidated damages and fines in the amount of only

19    $64,000—while obscuring his prayer for attorneys' fees, costs, and punitive damages that

20    are certain to raise the amount in controversy over the $75,000 threshold.

21         This Court should see through Balsam's attempts to flout Judge Hamilton and

22    avoid the preclusive effect of her ruling. Defendants have already moved to dismiss the

23    new lawsuit under the same arguments presented to Judge Hamilton. (See Dkt. No. 18.)

24    The Court should take this opportunity to refuse remand, hear the motion to dismiss, and

25    demonstrate the impropriety of evading the rulings of this Court.

26

**B.    The Failure Of All Defendants To Consent To Removal Is A Mere Procedural**
27     **Defect That Does Not Require Remand.**

28         Wagner complains that seven defendants were omitted from the notice of removal.

8

**OPPOSITION TO MOTION TO REMAND AND REQUEST FOR COSTS – 13-0054-YGR**

| Attorney or Party Without Attorney | |
|---|---|
| Daniel L. Balsam (State Bar No. 260423)<br>THE LAW OFFICES OF DANIEL BALSAM<br>2912 Diamond Street #218<br>San Francisco, CA 94131<br>  Telephone No.:  415-869-2873<br>  Fax No.:  415-869-2873<br>  Attorney for:  Plaintiff Christopher Wagner | |
| Insert name of Court, and Judicial District and Branch Court:<br>Superior Court of California, County of Sonoma<br>Civil and Family Law Courthouse<br>3055 Cleveland Avenue<br>Santa Rosa, CA 95403 | |
| Plaintiff/Petitioner:   Christopher Wagner<br>Defendant/Respondent:   Spire Vision LLC et al | Case Number:<br>       SCV-252580 |

| PROOF OF SERVICE – CIVIL | Judge: | Shaffer |
|---|---|---|
| **Check method of service** *(only one)*:<br>[  ] By Personal Service   [  ] By Mail   [ X ] By Overnight Delivery<br>[  ] By Messenger Service   [  ] By Fax   [  ] By Electronic Service | Courtroom: | 18 |

*(Do not use this proof of service to show service of a Summons and complaint.)*

1.   At the time of service I was at least 18 years of age and not a party to this action.

2.   My residence or business address is:
     The Law Offices of Daniel Balsam, 2912 Diamond Street #218, San Francisco, CA 94131

4.   On *(date)*:   August 8, 2013               I served the following **documents** *(specify)*:

     Plaintiff's Opposition to Defendants' Motion for Protective Order, Declaration of Daniel Balsam

5.   I served the documents on the person or persons below, as follows:
     a.   Name of person served:
          John Du Wors – attorney for Spire Vision entities, Accelerize New Media Inc.

     b.   [ X ]   *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
          Business or residential address where person was served:
          Newman Du Wors LLP, 1201 Third Avenue, Suite 1600, Seattle, WA 98101

6.   The documents were served by the following means *(specify)*:

     c.   [ X ]   **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight
          delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for
          collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery
          carrier.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the
foregoing is true and correct.

Date:   August 8, 2013

Daniel L. Balsam                                      *[signature]* By Fax
Type or Print Name of Declarant                       Signature of Declarant

PROOF OF SERVICE – CIVIL

**Box 145**

1    John Du Wors, State Bar No. 233913
     john@newmanlaw.com
2    Leeor Neta, State Bar No. 233454
3    leeor@newmanlaw.com
     NEWMAN DU WORS LLP
4    1201 Third Avenue, Suite 1600
5    Seattle, WA 98101
     Telephone:   (206) 274-2800
6    Facsimile:   (206) 274-2801

7    Attorneys for Defendants

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA
10                       COUNTY OF SONOMA

11   Christopher Wagner, an individual,          Civil Case No. SCV-252580

12              Plaintiff,                        **REPLY IN SUPPORT OF**
                                                  **DEFENDANTS' MOTION FOR**
13        v.                                      **PROTECTIVE ORDER OR, IN THE**
14                                                **ALTERNATIVE, FOR A STAY OF**
     Spire Vision LLC, a Delaware limited        **DISCOVERY AND**
15   liability company, et al.,                  **IMPLEMENTATION OF A CASE**
16              Defendants.                       **MANAGEMENT ORDER**

17
                                                  Hearing Date: August 21, 2013
18                                                Hearing Time: 3:30 p.m.
                                                  Dept. No. 18
19                                                Judge: Hon. Nancy Case Shaffer

20                    **I.    INTRODUCTION**

21        Plaintiff Christopher Wagner copied and pasted **6,155 discovery requests** and

22   demands that 18 distinct Defendants bear the impossible burden of responding to every

23   single one. Plaintiff cites no authority—in any matter, let alone complex litigation—for

24   such voluminous discovery. While Plaintiff suggests that all 18 Defendants should craft a

25   collective response to each request, he concedes that this will add to their burden.

26   (Opposition at 3:25-27.) Ultimately, Plaintiff claims that he "knows the facts"—indeed,

27   the emails speak for themselves—and the requests have been crafted in the most

28   burdensome manner possible. If this matter is as complex as his discovery suggests, there

                                         1
     **REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER – SCV-252580**

ENDORSED
FILED

AUG 1 4 2013

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

By Fax

COPY

1    is no merit to his claim that a discovery referee and case management order are not

2    needed. It is hard to find a better example of the misuse of discovery as a weapon to wage

3    litigation. Defendants' motion for a protective order should be granted.

## II.    DISCUSSION

### A.    Plaintiff Does Not Dispute That The California Supreme Court And Courts of Appeal Limit Voluminous And/Or Harassing Discovery.

7         In their opening brief, Defendants explained that the California Supreme Court

8    and Courts of Appeal have condemned requests that are harassing, unduly burdensome,

9    unreasonably cumulative, duplicative or poorly defined. (Motion at 8, citing *Emerson*

10   *Electric Co. v. Superior Court* (1997) 16 Cal.4th 1101, 1102-1108; *West Pico Furniture*

11   *Co. of Los Angeles v. Superior Court* (1961) 56 Cal.2d 407, 418; *Columbia Broadcasting*

12   *System, Inc. v. Superior Court* (1968) 273 Cal.App.2d 12, 21; *Calcor Space Facility, Inc.*

13   *v. Superior Court* (1997) 53 Cal.App.4th 216, 220-22.) Defendants also explained that

14   the California Supreme Court and Courts of Appeal have limited discovery where the

15   burden of a response outweighs the benefit and where discovery is unimportant to the

16   resolution of important issues. (*Id.*) Plaintiff's opposition ignores these authorities.

### B.    The Sheer Volume of Plaintiff's Discovery—6,155 Requests—Is Sufficient Evidence of An Intent To Harass, Annoy And Burden Defendants.

19        Defendants demonstrate in their opening brief that the time and cost associated

20   with responding to Plaintiff's *6,155* requests alone render the requests unduly

21   burdensome. (Motion at 9-10.) In response, Plaintiff makes little of Defendants' time

22   estimate for responding to his 6,155 requests, claiming that one Defendant's answer

23   "could be copied-and-pasted into the other companies' responses." (Opposition at 5:11-

24   15.) But Plaintiff's discovery is addressed to multiple, distinct entities and responsible

25   parties do not respond to discovery in this way.

26        Plaintiff is obfuscating when he claims that the "different counts" of discovery

27   served upon each Defendant proves that Plaintiff attempted to tailor specific requests.

28   (Opposition at 4:6-8.) Plaintiff propounded an identical set of 241 special interrogatories,

280 requests for admission and 47 requests for production on each of 10 Defendants, and an identical set of 23 form interrogatories on each of 18 Defendants. Defendants can only imagine that Plaintiff produced this discovery in minutes in the hope that Defendants would spend months crafting responses, thus gaining an unfair advantage.

Unless this court issues a protective order, Defendants will have to spend months serving individual responses to each and every one of Plaintiff's 6,155 requests. Plaintiff insists that a collective response among all 18 Defendants is the only means of obtaining a significant reduction in the 6,155 requests.[1] (Opposition at 3-5.) Plaintiff cites no precedent—legal or otherwise—for multiple entities making collective responses to discovery. Even so, it is impossible to understand how several different entities could collectively respond to any of the requests for admission that would bind all of them when—as Plaintiff concedes (Opposition at 3:22-25)—some Defendants will need to deny a request that others will have to admit. As consolation, Plaintiff suggests that Defendants provide "a more detailed response" to explain any collective response. (Opposition at 3:25-27.) But if the only way of managing a collective response is to *add* to the respondents' burden, the collective response will not reduce the burden of responding to 6,155 requests. It is a proposal, in other words, without a solution.

In the end, Plaintiff's proposal would not appreciably reduce the burden of responding to his voluminous discovery because all 18 entities would still be required to collect documents for every request for production, craft a narrative response to every interrogatory, and admit or deny every single request for admission.

**C.    Plaintiff's Opposition Suggests That His 6,155 Requests Are Intended To Harass.**

Plaintiff offers one reason for his numerous requests: "to figure out who did

---

[1] Plaintiff suggests that Defendants deserve this impossible burden, stating: "If they can collectively litigate, they can collectively respond to discovery." (Opposition at 5:6-8.) But Defendants have filed collective motions out of courtesy to Plaintiff, who would presumably otherwise have to respond to each individual motion. And a collective legal motion is not akin to a judicially-binding admission of fact.

what." (Opposition at 4:9-11.) In fact, he claims that "[t]his is what discovery is for." (*Id.* at 8:9-10.) Plaintiff is mistaken. This is what the pre-filing investigation stage is for. Even so, he could have simply asked each Defendant to admit whether it sent or advertised in any one of the 49 emails at issue. Then, with respect to each one who admits, he could lodge additional discovery. But by duplicating thousands of requests in minutes, it is clear that Plaintiff's sole intent was to harass and to wage litigation through discovery. Each category of requests identified in Plaintiff's opposition could have easily been narrowed or omitted.

### 1. Requests Regarding The Number Of Emails Sent Are Needlessly Harassing.

Plaintiff claims—without explanation—that requests about the number of emails sent are "relevant to the issues of whether [Defendants] had effective policies and procedures to prevent [unlawful] advertising" and "direct consent." (Opposition at 5:31-6:3.) This makes no sense. If Plaintiff really wanted to know about Defendants' policies in this regard, he would have simply asked for them. And Plaintiff is best equipped to offer evidence about his own consent.

### 2. Requests Regarding The Amount Of Money Received By Defendants Are Needlessly Harassing.

Plaintiff claims—without explanation—that requests about the amount of money received by Defendants are "relevant to the identities of DOE Defendants" and because it appears one Defendant sent emails advertising another Defendant. (Opposition at 6:6-10.) But if Plaintiff means to suggest there is anything wrong about one entity sending an email that advertises another, he is sorely misreading the state of the law. And if Plaintiff really cared to identify Doe Defendants, he would look to the emails themselves (all of which are traceable) or at least ask about who else participated in the drafting and delivery of the emails at issue. He would not insist on an overbroad intrusion into Defendants' private financial information.

### 3. Requests Regarding the Consideration Received For Plaintiff's Email Address Are Needlessly Harassing.

Plaintiff claims—without explanation—that requests regarding consideration are "relevant to the issue of direct consent" and whether Defendants "had effective policies and procedures to prevent the sending of unsolicited commercial emails." (Opposition at 6:14-21.) Again, this makes no sense. If Plaintiff really wanted to know about Defendants' policies in this regard, he would have simply asked for them. And Plaintiff is best equipped to offer evidence about his own consent.

### 4. Requests Regarding Corporate Affiliation And Structure Are Needlessly Harassing.

Plaintiff claims—without explanation—that requests about corporate affiliation and structure are necessary because Defendants "use[] multiple corporate identities to swap assets amongst [their] various companies and attempt to avoid liability." (Opposition at 6:14-21.) There is absolutely no evidence to support this statement. More importantly, Plaintiff admits that he knows the facts and that it does not matter which Defendant is liable because all 18 "could allocate the judgment amongst themselves." (*Id.* at 3:27-29.) As such, Plaintiff does not need to pose such exhaustive discovery. Plaintiff is talking out of both sides of his mouth. If he really wanted to identify which Defendant sent each email, he would look to the emails themselves (all of which are traceable) or at least ask about who participated in the drafting and delivery of the emails at issue. He would not engage in a needless fishing expedition.

### 5. Requests Regarding Branding Are Needlessly Harassing.

Plaintiff suggests that requests about branding will determine whether the emails are "readily traceable" to the Defendants. (Opposition at 7:1-12.) For support, Plaintiff embarks on a tangential discussion about how "[s]erious marketers take their brands seriously." (*Id.* at 11:29-12:20.) But the parties already know that the emails *are* readily traceable to the Defendants, all of which were named in Plaintiff's complaint and responded immediately to his allegations. Plaintiff disproves his own point in the example he cites: an email from an address with a domain name registered to one of the

1   Defendants, AgreeWizard, the actual sender of the email. (Opposition at 7:12-18.)

2   Plaintiff named AgreeWizard in the complaint, he served AgreeWizard by mail, and

3   AgreeWizard appeared in this action. But even if one assumes the emails were not

4   traceable to Defendants—and they are—discovery requests that explore brand

5   positioning are not reasonably calculated to elucidate any relevant issue. The sole

6   purpose of these requests is to harass.

7           **6.    Requests Regarding Marketing Campaigns Are Needlessly Harassing.**

8           Plaintiff claims—without explanation—that requests about marketing campaigns

9   are relevant to the issue of "direct consent" and whether Defendants "had effective

10  policies and procedures" regarding commercial email. (Opposition at 7:23-27.) Again,

11  this makes no sense. If Plaintiff really wanted to know about Defendants' policies in this

12  regard, he would have simply asked for them. And Plaintiff is best equipped to offer

13  evidence about his own consent.

14
           **7.    Requests Regarding All Contracts, Communications, Checks And**
15  **Electronic Payments Are Needlessly Harassing.**

16          Plaintiff claims—without explanation—that requests about all contracts,

17  communications and payments are important to determine "whether there are grounds to

18  piece the corporate veil." [sic] (Opposition at 8:9-12.) This argument borders on the

19  absurd. Plaintiff's unsupported belief that the Defendants are sham entities does not merit

20  an overbroad intrusion into Defendants' private financial information.

21
           **D.    Plaintiff Fails To Explain How His Requests Are Not Unreasonably**
22  **Duplicative, Compound or Poorly Defined.**

23          In their opening brief, Defendants explained that Plaintiff's requests are

24  unreasonably duplicative, compound and poorly defined. (Motion at 4:24-5:16.)

25  Plaintiff's attempt to address each point is unavailing.

26          **1.    The Terms Used in Plaintiff's Duplicative Requests *Are* Synonyms.**

27          Plaintiff admits that he lodged multiple requests that were word-for-word copies

28  with the exception of one word, which appeared as either "approved," "ratified," or

"controlled." (Opposition at 8:13-32.) In the context of Plaintiff's requests, these words are indeed synonyms. But if Plaintiff insists otherwise, he undermines his own argument and proves Defendants' point by refusing to define these terms in the requests themselves. Defendants cannot presume what Plaintiff means by these terms. Defendants asked for him to define these terms and Plaintiff refused.

Plaintiff also claims that some of his requests for admission are not duplicative because they employ different words and address slightly varying shades of the same issue, e.g., whether other email recipients (not Plaintiff) agreed to receive emails, whether other email recipients gave direct consent to receive emails, whether other email recipients gave direct consent to others to receive emails, etc. (Opposition at 9:1-28.) Plaintiff is missing the point. When a party lodges six requests that are more than sufficiently addressed by one request then he is needlessly duplicating his requests. When this practice is compounded across 18 sets of discovery, the intent can only be to harass. Plaintiff also ignores that none of the cited requests have anything to do with the emails at issue or even Plaintiff. At best, they might shed light on Defendants' policies and procedures for sending commercial email. And even then, they are unnecessary because Plaintiff could just ask about those policies and procedures.

### 2.   Plaintiff's Requests *Are* Needlessly Compound.

In attempting to defend the compound nature of his requests, Plaintiff makes two important misstatements. First, Plaintiff claims he is entitled to explore the basis for Defendants' belief that the emails at issue comply with the law. (Opposition at 10:2-5.) But, as Plaintiff well knows, Defendants' subjective belief is not reasonably calculated to lead to the admissibility of any evidence in support of his causes of action, both of which are based on *objective* standards. (*See* Bus. & Prof. Code, §§ 17529.5 and 17538.5.) Second, he claims that Defendants are refusing to identify which party sent which email. (Opposition at 10:6.) But nothing could be further from the truth. Putting aside that the emails are traceable to the senders, Defendants would be happy to respond to 49 requests that asked with respect to each email which entity was responsible for delivery. Plaintiff

**REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER – SCV-252580**

prefers instead to play games, lodging compound requests that needlessly add to Defendants' burden.

### 3.     Plaintiff's Requests *Are* Poorly Defined.

Many of Plaintiff's requests are poorly defined. Roughly 100 requests for admission employ, but do not define the term "identify." For example, Request for Admission No. 248 asks:

> Admit that the From Name "COBRA Choice" in a COMMERCIAL EMAIL ADVERTISEMENT could identify the www. usahealthchoice.com/Cobra.htm website.

(See Declaration of Leeor Neta, dated May 23, 2013, Ex. 3, No. 248.) It is unclear whether Plaintiff means to ask whether the "from" name identifies this website on its face or provides sufficient clues to help a recipient identify the website through publicly available database searches, which is all the law requires. But by not defining the term "identify," the request is needlessly inscrutable.

Plaintiff's form interrogatories are particularly problematic. While his complaint alleges 49 different and distinct violations of state law, Plaintiff's form interrogatories attempt to shoehorn all of these incidents into the singular term definition of "INCIDENT" upon which form interrogatories are based. Defendants understand that form interrogatories were intended for disputes in which there is a central incident, typically a single tort or negligent act. But where 49 different and distinct acts are alleged, a single set of form interrogatories is of little use. Plaintiff's definition of "INCIDENT" to include 49 separate incidents has flummoxed any possible response.

### E.   Plaintiff Appears To Concede That His Overbroad Intrusion Into Defendants' Private Financial Information Is Impermissible.

In their opening brief, Defendants explain that the exhaustive financial discovery being conducted by Plaintiff is relevant only to punitive damages and is precisely the type of discovery abuse the courts have cautioned against. (Motion at 10:16-12:6.) In his opposition, Plaintiff concedes that many of his requests are "relevant to the issue of

**REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER – SCV-252580**

damages." (Opposition at 6:4-12, 21-29.) And by "damages," Plaintiff necessarily means punitive damages, because the only other damages he seeks are liquidated damages. Defendants should not be forced to expend the time or expense necessary to compile a mountain of information that is irrelevant to any substantive claims, and that is—at best—only remotely related to a measure of damages that may never be awarded. To do so would only heighten the "game" element of trial preparation by "substituting a battle of attrition for a search for truth" and by distorting the discovery process into a "method by which the volume or nature of information sought and not the probability of success of a claim or defense pressures settlement." (*Richards v. Superior Court* (1978) 86 Cal.App.3d 265, 270-271.)

**F.     Plaintiff's Insistence That 6,155 Requests Are "Necessary" Is Proof Alone That There Are Complex Discovery Issues Meriting The Appointment Of A Discovery Referee.**

Plaintiff cannot have it both ways. This matter is either (1) more straightforward than the unprecedented first round of 6,155 discovery requests suggests, or (2) so complex that this first round—let alone the future rounds of oral and written discovery— is a reasonable way to determine whether a mere 49 emails violate two state laws. Plaintiff's discovery has already raised multiple issues. And if he proceeds in this fashion, this Court should only expect more such issues. These circumstances call for appointment of a discovery referee.

In his opposition, Plaintiff claims that Defendants' motion practice is somehow responsible for the discovery nightmare he has created. (Opposition at 13:19-25.) But it strains credulity to suggest that Defendants' removal and demurrer had anything to do with Plaintiff's discovery. Plaintiff also claims that Defendants are trying to run up costs. (Opposition at 13:29-30.) But Defendants did not ask to be sued by Plaintiff. Defendants wanted to resolve this matter short of litigation. Plaintiff refused. Plaintiff chose to file this lawsuit, he chose to name 26 Defendants, he chose to complain about 49 emails and he must bear at least part of the burden associated with resolving the issues addressed in his complaint. Defendants can appreciate that Plaintiff would rather limit his own costs,

**REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER – SCV-252580**

1 and run up Defendants' costs in order to force a swift settlement before this Court can

2 squarely address the issues. But that alone does not support his claim that a discovery

3 referee is not needed.

4

5 **G.      Plaintiff's First Round Of 6,155 Requests Is Proof Alone That This Case Will Spiral Out Of Control Without Imposition Of A Case Management Order.**

6        In their opening brief, Defendants explain that this multi-party matter regarding

7 technical email labeling requirements gives rise to the "exceptional circumstances" that

8 empower this Court to implement a case management order. (Motion at 13:17-14:24.) In

9 his opposition, Plaintiff claims—without explanation—that "the issues are actually rather

10 simple," and that any complexity is due only to Defendants' motion practice. (Opposition

11 at 14:8-15:15.) This makes no sense. If the matter was indeed simple, there would be no

12 need to lodge an unprecedented 6,155 requests in the very first round of discovery,

13 regardless of whether Defendants removed and demurred. And while Plaintiff contends

14 that trial will be short, his claim that he will put all of Defendants' discovery responses

15 before a jury (Motion at 6:16-18) proves otherwise.

16                          **III.    CONCLUSION**

17        Plaintiff is acting in bad faith and is attempting to use discovery as a weapon to

18 force an unfair advantage. Either this case is so complex that appointment of a discovery

19 referee and imposition of a case management order are necessary, or the case is not

20 complex and thousands of requests are not needed to address Plaintiff's claims about

21 technical email labeling. At any rate, 6,155 discovery requests are beyond the pale and

22 sufficient evidence of Plaintiff's intent to harass and frustrate the disposition of this

23 matter. Defendants' motion for a protective order should be granted.

24        Date: August 14, 2013            **NEWMAN DU WORS LLP**

25

26        _____

27        Leeor Neta, State Bar No. 233454
         John Du Wors, State Bar No. 233913
28        Attorneys for Defendants Spire Vision LLC, et al.

POS-040

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Leeor Neta (State Bar 233454 )<br>Newman Du Wors<br>1201 Third Avenue, Suite 1600<br>Seattle, WA  98101<br>TELEPHONE NO.: (206) 274-2800   FAX NO. *(Optional):* (206) 274-2801<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Spire Vision LLC et al. | **FOR COURT USE ONLY** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**  Sonoma
STREET ADDRESS: 3055 Cleveland Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Rosa CA 95403
BRANCH NAME: Civil and Family Law Courthouse

PLAINTIFF/PETITIONER: Wagner

DEFENDANT/RESPONDENT Spire Vision LLC et al.

| | |
|---|---|
| **PROOF OF SERVICE—CIVIL**<br>**Check method of service** *(only one):*<br>☐ By Personal Service   ☐ By Mail   ☑ By Overnight Delivery<br>☐ By Messenger Service   ☐ By Fax   ☐ By Electronic Service | CASE NUMBER:<br>SCV-252580 |
| | JUDGE: Nancy Case Shaffer<br>DEPT.: 18 |

***(Do not use this proof of service to show service of a Summons and complaint.)***

1. At the time of service I was over 18 years of age and **not a party to this action.**

2. My residence or business address is:

   1201 Third Avenue, Suite 1600, Seattle, WA  98101

3. ☐  The fax number or electronic notification address from which I served the documents is *(complete if service was by fax or electronic service):*

4. On *(date):* August 14, 2013   I served the following **documents** *(specify):*

   REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER OR, IN THE
   ALTERNATIVE, FOR A STAY OF DISCOVERY AND IMPLEMENTATION OF A CASE
   MANAGEMENT ORDER

   ☐  The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:
   a. Name of person served:  Daniel L. Balsam
   b. ☑  *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
      Business or residential address where person was served:
      Law Offices of Daniel Balsam, 2912 Diamond Street #218, San Francisco, CA 94131

   c. ☐  *(Complete if service was by fax or electronic service.)*
      (1) Fax number or electronic notification address where person was served:

      (2) Time of service:
   ☑  The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of
       Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify):*
   a. ☐  **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a
      party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents,
      in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in
      charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made
      to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age
      between the hours of eight in the morning and six in the evening.

   *(Continued on back)*

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>POS-040 [Rev. January 1, 2009] | **PROOF OF SERVICE—CIVIL**<br>**(Proof of Service)** | Code of Civil Procedure., §§ 1010.6, 1011, 1013, 1013a,<br>2015.5; Cal. Rules of Court, rules 2.260, 2.306<br>www.courtinfo.ca.gov |
| | | American LegalNet, Inc.<br>www.FormsWorkflow.com |

**POS-040**

| CASE NAME | CASE NUMBER: |
|---|---|
| Wagner v. Spire Vision LLC | SCV-252580 |

6. b. ☐ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one)*:

    (1) ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    (2) ☐ placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

    I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):*

c. ☑ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. ☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. ☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

f. ☐ **By electronic service.** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in item 5. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 14, 2013

| Sarah Skaggs | ► |
|---|---|
| (TYPE OR PRINT NAME OF DECLARANT) | (SIGNATURE OF DECLARANT) |

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

## DECLARATION OF MESSENGER

☐ **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

| _____ | ► _____ |
|---|---|
| (NAME OF DECLARANT) | (SIGNATURE OF DECLARANT) |

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**

POS-040(P)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Wagner v. Spirevision LLC et al | SCV-252580 |

## ATTACHMENT TO PROOF OF SERVICE—CIVIL (PERSONS SERVED)

*(This attachment is for use with form POS-040.)*

**NAMES, ADDRESSES, AND OTHER APPLICABLE INFORMATION ABOUT PERSONS SERVED:**

| Name of Person Served | Where Served | Time of Service |
|---|---|---|
| *(If the person served is an attorney, the party or parties represented should also be stated.)* | *(Provide business or residential address where service was made by personal service, mail, overnight delivery, or messenger service.  For other means of service, provide fax number or electronic service address, as applicable.)* | *(Complete for service by fax transmission or electronic service.)* |
| Lifescript, Inc.<br>Kevan Fornasero | Perkins Coie LLP<br>4 Embarcadero Center, Suite 2400<br>San Francisco, CA 94111 | Time: _____ |
| Christopher Wagner<br>Timothy James Walton | Law Offices of Timothy Walton<br>9515 Soquel Drive, Suite 207<br>Aptos, CA 95003 | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |

**ATTACHMENT TO PROOF OF SERVICE—CIVIL (PERSONS SERVED)**
**(Proof of Service)**

1  John Du Wors, State Bar No. 233913
   john@newmanlaw.com
2  Leeor Neta, State Bar No. 233454
   leeor@newmanlaw.com
3  NEWMAN DU WORS LLP
4  1201 Third Avenue, Suite 1600
   Seattle, WA 98101
5  Telephone:    (206) 274-2800
6  Facsimile:    (206) 274-2801

7  Attorneys for Defendants

8

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA
10                        COUNTY OF SONOMA

11

12  Christopher Wagner, an individual,        No. SCV-252580

13                 Plaintiff,                 **VERIFIED ANSWER AND**
        v.                                    **AFFIRMATIVE DEFENSES OF**
14                                            **DEFENDANTS ACCELERIZE NEW**
                                              **MEDIA INC., ACHIEVE**
15  Spire Vision LLC, a Delaware limited      **OPPORTUNITIES, AGREEWIZARD,**
    liability company, et al.,                **DIGITAL PUBLISHING**
16                                            **CORPORATION, FURTURESDRIVE,**
                 Defendants                   **JUNCTIONLIGHTS, JUNIPER**
17                                            **MARKETING LLC, MEDIACTIVATE**
                                              **LLC, ON DEMAND RESEARCH LLC,**
18                                            **OPPORTUNITY CENTRAL, PATHS**
19                                            **DIRECT, PRIME ADVERTISERS LLC,**
                                              **PULLSMART, SERVE CLICKS LLC,**
20                                            **SPIRE VISION LLC, SPIRE VISION**
                                              **HOLDINGS INC., WARD MEDIA INC.,**
21                                            **XL MARKETING CORP., AND**
22                                            **YOURADSHERE**
23

24

25        Defendants Accelerize New Media Inc., Achieve Opportunities, AgreeWizard,

26  Digital Publishing Corporation, Furturesdrive, JunctionLights, Juniper Marketing LLC,

27  MediActivate LLC, On Demand Research LLC, Opportunity Central, Paths Direct, Prime

28  Advertisers LLC, PullSmart, Serve Clicks LLC, Spire Vision LLC, Spire Vision

                                    1

Holdings Inc., Ward Media Inc., XL Marketing Corp., and Youradshere (collectively, "Answering Defendants") answer Plaintiff's complaint as follows. Each numbered paragraph corresponds to the numbered paragraph in the complaint.

1.      Answering Defendants DENY the allegations in Paragraph 1.

2.      Answering Defendants DENY the allegations in Paragraph 2.

3.      Answering Defendants DENY the allegations in Paragraph 3.

4.      Answering Defendants DENY the allegations in Paragraph 4.

5.      Answering Defendants DENY the allegations in Paragraph 5.

6.      Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 6.

7.      Answering Defendants DENY the allegations in Paragraph 7.

8.      Paragraph 8 is a request for relief and no response is required.

9.      Answering Defendants DENY the allegations in Paragraph 9.

10.     Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 10.

11.     Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 11.

12.     Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 12.

13.     Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 13.

14.     Answering Defendants ADMIT that Spire Vision LLC is a Delaware LLC headquartered in New York, New York, DENY that Spire Vision LLC sends or advertises in unlawful spams, and have insufficient information as to form a belief as to the meaning of and therefore DENY that Spire Vision LLC is "somehow affiliated" with other defendants.

15.     Answering Defendants ADMIT that Digital Publishing Corp. is a Delaware Corporation with a primary place of business in Washington D.C., have insufficient

2

**ANSWER AND AFFIRMATIVE DEFENSES**

information to form a belief as to the meaning of "owns and/or operates" websites and therefore DENY that allegation, and DENY the remainder of the allegations in Paragraph 15.

16.     Answering Defendants admit that Juniper Marketing LLC is a Nevada LLC controlled by Spire Vision LLC, have insufficient information to form a belief as to the meaning of "operates" websites and therefore DENY those allegations, and DENY the remainder of the allegations in Paragraph 16.

17.     Answering Defendants ADMIT that MediActivate LLC is a Nevada LLC that is a wholly-owned subsidiary of Spire Vision Holdings Inc. and DENY the remainder of the allegations in Paragraph 17.

18.     Answering Defendants admit that On Demand Research LLC is a Delaware LLC with a principal place of business in New York, have insufficient information to form a belief as to the meaning of "owns and/or operates" websites and therefore DENY those allegations, and DENY the remainder of the allegations in Paragraph 18.

19.     Answering Defendants ADMIT that Prime Advertisers is a Nevada LLC and a subsidiary of Spire Vision Holdings, have insufficient information to form a belief as to documents called "privacy policies" and therefore DENY all allegations related to "privacy policies", and DENY the remainder of the allegations in Paragraph 19.

20.     Answering Defendants ADMIT that Serve Clicks is a Nevada LLC, have insufficient information to form a belief as to the meaning of and therefore DENY that Serve Clicks is "somehow affiliated" with other defendants, and DENY the remainder of the allegations in Paragraph 20.

21.     Answering Defendants ADMIT the allegations of Paragraph 21, except that Answering Defendants DENY that Spire Vision Holdings Inc. sends or advertises in unlawful spams.

22.     Answering Defendants ADMIT the allegations of Paragraph 22, except Defendants DENY that Ward Media is a subsidiary of Spire Vision Holdings, Inc. and that Ward Media sends or advertises in unlawful spams, and have insufficient

information as to form a belief as to the meaning of and therefore DENY that Ward Media "owns and/or operates" the websites described in Paragraph 22.

23. Answering Defendants ADMIT the allegations of Paragraph 23, except Defendants DENY that XL Marketing Corporation sends or advertises in unlawful spams.

24. Answering Defendants ADMIT that Achieve Opportunities is controlled by Spire Vision Holdings Inc., have insufficient information to form a belief as to and therefore DENY allegations relating to the existence of records with secretaries of state or the address of UPS stores, and DENY the remainder of the allegations in Paragraph 24.

25. Answering Defendants ADMIT that AgreeWizard is controlled by Spire Vision Holdings Inc., have insufficient information to form a belief as to and therefore DENY allegations relating to the existence of records with secretaries of state, and DENY the remainder of the allegations in Paragraph 25.

26. Answering Defendants ADMIT that Furturesdrive is controlled by Spire Vision Holdings Inc., have insufficient information to form a belief as to and therefore DENY allegations relating to the existence of records with secretaries of state, and DENY the remainder of the allegations in Paragraph 26.

27. Answering Defendants ADMIT that JunctionLights is controlled by Spire Vision Holdings Inc., have insufficient information to form a belief as to and therefore DENY allegations relating to the existence of records with secretaries of state, and DENY the remainder of the allegations in Paragraph 27.

28. Answering Defendants ADMIT that Opportunity Central is controlled by Spire Vision Holdings Inc., have insufficient information to form a belief as to and therefore DENY allegations relating to the existence of records with secretaries of state, and DENY the remainder of the allegations in Paragraph 28.

29. Answering Defendants ADMIT that Paths Direct is controlled by Spire Vision Holdings Inc., have insufficient information to form a belief as to and therefore

1    DENY the existence of records with secretaries of state, and DENY the remainder of the

2    allegations in Paragraph 29.

3         30.    Answering Defendants ADMIT that PullSmart is controlled by Spire

4    Vision Holdings Inc., have insufficient information to form a belief as to and therefore

5    DENY allegations relating to the existence of records with secretaries of state, and

6    DENY the remainder of the allegations in Paragraph 30.

7         31.    Answering Defendants ADMIT that Youradshere is controlled by Spire

8    Vision Holdings Inc., have insufficient information to form a belief as to and therefore

9    DENY allegations relating to the existence of records with secretaries of state, and

10   DENY the remainder of the allegations in Paragraph 26.

11        32.    Answering Defendants have insufficient information to form a belief as to

12   and therefore DENY the contents of emails Plaintiff claims to have received, and DENY

13   the remainder of the allegations in Paragraph 32.

14        33.    Paragraph 33 requires no response.

15        34.    Defendant Accelerize New Media ADMITS the allegations related to

16   corporate status and principal place of business. Answering Defendants have insufficient

17   information to form a belief as to the term "operates" as it relates to a "platform" and

18   therefore DENY the allegations related to Cktrk.net, and DENY the remainder of the

19   allegations in Paragraph 34.

20        35.    Answering Defendants have insufficient information to form a belief as to

21   the nature or activities of Adconion Media Inc. and therefore DENY that allegation.

22   Answering Defendants DENY the remainder of the allegations in Paragraph 35.

23        36.    Answering Defendants DENY the allegations in Paragraph 36.

24        37.    Answering Defendants have insufficient information to form a belief as to

25   and therefore DENY the allegations in Paragraph 37.

26        38.    Answering Defendants have insufficient information to form a belief as to

27   and therefore DENY the allegations in Paragraph 38.

28        39.    Answering Defendants have insufficient information to form a belief as to

**ANSWER AND AFFIRMATIVE DEFENSES**

1    and therefore DENY the allegations in Paragraph 39.

2          40.    Answering Defendants have insufficient information to form a belief as to

3    and therefore DENY the allegations in Paragraph 40.

4          41.    Answering Defendants have insufficient information to form a belief as to

5    and therefore DENY the allegations in Paragraph 41.

6          42.    Answering Defendants have insufficient information to form a belief as to

7    and therefore DENY the allegations in Paragraph 42.

8          43.    Answering Defendants DENY that Plaintiff has incurred any injuries or

9    damages as a result of the conduct alleged in the Complaint. Regarding the remainder of

10   the allegations in Paragraph 43, no response is required.

11         44.    Answering Defendants DENY that a California court has jurisdiction.

12         45.    Answering Defendants DENY that a California court has jurisdiction.

13         46.    Answering Defendants DENY that venue is proper in Sonoma County.

14         47.    Answering Defendants DENY that venue is proper in Sonoma County.

15         48.    Answering Defendants DENY that venue is proper in Sonoma County.

16         49.    Answering Defendants have insufficient information to form a belief as to

17   and therefore DENY the allegations in Paragraph 49.

18         50.    Answering Defendants have insufficient information to form a belief as to

19   and therefore DENY the allegations in Paragraph 50.

20         51.    Answering Defendants have insufficient information to form a belief as to

21   and therefore DENY the allegations in Paragraph 51.

22         52.    Answering Defendants DENY the allegations in Paragraph 52.

23         53.    Answering Defendants have insufficient information to form a belief as to

24   and therefore DENY the allegations in Paragraph 53.

25         54.    Answering Defendants have insufficient information to form a belief as to

26   and therefore DENY the allegations in Paragraph 54.

27         55.    Answering Defendants have insufficient information to form a belief as to

28   and therefore DENY the allegations in Paragraph 55.

**ANSWER AND AFFIRMATIVE DEFENSES**

1    56.    Answering Defendants DENY the allegations in Paragraph 56.

2    57.    Answering Defendants have insufficient information to form a belief as to
3    and therefore DENY the allegations in Paragraph 57.

4    58.    Answering Defendants have insufficient information to form a belief as to
5    and therefore DENY the allegations in Paragraph 58.

6    59.    Answering Defendants have insufficient information to form a belief as to
7    and therefore DENY the allegations in Paragraph 59.

8    60.    Answering Defendants have insufficient information to form a belief as to
9    and therefore DENY the allegations in Paragraph 60.

10    61.    Answering Defendants have insufficient information to form a belief as to
11    and therefore DENY the allegations in Paragraph 61.

12    62.    Answering Defendants DENY the allegations in Paragraph 62.

13    63.    Answering Defendants have insufficient information to form a belief as to
14    and therefore DENY the allegations in Paragraph 63.

15    64.    Answering Defendants have insufficient information to form a belief as to
16    and therefore DENY the allegations in Paragraph 64.

17    65.    Answering Defendants have insufficient information to form a belief as to
18    and therefore DENY the allegations in Paragraph 65.

19    66.    Answering Defendants have insufficient information to form a belief as to
20    and therefore DENY the allegations in Paragraph 66.

21    67.    Answering Defendants have insufficient information to form a belief as to
22    and therefore DENY the allegations in Paragraph 67.

23    68.    Answering Defendants DENY the allegations in Paragraph 68.

24    69.    Answering Defendants have insufficient information to form a belief as to
25    and therefore DENY the allegations in Paragraph 69.

26    70.    Answering Defendants have insufficient information to form a belief as to
27    and therefore DENY the allegations in Paragraph 70.

28    71.    Answering Defendants have insufficient information to form a belief as to

**ANSWER AND AFFIRMATIVE DEFENSES**

1   and therefore DENY the allegations in Paragraph 71.

2   72.     Answering Defendants have insufficient information to form a belief as to

3   and therefore DENY the allegations in Paragraph 72.

4   73.     Answering Defendants have insufficient information to form a belief as to

5   and therefore DENY the allegations in Paragraph 73.

6   74.     Answering Defendants DENY the allegations in Paragraph 74.

7   75.     Answering Defendants have insufficient information to form a belief as to

8   and therefore DENY the allegations in Paragraph 75.

9   76.     Answering Defendants have insufficient information to form a belief as to

10  and therefore DENY the allegations in Paragraph 76.

11  77.     Answering Defendants have insufficient information to form a belief as to

12  and therefore DENY the allegations in Paragraph 77.

13  78.     Answering Defendants have insufficient information to form a belief as to

14  and therefore DENY the allegations in Paragraph 78.

15  79.     Answering Defendants have insufficient information to form a belief as to

16  and therefore DENY the allegations in Paragraph 79.

17  80.     Answering Defendants DENY the allegations in Paragraph 80.

18  81.     Answering Defendants have insufficient information to form a belief as to

19  and therefore DENY the allegations in Paragraph 81.

20  82.     Answering Defendants have insufficient information to form a belief as to

21  and therefore DENY the allegations in Paragraph 82.

22  83.     Answering Defendants have insufficient information to form a belief as to

23  and therefore DENY the allegations in Paragraph 83.

24  84.     Answering Defendants have insufficient information to form a belief as to

25  and therefore DENY the allegations in Paragraph 84.

26  85.     Answering Defendants have insufficient information to form a belief as to

27  and therefore DENY the allegations in Paragraph 85.

28  86.     Answering Defendants have insufficient information to form a belief as to

**ANSWER AND AFFIRMATIVE DEFENSES**

1   and therefore DENY the allegations in Paragraph 86.

2        87.      Answering Defendants DENY the allegations in Paragraph 87.

3        88.      Paragraph 88 characterizes emails. Answering Defendants dispute

4   Plaintiff's characterization. No response is required because the emails speak for

5   themselves.

6        89.      Paragraph 89 characterizes emails. Answering Defendants dispute

7   Plaintiff's characterization. No response is required because the emails speak for

8   themselves.

9        90.      Answering Defendants have insufficient information to form a belief as to

10   and therefore DENY the allegations in Paragraph 90.

11        91.      Answering Defendants have insufficient information to form a belief as to

12   and therefore DENY the allegations in Paragraph 91.

13        92.      Answering Defendants have insufficient information to form a belief as to

14   and therefore DENY the allegations in Paragraph 92.

15        93.      Answering Defendants have insufficient information to form a belief as to

16   and therefore DENY the allegations in Paragraph 93.

17        94.      Answering Defendants have insufficient information to form a belief as to

18   and therefore DENY the allegations in Paragraph 94.

19        95.      Answering Defendants have insufficient information to form a belief as to

20   and therefore DENY the allegations in Paragraph 95.

21        96.      Answering Defendants DENY the allegations in Paragraph 96.

22        97.      Answering Defendants have insufficient information to form a belief as to

23   and therefore DENY the allegations in Paragraph 97.

24        98.      Answering Defendants have insufficient information to form a belief as to

25   and therefore DENY the allegations in Paragraph 98.

26        99.      Answering Defendants have insufficient information to form a belief as to

27   and therefore DENY the allegations in Paragraph 99.

28        100.     Answering Defendants have insufficient information to form a belief as to

**ANSWER AND AFFIRMATIVE DEFENSES**

and therefore DENY the allegations in Paragraph 100.

101.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 101.

102.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 102.

103.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 103.

104.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 104.

105.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 105.

106.    Answering Defendants DENY the allegations in Paragraph 106.

107.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 107.

108.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 108.

109.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 109.

110.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 110.

111.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 111.

112.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 112.

113.    Answering Defendants DENY the allegations in Paragraph 113.

114.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 114.

115.    Answering Defendants DENY the allegations in Paragraph 115.

**ANSWER AND AFFIRMATIVE DEFENSES**

116.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 116.

117.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 117.

118.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 118.

119.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 119.

120.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 120.

121.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 121.

122.    Answering Defendants DENY the allegations in Paragraph 122.

123.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 123.

124.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 124.

125.    Answering Defendants DENY the allegations in Paragraph 125.

126.    Paragraph 126 is a reincorporation and no response is required.

127.    Answering Defendants DENY the allegations in Paragraph 127.

128.    Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 128.

129.    Paragraph 129 paraphrases a statute and no response is required.

130.    Answering Defendants DENY the allegations in Paragraph 130.

131.    Paragraph 131 characterizes a court decision. Answering Defendants dispute Plaintiff's characterization. No response is required because the decision speaks for itself.

132.    Answering Defendants DENY the allegations in Paragraph 132.

**ANSWER AND AFFIRMATIVE DEFENSES**

133.   Paragraph 133 characterizes a statute. Answering Defendants dispute Plaintiff's characterization. No response is required because the statute speaks for itself.

134.   Answering Defendants DENY the allegations in Paragraph 134.

135.   Answering Defendants DENY the allegations in Paragraph 135.

136.   Answering Defendants DENY the allegations in Paragraph 136.

137.   Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 137.

138.   Answering Defendants DENY the allegations in Paragraph 138.

139.   Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 139.

140.   Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 140.

141.   Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 141.

142.   Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 142.

143.   Answering Defendants have insufficient information to form a belief as to and therefore DENY the allegations in Paragraph 143.

144.   Paragraph 144 characterizes a statute. Answering Defendants dispute Plaintiff's characterization. No response is required because the statute speaks for itself.

145.   Answering Defendants DENY the allegations in Paragraph 145.

146.   Answering Defendants DENY the allegations in Paragraph 146.

147.   Paragraph 147 characterizes a statute. Answering Defendants dispute Plaintiff's characterization. No response is required because the statute speaks for itself.

148.   Answering Defendants DENY the allegations in Paragraph 148.

149.   Answering Defendants DENY the allegations in Paragraph 149.

150.   Paragraph 150 characterizes an email. Answering Defendants dispute Plaintiff's characterization. No response is required because the email speaks for itself.

1    151.    Answering Defendants DENY the allegations in Paragraph 151.

2    152.    Paragraph 152 characterizes a statute. Answering Defendants dispute

3    Plaintiff's characterization. No response is required because the statute speaks for itself.

4    153.    Paragraph 153 characterizes a statute. Answering Defendants dispute

5    Plaintiff's characterization. No response is required because the statute speaks for itself.

6    154.    Answering Defendants DENY the allegations in Paragraph 154.

7    155.    Answering Defendants DENY the allegations in Paragraph 155.

8    156.    Answering Defendants DENY the allegations in Paragraph 156.

9    157.    To the extent Paragraph 157 characterizes a statute, Answering Defendants

10   dispute Plaintiff's characterization. No response is required because the statute speaks for

11   itself. Answering Defendants DENY the remainder of the allegations in Paragraph 157

12   158.    Paragraph 158 is argument and no response is required. To the extent a

13   response is required, Answering Defendants DENY the allegations in Paragraph 158.

14   159.    Answering Defendants DENY the allegations in Paragraph 159.

15   160.    Answering Defendants DENY the allegations in Paragraph 160.

16   161.    Paragraph 161 is a statement that Wagner is seeking attorney's fees, and no

17   response is required.

18   162.    Answering Defendants DENY the allegations in Paragraph 162.

19   163.    Paragraph 163 is a reincorporation, and no response is required.

20   164.    Paragraph 164 quotes a statute, and no response is required.

21   165.    Answering Defendants DENY the allegations in Paragraph 165.

22   166.    Answering Defendants DENY the allegations in Paragraph 166.

23   167.    Answering Defendants DENY the allegations in Paragraph 167.

24   168.    Answering Defendants DENY the allegations in Paragraph 168.

25   169.    Answering Defendants DENY the allegations in Paragraph 169.

26   The remainder of the complaint is a prayer for relief, and no response is required.

27   **I.    AFFIRMATIVE DEFENSES**

28   Without admitting any allegations in the Complaint, Answering Defendants assert

13

the following affirmative defenses:

1.     Plaintiff's claims are preempted by the Federal CAN-SPAM Act of 2003 (15 U.S.C. § 7701). The Federal CAN-SPAM Act preempts Plaintiff's state law claims because they do not sound in tort. (*Gordon v. Virtumundo, Inc.* (9th Cir. 2009) 575 F.3d 1040.)

2.     The Complaint fails to state a claim upon which relief may be granted. Plaintiff's first cause of action fails because each "from" line in each of the 49 emails at issue can be traced to the sender of the email. (*See, e.g.*, *Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal. 4th 334, 345.) Plaintiff's first cause of action fails because each "subject" line in each of the 49 emails at issue reasonably describes the contents of the email. (*See, e.g.*, *Asis Internet Servs. v. Member Source Media, LLC*, 2010 U.S. Dist. LEXIS 47865.) Plaintiff's second cause of action fails because he is a private citizen and private citizens cannot sue for damages for alleged violation of Business and Professions Code, Section 17538.5.

3.     Plaintiff failed to mitigate his alleged damages, if any. Plaintiff has not incurred any economic damages. Even if he had, he failed to mitigate by requesting that Answering Defendants remove his name from their email subscription lists. Plaintiff could have easily unsubscribed from these email lists by either clicking the opt-out link in any of the emails or by contacting Answering Defendants at their places of business.

4.     Plaintiff waived his claims. On information and belief, Plaintiff either opted in or took certain actions to induce Answering Defendants and/or their affiliates to place his email address on their email subscription lists.

5.     Plaintiff's claims are barred by the doctrine of estoppel. On information and belief, Plaintiff either opted in or took certain actions to induce Answering Defendants and/or their affiliates to place his email address on their email subscription lists.

6.     The damages alleged in the Complaint, if any, were not caused by Answering Defendants, but were caused by one or more third parties whose activities were not approved, ratified, or controlled by Answering Defendants.

1    7.    Plaintiff has failed to join one or more necessary and indispensable parties.

2    8.    Venue and jurisdiction are improper. Plaintiff cannot state a cause of action

3    against the two Answering Defendants, namely Accelerize New Media and LifeScript,

4    that are principally based in California and were added solely for the purpose of defeating

5    federal court jurisdiction. More than $75,000 is in controversy as a result of the expected

6    claim for attorney's fees. Grounds exist for removal to federal court.

7    9.    Answering Defendants reserve the right to add more defenses as discovery

8    proceeds.

9                            **PRAYER FOR RELIEF**

10   Accordingly, Answering Defendants pray for the following relief:

11   A.    Dismissal of the Complaint with prejudice.

12   B.    Attorney's fees and costs, as allowed by law.

13

14   Respectfully submitted this 16th day of August, 2013.

15

16                            **NEWMAN DU WORS LLP**

17

18                            Leeor Neta, State Bar No. 233454
                              John Du Wors, State Bar No. 233913
19                            Attorneys for Defendants Accelerize New
                              Media Inc., Achieve Opportunities,
20                            AgreeWizard, Digital Publishing Corporation,
                              Furturesdrive, JunctionLights, Juniper
21                            Marketing LLC, MediActivate LLC, On
                              Demand Research LLC, Opportunity Central,
22                            Paths Direct, Prime Advertisers LLC,
                              PullSmart, Serve Clicks LLC, Spire Vision
23                            LLC, Spire Vision Holdings Inc., Ward Media
                              Inc., XL Marketing Corp., and Youradshere
24

25

26

27

28

**ANSWER AND AFFIRMATIVE DEFENSES**

**VERIFICATION**

I am Daniel Berger of Spire Vision LLC, a party to this action, and am authorized to make this verification on its behalf. I have read the foregoing Answer and know its contents. I am informed and believe and on that ground allege that the matters stated in the Answer are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 16, 2013 in Washington, DC.

_Daniel Berger_
Daniel Berger

POS-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Leeor Neta (State Bar 233454 )<br>— Newman Du Wors<br>1201 Third Avenue, Suite 1600<br>Seattle, WA 98101<br>TELEPHONE NO.: (206) 274-2800   FAX NO. *(Optional):* (206) 274-2801<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Spire Vision LLC et al. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Sonoma
STREET ADDRESS: 3055 Cleveland Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Rosa CA 95403
BRANCH NAME: Civil and Family Law Courthouse

PLAINTIFF/PETITIONER: Wagner

DEFENDANT/RESPONDENT  Spire Vision LLC et al.

| | |
|---|---|
| **PROOF OF SERVICE—CIVIL**<br>**Check method of service** *(only one):*<br>☐ By Personal Service  ☐ By Mail  ☑ By Overnight Delivery<br>☐ By Messenger Service  ☐ By Fax  ☐ By Electronic Service | CASE NUMBER:<br>SCV-252580<br><br>JUDGE: Nancy Case Shaffer<br>DEPT.: 18 |

*(Do not use this proof of service to show service of a Summons and complaint.)*

1. At the time of service I was over 18 years of age and **not a party to this action.**

2. My residence or business address is:

   1201 Third Avenue, Suite 1600, Seattle, WA  98101

3. ☐ The fax number or electronic notification address from which I served the documents is *(complete if service was by fax or electronic service):*

4. On *(date):* August 16, 2013      I served the following **documents** *(specify):*

   ☑ The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:
   a. Name of person served: Daniel L. Balsam
   b. ☑ *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
      Business or residential address where person was served:
      Law Offices of Daniel Balsam, 2912 Diamond Street #218, San Francisco, CA 94131

   c. ☐ *(Complete if service was by fax or electronic service.)*
      (1) Fax number or electronic notification address where person was served:

      (2) Time of service:
   ☑ The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify):*
   a. ☐ **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

   *(Continued on back)*

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>POS-040 [Rev. January 1, 2009] | **PROOF OF SERVICE—CIVIL**<br>**(Proof of Service)** | Code of Civil Procedure., §§ 1010.6, 1011, 1013, 1013a,<br>2015.5; Cal. Rules of Court, rules 2.260, 2.306<br>*www.courtinfo.ca.gov*<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |

POS-040

| CASE NAME | CASE NUMBER: |
|---|---|
| Wagner v. Spire Vision LLC | SCV-252580 |

6. b. ☐ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one):*

    (1) ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    (2) ☐ placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

    I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):*

c. ☑ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. ☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. ☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

f. ☐ **By electronic service.** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in item 5. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 16, 2013

| Sarah Skaggs | ► |
|---|---|
| (TYPE OR PRINT NAME OF DECLARANT) | (SIGNATURE OF DECLARANT) |

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

### DECLARATION OF MESSENGER

☐ **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

| _____ | ► _____ |
|---|---|
| (NAME OF DECLARANT) | (SIGNATURE OF DECLARANT) |

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**

POS-040(D)

| SHORT TITLE: Wagner v. Spirevision LLC et al | CASE NUMBER: |
|---|---|
| | SCV-252580 |

**ATTACHMENT TO PROOF OF SERVICE—CIVIL (DOCUMENTS SERVED)**
*(This Attachment is for use with form POS-040)*

**The documents that were served are as follows *(describe each document specifically):***

VERIFIED ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS ACCELERIZE NEW MEDIA INC., ACHIEVE OPPORTUNITIES, AGREEWIZARD, DIGITAL PUBLISHING CORPORATION, FURTURESDRIVE, JUNCTIONLIGHTS, JUNIPER MARKETING LLC,

MEDIACTIVATE LLC, ON DEMAND RESEARCH LLC, OPPORTUNITY CENTRAL, PATHS DIRECT, PRIME ADVERTISERS LLC, PULLSMART, SERVE CLICKS LLC, SPIRE VISION LLC, SPIRE VISION HOLDINGS INC., WARD MEDIA INC., XL MARKETING CORP.,

AND YOURADSHERE

Form Approved for Optional Use
Judicial Council of California
POS-040(D) [New January 1, 2005]
**ATTACHMENT TO PROOF OF SERVICE—CIVIL (DOCUMENTS SERVED)**
**(Proof of Service)**
Page 1 of 1

**Box 145**



ENDORSED
FILED

AUG 1 9 2013

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

1 | John Du Wors, State Bar No. 233913
john@newmanlaw.com
2 | Leeor Neta, State Bar No. 233454
leeor@newmanlaw.com
3 | NEWMAN DU WORS LLP
1201 Third Avenue, Suite 1600
4 | Seattle, WA 98101
5 | Telephone:   (206) 274-2800
6 | Facsimile:   (206) 274-2801

7 | Attorneys for Defendants

8

9 |                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
                          **COUNTY OF SONOMA**
10

11

12 | Christopher Wagner, an individual,            Civil Case No. SCV-252580

13 |               Plaintiff,                      **DECLARATION OF LEEOR NETA**
              v.                                   **REGARDING MEET AND**
14 |                                               **CONFER CONFERENCE ON**
     Spire Vision LLC, a Delaware limited liability **DEFENDANTS' MOTION FOR**
15 | company, et al.,                              **PROTECTIVE ORDER OR, IN**
                                                   **THE ALTERNATIVE, FOR A**
16 |                                               **STAY OF DISCOVERY AND**
               Defendants.                         **IMPLEMENTATION OF A CASE**
17 |                                               **MANAGEMENT ORDER**
                                                   **(SONOMA COUNTY LOCAL**
18 |                                               **RULE 5.4)**
19

20 |                                               Hearing Date: August 21, 2013
                                                   Hearing Time: 3:30 pm
21 |                                               Dept. No. 18
22 |                                               Judge: Hon. Nancy Case Shaffer

23 |        I, Leeor Neta, declare as follows:

24 |        1.     I am an attorney with Newman Du Wors LLP, counsel for Defendants

25 | Spire Vision LLC, et al. I have personal knowledge of the facts set forth in this

26 | declaration and could and would competently testify to them under oath if called as a

27 | witness.

28 |        2.     On Thursday, August 15, counsel for Plaintiff Christopher Wagner, Dan

NETA DECLARATION – SCV-252580

*(left margin: COPY    By Fax)*

Balsam, and I spoke by telephone for nearly one hour in a reasonable and good faith attempt to informally resolve Defendants' motion for protective order with respect to Plaintiff's 6,155 written discovery requests.

3.      The parties agreed that there was no need to stay discovery pending resolution of Defendants' demurrer, which the Court denied on August 7.

4.      But Defendants continue to believe that Plaintiff copied and pasted 6,155 discovery requests and are demanding that 18 distinct Defendants bear the impossible burden of responding to every single one.

5.      During the telephone call, counsel for Plaintiff cited no authority for such voluminous discovery. He insisted that there were only two ways to narrow Defendants' burden: a collective response or an agreement to certain stipulations that would equate to admissions of liability and answers to discovery at any rate. Despite Plaintiff's insistence that 6,155 discovery requests were necessary and appropriate, counsel for Plaintiff refused to agree to appointment of a discovery referee or imposition of a case management order.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in San Francisco, California on August 19, 2013.

_____
Lecor Neta

POS-040

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Leeor Neta (State Bar 233454 )
Newman Du Wors
1201 Third Avenue, Suite 1600
Seattle, WA 98101
TELEPHONE NO.: (206) 274-2800   FAX NO. *(Optional):* (206) 274-2801
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* Spire Vision LLC et al.

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sonoma
STREET ADDRESS: 3055 Cleveland Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Rosa CA 95403
BRANCH NAME: Civil and Family Law Courthouse

PLAINTIFF/PETITIONER: Wagner

DEFENDANT/RESPONDENT Spire Vision LLC et al.

CASE NUMBER:
SCV-252580

**PROOF OF SERVICE—CIVIL**
**Check method of service** *(only one):*
☐ By Personal Service   ☐ By Mail   ☑ By Overnight Delivery
☐ By Messenger Service   ☐ By Fax   ☐ By Electronic Service

JUDGE: Nancy Case Shaffer
DEPT.: 18

*(Do not use this proof of service to show service of a Summons and complaint.)*

1. At the time of service I was over 18 years of age and **not a party to this action.**

2. My residence or business address is:
   1201 Third Avenue, Suite 1600, Seattle, WA 98101

3. ☐ The fax number or electronic notification address from which I served the documents is *(complete if service was by fax or electronic service):*

4. On *(date):* August 19, 2013   I served the following **documents** *(specify):*
   DECLARATION OF LEEOR NETA REGARDING MEET AND CONFER CONFERENCE ON
   DEFENDANTS' MOTION FOR PROTECTIVE ORDER

   ☐ The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:
   a. Name of person served: Daniel L. Balsam
   b. ☑ *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
      Business or residential address where person was served:
      Law Offices of Daniel Balsam, 2912 Diamond Street #218, San Francisco, CA 94131

   c. ☐ *(Complete if service was by fax or electronic service.)*
      (1) Fax number or electronic notification address where person was served:

      (2) Time of service:
   ☑ The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of
      Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify):*
   a. ☐ **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a
      party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents,
      in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in
      charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made
      to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age
      between the hours of eight in the morning and six in the evening.

   *(Continued on back)*

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**

Code of Civil Procedure., §§ 1010.6, 1011, 1013, 1013a,
2015.5;  Cal. Rules of Court, rules 2.260, 2.306
*www.courtinfo.ca.gov*

American LegalNet, Inc.
www.FormsWorkflow.com

POS-040

| CASE NAME | CASE NUMBER: |
|---|---|
| Wagner v. Spire Vision LLC | SCV-252580 |

6. b. ☐ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one):*

    (1) ☐   deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    (2) ☐   placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

    I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):*

c. ☑ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. ☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. ☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

f. ☐ **By electronic service.** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in item 5. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 19, 2013

Lindsey Rowson
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

### DECLARATION OF MESSENGER

☐ **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
(NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**

POS-040(P)

| SHORT TITLE:<br>Wagner v. Spirevision LLC et al | CASE NUMBER:<br>SCV-252580 |
|---|---|

## ATTACHMENT TO PROOF OF SERVICE—CIVIL (PERSONS SERVED)

*(This attachment is for use with form POS-040.)*

**NAMES, ADDRESSES, AND OTHER APPLICABLE INFORMATION ABOUT PERSONS SERVED:**

| <u>Name of Person Served</u><br><br>*(If the person served is an attorney, the party or parties represented should also be stated.)* | <u>Where Served</u><br><br>*(Provide business or residential address where service was made by personal service, mail, overnight delivery, or messenger service. For other means of service, provide fax number or electronic service address, as applicable.)* | <u>Time of Service</u><br><br>*(Complete for service by fax transmission or electronic service.)* |
|---|---|---|
| Lifescript, Inc.<br>Kevan Fornasero | Perkins Coie LLP<br>4 Embarcadero Center, Suite 2400<br>San Francisco, CA 94111 | Time: _____ |
| Christopher Wagner<br>Timothy James Walton | Law Offices of Timothy Walton<br>9515 Soquel Drive, Suite 207<br>Aptos, CA 95003 | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |

1    John Du Wors, State Bar No. 233913
     john@newmanlaw.com
2    Leeor Neta, State Bar No. 233454
     leeor@newmanlaw.com
3    NEWMAN DU WORS LLP
4    1201 Third Avenue, Suite 1600
     Seattle, WA 98101
5    Telephone:   (206) 274-2800
6    Facsimile:   (206) 274-2801

7    Attorneys for Defendants

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA
10                      COUNTY OF SONOMA

11

12   Christopher Wagner, an individual,        Civil Case No. SCV-252580

13              Plaintiff,                      DECLARATION OF LEEOR NETA
                                               IN SUPPORT OF DEFENDANTS'
14        v.                                   MOTION FOR PROTECTIVE
                                               ORDER OR, IN THE
15   Spire Vision LLC, a Delaware limited liability   ALTERNATIVE, FOR A STAY OF
     company, et al.,                          DISCOVERY AND
16                                             IMPLEMENTATION OF A CASE
17              Defendants.                     MANAGEMENT ORDER

18

19                                             Hearing Date:  September 11, 2013
                                               Hearing Time:  3:30 pm
20                                             Dept. No. 18
21                                             Judge: Hon. Nancy Case Shaffer

22

23

24

25

26

27

28

                                    1
                         NETA DECLARATION – SCV-252580

FILED
AUG 27 2013
SUPERIOR COURT OF CALIFORNIA.
COUNTY OF SONOMA
BY_____
                    DEPUTY CLERK



1    I, Leeor Neta, declare as follows:

2         1.    I am an attorney with Newman Du Wors LLP, counsel for Defendant Spire

3    Vision LLC, et al. I have personal knowledge of the facts set forth in this declaration and

4    could and would competently testify to them under oath if called as a witness.

5         2.    Shortly after this matter was removed to and then returned from federal

6    court, counsel for Plaintiff—Daniel Balsam—contacted me regarding discovery. He

7    warned that "discovery will be . . . extensive" unless Defendants permitted Plaintiff to

8    treat them as a single conglomerate, when in fact they are separate—though affiliated—

9    corporations, LLCs, and DBAs. My clients felt compelled to refuse, concerned with how

10   they would provide a collective response to requests regarding multiple emails for which

11   everyone was not even allegedly responsible.

12        3.    Plaintiff then served Defendants with *6,155* discovery requests. All 18 of

13   my clients received a separate set of 23 Form Interrogatories. Upon each of 10 of my

14   clients, Plaintiff also served a separate set of over 240 Special Interrogatories, a separate

15   set of 47 or more Requests for Production, and a separate sets of 280 or more Requests

16   for Admission. Upon review, it became clear that most of the requests had little direct

17   connection to the elements of Plaintiff's causes of action, i.e., whether the emails at issue

18   contain unauthorized third-party domain names; falsified, misrepresented, or forged

19   header information; or objectively and materially misleading subject lines. Most of the

20   requests failed to address the matter of direct consent to receive the emails, as well as

21   Defendants' efforts to effectively prevent unsolicited commercial e-mail advertisements.

22        4.    Included with this declaration is a CD-ROM containing Plaintiff's

23   voluminous discovery, including 10 sets of Special Interrogatories (**Exhibit 1**).

24        5.    This CD-ROM also contains Plaintiff's 10 sets of Requests for Production

25   (**Exhibit 2**).

26        6.    This CD-ROM also contains Plaintiff's 10 sets of Requests for Admission

27   (**Exhibit 3**).

28        7.    This CD-ROM also contains Plaintiff's 18 sets of Form Interrogatories

1 | (**Exhibit 4**).

2 |      8.     After spending several hours reviewing Plaintiff's voluminous discovery, I

3 | contacted Plaintiff's attorneys—Daniel Balsam and Timothy Walton—in an effort to

4 | meet and confer in good faith. On Friday, May 2, we spoke by phone for nearly two and a

5 | half hours. During that time, we were able to discuss only a small fraction of the

6 | discovery. Still, Mr. Balsam and Mr. Walton made clear their position that Defendants

7 | were at fault for the number of requests, because Defendants refused to allow themselves

8 | to be treated as a single conglomerate and provide a collective response.

9 |      9.     I explained why a collective response was impossible, noting that no effort

10 | was made to tailor each request to each Defendant and that instead Plaintiff copied and

11 | pasted piles of requests to all Defendants. I also explained that there were whole

12 | categories of requests—within individual sets of discovery—for which the burden of

13 | response outweighed any possible utility, thus undermining Plaintiff's position that a

14 | collective response would solve the problem. Finally, I explained that most of the

15 | requests seemed intentionally overbroad and duplicative. Mr. Walton responded:

16 | "Answer with what you can and if we think it's sufficient, we won't move to compel."

17 | Asked for the rationale behind numerous requests, Mr. Walton made clear his intention to

18 | attempt to embarrass Defendants, stating he could not wait to "put this in front of a jury."

19 |      10.    On Monday, May 6, Mr. Balsam contacted me via email. Attached as

20 | **Exhibit 5** is a true and correct copy of the email I received from Mr. Balsam on May 6,

21 | 2013. He again suggested that the discovery could be reduced by "NINETY PERCENT"

22 | if Defendants provided a collective response. (*Id.* [emphasis in original].) Mr. Balsam

23 | also suggested that a collective response would eliminate the need for a response to

24 | 170—or less than 3%—of the whole volume, and perhaps more, but provided no details.

25 | (*Id.*) Finally, Mr. Balsam suggested that a stipulation regarding liability could "remove

26 | entire categories of questions." (*Id.*) But Mr. Balsam did not address the great bulk of

27 | Plaintiff's requests or the specific concerns raised during the telephonic meet and confer.

28 | (*Id.*)

1      11.     While working with Defendants to provide substantive responses to

2  Plaintiff's voluminous discovery, I contacted Mr. Balsam and Mr. Walton via email on

3  Wednesday, May 22, to suggest a stipulated mutual stay of discovery pending a hearing

4  on the Demurrer to Plaintiff's complaint, dated May 2, 2013. Attached as **Exhibit 6** is a

5  true and correct copy of the email I received from Mr. Balsam on May 22, 2013.

6  Mr. Balsam flatly refused, insisting yet again that Plaintiff's discovery could be reduced

7  by "NINETY PERCENT" if Defendants provided a collective response. (*Id.* [emphasis in

8  original].) Mr. Balsam closed by noting, "We know the facts, and are not trying to hide

9  anything." (*Id.*)

11      I declare under penalty of perjury that the foregoing is true and correct.

13      Executed in San Francisco, California on May 23, 2013.

Leeor Neta



NEWMAN | DU WORS
A T T O R N E Y S

Wagner v. Spire Vision LLC et al

Case No. SCV-252580



Exhibit 1
To Declaration of Leeor Neta
Motion for Protective Order

NEWMAN | DU WORS
A T T O R N E Y S

Wagner v. Spire Vision LLC et al

Case No. SCV-252580

Exhibit 2
To Declaration of Leeor Neta
Motion for Protective Order

NEWMAN | DU WORS
A T T O R N E Y S

Wagner v. Spire Vision LLC et al

Case No. SCV-252580



Exhibit 3
To Declaration of Leeor Neta
Motion for Protective Order

NEWMAN | DU WORS
A T T O R N E Y S

Wagner v. Spire Vision LLC et al

Case No. SCV-252580



Exhibit 4
To Declaration of Leeor Neta
Motion for Protective Order

# Exhibit 5

**From:** Dan Balsam [legal@danbalsam.com]
**Sent:** Monday, May 06, 2013 5:10 PM
**To:** Leeor Neta; John Du Wors
**Cc:** twalton@twalton.net; Keith Scully
**Subject:** Wagner's discovery to Spire Vision

Mr. Neta,

On our call last Friday, you complained that Wagner's discovery to Spire Vision is excessive, duplicative, burdensome, etc.

However, this is a problem entirely of Spire Vision's own making.

First, Spire Vision chose to create at least 10 companies, at least 10 brands, and dozens of domain names. That necessitated extensive discovery, and we strongly believe that every question propounded is appropriate.

Second, you rejected our repeated requests to treat the Spire Vision entities collectively for discovery purposes, even though they have treated themselves collectively in pleadings and motions.

Nevertheless, we again offer your clients the opportunity to provide one set of responses to RFAs, SROGs, and RFPDs on behalf of all Spire Vision entities. That would immediately reduce your required responses by NINETY PERCENT. It would ALSO reduce the discovery WITHIN the one remaining set, because it would make unnecessary questions such as, for example, connections between the companies and which company owns certain properties (SROGs #29-31, 163–168, 223-240, and perhaps more).

We could also consider certain stipulations that would remove entire categories of questions. On the call, I posed a hypothetical that if you'll stipulate that Wagner did NOT give direct consent to any Spire Vision company or any of its advertising clients, that would eliminate a lot of questions about direct consent. Other hypothetical possibilities include:

* A stipulation that Spire Vision (collectively) owns and operates a certain list of domain names would eliminate a lot of SROGs.
* A stipulation that none of the "brands" (Achieve Opportunities, etc.) are readily traceable to any Spire Vision entity would remove a number of questions.
* A stipulation that Spire Vision does not target its advertising would remove a number of questions about targeting, criteria, etc.

We could probably come up with more examples too.  Note, we are NOT committing to any of these at this moment without our client's approval.  They're merely hypotheticals; food for discussion.

Finally, we might be open to extending your time to respond, so long as we agree that the responses will be substantive, and not merely objections.

Please let us know your thoughts.

==========================================
Dan Balsam
Sue a Spammer!  www.DanHatesSpam.com

Exhibit 6

**From:** Dan Balsam [legal@danbalsam.com]
**Sent:** Wednesday, May 22, 2013 11:26 AM
**To:** Timothy Walton; twalton@twalton.net; Leeor Neta
**Cc:** John Du Wors
**Subject:** Re: Wagner: Meet and confer effort

Leeor,

Spire's demurrer to Wagner's complaint in state court after remand is entirely improper, because Spire filed an answer while the matter was in federal court. Rather than asking for additional time for discovery, you should be taking your demurrer off calendar and filing a verified answer(s).

As for Wagner's discovery, it may be voluminous, but it's also necessary, as you also seem to believe since you are requesting the opportunity to send voluminous discovery of your own. Moreover, we repeatedly offered you the opportunity to reduce Wagner's discovery by NINETY PERCENT, both before AND after we served it. All you had to do was agree to let us treat the various Spire entities collectively for discovery purposes, which was an entirely reasonable request, considering that they treated themselves collectively in various filings and when they propounded discovery. Actually, you could have reduced the discovery by even MORE than 90%, because we could have eliminated various questions within the one remaining set. And, we offered you the opportunity to stipulate to certain topics which would have further eliminated entire categories of discovery questions. You have the right to refuse that offer, but the net result is that your clients are creating the need for voluminous discovery by: 1) using multiple entities to send spam; 2) refusing to acknowledge any problems at all with spam that unquestionably violates the statute under common interpretations of case law; and 3) refusing to cooperate in any way with other entirely reasonable requests, such as by handling discovery in electronic form rather than paper.

So, your stated reason for needing additional time is unpersuasive. Further, your offer to extend our time is illusory because we don't need additional time. We know the facts and we are not trying to hide anything. Perhaps you could find another way to tempt us to make a deal, rather than expecting us to make concessions even as you refuse our requests.

Dan

==================================================

Dan Balsam
Sue a Spammer! www.DanHatesSpam.com

--- On Wed, 5/22/13, Leeor Neta <*Leeor@newmanlaw.com*> wrote:

From: Leeor Neta <Leeor@newmanlaw.com>
Subject: Wagner: Meet and confer effort
To: "Dan Balsam" <legal@danbalsam.com>, "Timothy Walton" <timothy.walton.47@gmail.com>,
"twalton@twalton.net" <twalton@twalton.net>
Cc: "John Du Wors" <John@newmanlaw.com>
Date: Wednesday, May 22, 2013, 8:53 AM

Hi Tim / Dan,

I unfortunately have to postpone the meet and confer regarding your demurrer, which we had scheduled for
today. My son has some event at school that he sprung on me this morning and I really would like to attend.
Can we talk Friday or late tomorrow afternoon?

Also, I wanted to obtain your consent to a stay of your discovery in Wagner. Though we have now had two
telephonic discussions regarding your voluminous requests, we have not managed to reasonably narrow the
scope. And yet, there is a demurrer to the complaint pending. What is your opinion as to a stipulated stay of
discovery until the Court rules on the demurrer to the complaint? We will of course agree that the stay should be
mutually imposed.

Would you mind getting back to me by the end of the day?

Thank you,
Leeor

P.S. Tim, I noticed on your website that you handle special education matters pro bono. I'd like to talk to you
some time about potential pro bono clients in East Palo Alto, where I used to run a nonprofit youth program.

Sent from my iPhone

POS-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Leeor Neta (State Bar 233454 )<br>Newman Du Wors<br>1201 Third Avenue, Suite 1600<br>Seattle, WA 98101 | **FILED**<br><br>AUG 27 2013<br>SUPERIOR COURT OF CALIFORNIA,<br>COUNTY OF SONOMA<br>BY_____ DEPUTY CLERK |

TELEPHONE NO.: (206) 274-2800   FAX NO. *(Optional)*: (206) 274-2801
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: Spire Vision LLC et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Sonoma
STREET ADDRESS: 3055 Cleveland Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Rosa CA 95403
BRANCH NAME: Civil and Family Law Courthouse

PLAINTIFF/PETITIONER: Wagner

DEFENDANT/RESPONDENT  Spire Vision LLC et al.

| PROOF OF SERVICE—CIVIL<br>**Check method of service** *(only one)*: | CASE NUMBER:<br>SCV-252580 |
|---|---|
| ☐ By Personal Service   ☐ By Mail   ☑ By Overnight Delivery<br>☐ By Messenger Service   ☐ By Fax   ☐ By Electronic Service | JUDGE: Nancy Case Shaffer<br>DEPT.: 18 |

*(Do not use this proof of service to show service of a Summons and complaint.)*

1. At the time of service I was over 18 years of age and **not a party to this action.**

2. My residence or business address is:
   1201 Third Avenue, Suite 1600, Seattle, WA  98101

3. ☐   The fax number or electronic notification address from which I served the documents is *(complete if service was by fax or electronic service)*:

4. On *(date)*: August 26, 2013        I served the following **documents** *(specify)*:

   DECLARATION OF LEEOR NETA IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE
   ORDER OR, IN THE ALTERNATIVE, FOR A STAY OF DISCOVERY AND IMPLEMENTATION OF
   A CASE MANAGEMENT ORDER

   ☐   The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:
   a. Name of person served: Daniel L. Balsam
   b. ☑ *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
      Business or residential address where person was served:
      Law Offices of Daniel Balsam, 2912 Diamond Street #218, San Francisco, CA 94131

   c. ☐   *(Complete if service was by fax or electronic service.)*
      (1) Fax number or electronic notification address where person was served:

      (2) Time of service:

   ☑ The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of
      Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify)*:

   a. ☐   **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a
      party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents,
      in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in
      charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made
      to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age
      between the hours of eight in the morning and six in the evening.

   *(Continued on back)*

| Form Approved for Optional Use<br>Judicial Council of California<br>POS-040 [Rev. January 1, 2009] | **PROOF OF SERVICE—CIVIL**<br>**(Proof of Service)** | Code of Civil Procedure, §§ 1010.6, 1011, 1013, 1013a,<br>2015.5; Cal. Rules of Court, rules 2.260, 2.306<br>www.courtinfo.ca.gov |
|---|---|---|
| | | American LegalNet, Inc.<br>www.FormsWorkflow.com |

Box 145

POS-040

| CASE NAME | CASE NUMBER: |
|---|---|
| Wagner v. Spire Vision LLC | SCV-252580 |

6. b. ☐ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one):*

    (1) ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    (2) ☐ placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

    I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):*

c. ☑ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. ☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. ☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

f. ☐ **By electronic service.** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in item 5. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 26, 2013

Sarah Skaggs
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

## DECLARATION OF MESSENGER

☐ **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
(NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

**PROOF OF SERVICE—CIVIL**
(Proof of Service)

POS-040(P)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Wagner v. Spirevision LLC et al | SCV-252580 |

## ATTACHMENT TO PROOF OF SERVICE—CIVIL (PERSONS SERVED)

*(This attachment is for use with form POS-040.)*

**NAMES, ADDRESSES, AND OTHER APPLICABLE INFORMATION ABOUT PERSONS SERVED:**

| <u>Name of Person Served</u> | <u>Where Served</u> | <u>Time of Service</u> |
|---|---|---|
| *(If the person served is an attorney, the party or parties represented should also be stated.)* | *(Provide business or residential address where service was made by personal service, mail, overnight delivery, or messenger service. For other means of service, provide fax number or electronic service address, as applicable.)* | *(Complete for service by fax transmission or electronic service.)* |
| Lifescript, Inc.<br>Kevan Fornasero | Perkins Coie LLP<br>4 Embarcadero Center, Suite 2400<br>San Francisco, CA 94111 | Time: _____ |
| Christopher Wagner<br>Timothy James Walton | Law Offices of Timothy Walton<br>9515 Soquel Drive, Suite 207<br>Aptos, CA 95003 | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |

**ATTACHMENT TO PROOF OF SERVICE—CIVIL (PERSONS SERVED)**
**(Proof of Service)**

Box 145

POS-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Leeor Neta (State Bar 233454 )<br>Newman Du Wors<br>1201 Third Avenue, Suite 1600<br>Seattle, WA 98101<br>TELEPHONE NO.: (206) 274-2800  FAX NO. *(Optional):* (206) 274-2801<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Spire Vision LLC et al. | F I L E D<br><br>AUG 2 7 2013<br><br>SUPERIOR COURT OF CALIFORNIA,<br>COUNTY OF SONOMA<br>BY _____ DEPUTY CLERK |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Sonoma |
|---|
| STREET ADDRESS: 3055 Cleveland Avenue |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Santa Rosa CA 95403 |
| BRANCH NAME: Civil and Family Law Courthouse |

PLAINTIFF/PETITIONER: Wagner

DEFENDANT/RESPONDENT Spire Vision LLC et al.

| PROOF OF SERVICE—CIVIL<br>Check method of service *(only one):* | CASE NUMBER:<br>SCV-252580 |
|---|---|
| ☐ By Personal Service  ☐ By Mail  ☑ By Overnight Delivery<br>☐ By Messenger Service  ☐ By Fax  ☐ By Electronic Service | JUDGE: Nancy Case Shaffer<br>DEPT.: 18 |

*(Do not use this proof of service to show service of a Summons and complaint.)*

1. At the time of service I was over 18 years of age and **not a party to this action.**

2. My residence or business address is:
   1201 Third Avenue, Suite 1600, Seattle, WA  98101

3. ☐ The fax number or electronic notification address from which I served the documents is *(complete if service was by fax or electronic service):*

4. On *(date):* August 26, 2013      I served the following **documents** *(specify):*

   DECLARATION OF LEEOR NETA IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER OR, IN THE ALTERNATIVE, FOR A STAY OF DISCOVERY AND IMPLEMENTATION OF A CASE MANAGEMENT ORDER

   ☐ The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:
   a. Name of person served: Daniel L. Balsam
   b. ☑ *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
      Business or residential address where person was served:
      Law Offices of Daniel Balsam, 2912 Diamond Street #218, San Francisco, CA 94131
   c. ☐ *(Complete if service was by fax or electronic service.)*
      (1) Fax number or electronic notification address where person was served:

      (2) Time of service:
   ☑ The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify):*
   a. ☐  **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

*(Continued on back)*

| Form Approved for Optional Use<br>Judicial Council of California<br>POS-040 [Rev. January 1, 2009] | PROOF OF SERVICE—CIVIL<br>(Proof of Service) | Code of Civil Procedure., §§ 1010.6, 1011, 1013, 1013a,<br>2015.5; Cal. Rules of Court, rules 2.260, 2.306<br>www.courtinfo.ca.gov |
|---|---|---|
| | | American LegalNet, Inc.<br>www.FormsWorkflow.com |

POS-040

| CASE NAME | CASE NUMBER: |
|---|---|
| Wagner v. Spire Vision LLC | SCV-252580 |

6. b. ☐ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one):*

   (1) ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

   (2) ☐ placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

   I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):*

   c. ☑ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

   d. ☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

   e. ☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

   f. ☐ **By electronic service.** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in item 5. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 26, 2013

Sarah Skaggs

_____
(TYPE OR PRINT NAME OF DECLARANT)

► _____
(SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

### DECLARATION OF MESSENGER

☐ **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
(NAME OF DECLARANT)

► _____
(SIGNATURE OF DECLARANT)

**PROOF OF SERVICE—CIVIL**
(Proof of Service)

POS-040(P)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Wagner v. Spirevision LLC et al | SCV-252580 |

## ATTACHMENT TO PROOF OF SERVICE—CIVIL (PERSONS SERVED)

*(This attachment is for use with form POS-040.)*

**NAMES, ADDRESSES, AND OTHER APPLICABLE INFORMATION ABOUT PERSONS SERVED:**

| **Name of Person Served** | **Where Served** | **Time of Service** |
|---|---|---|
| *(If the person served is an attorney, the party or parties represented should also be stated.)* | *(Provide business or residential address where service was made by personal service, mail, overnight delivery, or messenger service. For other means of service, provide fax number or electronic service address, as applicable.)* | *(Complete for service by fax transmission or electronic service.)* |
| Lifescript, Inc.<br>Kevan Fornasero | Perkins Cole LLP<br>4 Embarcadero Center, Suite 2400<br>San Francisco, CA 94111 | Time: _____ |
| Christopher Wagner<br>Timothy James Walton | Law Offices of Timothy Walton<br>9515 Soquel Drive, Suite 207<br>Aptos, CA 95003 | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |

**ATTACHMENT TO PROOF OF SERVICE—CIVIL (PERSONS SERVED)**
**(Proof of Service)**

1  Timothy J. Walton (State Bar No. 184292)
2  Jim C. Twu (State Bar No. 175032)
   WALTON TWU LLP
3  9515 Soquel Drive, Suite 207
   Aptos, CA 95003-4137
4  Phone (831) 685-9800
5  Fax: (650) 618-8687

```
┌─────────────────────────┐
│       Received          │
│     SEP 0 6 2013        │
│   Newman | DuWors       │
└─────────────────────────┘
```

6
   Daniel L. Balsam (State Bar No. 260423)
7  THE LAW OFFICES OF DANIEL BALSAM
   2912 Diamond Street #218
8  San Francisco, CA 94131
9  Phone: (415) 869-2873
   Fax: (415) 869-2873
10

11 Attorneys for Plaintiff Christopher Wagner

12

13                SUPERIOR COURT OF THE STATE OF CALIFORNIA

14            COUNTY OF SONOMA (UNLIMITED JURISDICTION)

15
   CHRISTOPHER WAGNER,                ) Case No.:    SCV-252580
16                                     )
17          Plaintiff,                 ) NOTICE OF HEARING DATE FOR
                                       ) PLAINTIFF'S MOTION TO STRIKE
18     v.                              ) ANSWER
                                       )
19                                     )
   SPIRE VISION LLC et al.,            )
20                                     )
                                       )
21          Defendants.                )
                                       )
22

23 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

24        PLEASE TAKE NOTICE that the Court set a hearing date of November 6, 2013 at 3:30

25 p.m. for Plaintiff Christopher Wagner's Motion to Strike the Answer filed by Defendants. A

26 copy of the Notice of Motion is attached as Exhibit A.

27                                THE LAW OFFICES OF DANIEL BALSAM

28 Date: _____September 1, 2013_____    BY: _____
                                                DANIEL L. BALSAM
29                                              Attorneys for Plaintiff Christopher Wagner
30

31

---

                                    1
                        NOTICE OF HEARING DATE

Exhibit A

1  Timothy J. Walton (State Bar No. 184292)
2  Jim C. Twu (State Bar No. 175032)
   WALTON TWU LLP
3  9515 Soquel Drive, Suite 207
   Aptos. CA 95003-4137
4  Phone (831) 685-9800
5  Fax: (650) 618-8687

**ENDORSED FILED**

**AUG 27 2013**

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

6
7  Daniel L. Balsam (State Bar No. 260423)
   THE LAW OFFICES OF DANIEL BALSAM
8  2912 Diamond Street #218
   San Francisco, CA 94131
9  Phone: (415) 869-2873
   Fax: (415) 869-2873
10

*L&M TENTATIVE RULINGS are available after 2:00 p.m. on the court day prior to the scheduled hearing: http://www.SonomaSuperiorCourt.com OR (707) 521-6881*

11  Attorneys for Plaintiff Christopher Wagner
12
13
14              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
15             **COUNTY OF SONOMA (UNLIMITED JURISDICTION)**
16
17  CHRISTOPHER WAGNER,                ) Case No.:     SCV-252580
                                       )
18            Plaintiff,               ) **NOTICE OF HEARING AND**
                                       ) **PLAINTIFF'S MOTION TO STRIKE**
19       v.                            ) **DEFENDANTS' ANSWER**
                                       )
20  SPIRE VISION LLC *et al*,          ) **Code Civ. Proc. §§ 436-437**
                                       )
21            Defendants.              ) Date:      **NOV − 6 2013**
22                                     ) Time:      3:30 p.m.
                                       ) Judge:     Hon. Nancy Case Shaffer
23                                     ) Dept:      18
24  _____
25  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:
26       PLEASE TAKE NOTICE that on _____**NOV − 6 2013**_____, ~~2013~~, at 3:30 p.m.,
27  in Department 18 of the above-entitled court, located at 3055 Cleveland Avenue, Santa Rosa,
28  California 95403 Plaintiff Christopher Wagner will and hereby does move the Court for an order
29  granting his Motion to Strike portions of the Verified Answer and Affirmative Defenses
30  ("Answer") filed by 18 Spire Vision entities (collectively "Spire Vision") and Accelerize New
31  Media Inc. ("Accelerize") pursuant to Code of Civil Procedure §§ 436-437, as set forth below:

1

**NOTICE OF HEARING AND PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' ANSWER**

1.   Wagner moves to strike all Defendants *except* Spire Vision LLC from the caption (1:12-23) and the introductory paragraph (1:25-2:3) because *only* Spire Vision LLC verified the Answer.

2.   Wagner moves to strike affirmative defenses 1 and 3-9 because they do not indicate the cause(s) of action to which they are supposed to apply.

3.   Wagner moves to strike the seventh affirmative defense ("Plaintiff has failed to join one or more necessary and indispensable parties") because it is a legal conclusion; Defendants state no facts to support the affirmative defense.

4.   Wagner moves to strike the eighth affirmative defense ("Venue and jurisdiction are improper . . . grounds exist for removal to federal court") because is false, improper, and not drawn in conformity with a court order. The U.S. District Court already entertained Defendants' improper removal and granted Wagner's Motion to Remand to this Court.

5.   Wagner moves to strike the ninth purported affirmative defense ("Answering Defendants reserve the right to add more defenses as discovery proceeds") because it is not drawn or filed in conformity with the laws of this state; more specifically, no such defense exists.

6.   Wagner moves to strike "Attorney's fees" from Prayer for Relief ¶ B because: a) Business & Professions Code § 17529.5 awards attorneys' fees to a prevailing spam *recipient*; a spammer has no basis whatsoever to recover attorneys' fees, and b) Business & Professions Code § 17538.5 does not contain a provision for attorneys' fees.

Therefore, the Answer is objectionable on its face.

The Motion to Strike is based upon this Notice, the Motion to Strike and Memorandum of Points and Authorities, the Declaration of Daniel Balsam, all other pleadings and records on file herein, and such argument and other evidence as may be offered at the hearing.

This Court should sustain the Motion to Strike.

THE LAW OFFICES OF DANIEL BALSAM

Date: _____August 20, 2013_____ BY: _____

DANIEL L. BALSAM
Attorneys for Plaintiff Christopher Wagner

| | |
|---|---|
| *Attorney or Party Without Attorney*<br>Daniel L. Balsam (State Bar No. 260423)<br>THE LAW OFFICES OF DANIEL BALSAM<br>2912 Diamond Street #218<br>San Francisco, CA 94131<br>     *Telephone No.:*   415-869-2873<br>     *Fax No.:*   415-869-2873<br>     *Attorney for:*   Plaintiff Christopher Wagner | |
| *Insert name of Court, and Judicial District and Branch Court:*<br>Superior Court of California, County of Sonoma<br>Civil and Family Law Courthouse<br>3055 Cleveland Avenue<br>Santa Rosa, CA 95403 | |

| | | |
|---|---|---|
| *Plaintiff/Petitioner:*   Christopher Wagner<br>*Defendant/Respondent:*   Spire Vision LLC et al | | *Case Number:*<br>     SCV-252580 |

| | | | |
|---|---|---|---|
| **PROOF OF SERVICE – CIVIL**<br>**Check method of service** *(only one):* | | *Judge:*   Shaffer | |
| [  ] By Personal Service     [ X ] By Mail     [  ] By Overnight Delivery<br>[  ] By Messenger Service     [  ] By Fax     [  ] By Electronic Service | | *Courtroom:*   18 | |

*(Do not use this proof of service to show service of a Summons and complaint.)*

1.   At the time of service I was at least 18 years of age and not a party to this action.

2.   My residence or business address is:
     The Law Offices of Daniel Balsam, 2912 Diamond Street #218, San Francisco, CA 94131

4.   On *(date):*   September 1, 2013          I served the following **documents** *(specify):*

     Notice of Hearing Date for Plaintiff's Motion to Strike Answer

5.   I served the documents on the person or persons below, as follows:
     a.   Name of person served:
          John Du Wors – attorney for Spire Vision entities, Accelerize New Media Inc.

     b.   [ X ]   *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
          Business or residential address where person was served:
          Newman Du Wors LLP, 1201 Third Avenue, Suite 1600, Seattle, WA 98101

6.   The documents were served by the following means *(specify):*
     b.   [ X ]   **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at
          the addresses in item 5 and *(specify one):*
          (1)  [ X ]   deposited the sealed envelope with the United States Postal Service, with the postage fully
               prepaid.
          I am a resident or employed in the county where the mailing occurred.  The envelope or package was placed
          in the mail at *(city and state):* San Francisco, CA

I declare under penalty of perjury under the laws of the State of California and the United States of America that the
foregoing is true and correct.

Date:        September 1, 2013

Daniel L. Balsam                                                                  *(signature)*
Type or Print Name of Declarant                                    Signature of Declarant

---

**PROOF OF SERVICE – CIVIL**

Box 145

1 | John Du Wors, State Bar No. 233913
john@newmanlaw.com
2 | NEWMAN DU WORS LLP
1201 Third Avenue, Suite 1600
3 | Seattle, WA 98101
4 | Telephone: (206) 274-2800
Facsimile: (206) 274-2801
5

6 | Leeor Neta, State Bar No. 233454
leeor@newmanlaw.com
7 | NEWMAN DU WORS LLP
150 California Street, Suite 2100
8 | San Francisco, CA 94111
9 | Telephone: (415) 321-1818
Facsimile: (415) 618-0080
10

11 | Attorneys for Defendants

12

13 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SONOMA**
14

15 | Christopher Wagner, an individual, | Civil Case No. SCV-252580

16 |

17 | Plaintiff, | **SUPPLEMENTAL DECLARATION**
v. | **OF LEEOR NETA REGARDING**
18 | | **MEET AND CONFER**
Spire Vision LLC, a Delaware limited liability | **CONFERENCE ON**
19 | company, et al., | **DEFENDANTS' MOTION FOR**
| **PROTECTIVE ORDER OR, IN**
20 | | **THE ALTERNATIVE, FOR A**
Defendants. | **STAY OF DISCOVERY AND**
21 | | **IMPLEMENTATION OF A CASE**
22 | | **MANAGEMENT ORDER**
| **(SONOMA COUNTY LOCAL**
23 | | **RULE 5.4)**
24 |

25 | | Hearing Date: September 11, 2013
Hearing Time: 3:30 pm
26 | | Dept. No. 18
Judge: Hon. Nancy Case Shaffer
27 |

28 |

SUPPLEMENTAL NETA DECLARATION – SCV-252580

I, Leeor Neta, declare as follows:

1.      I am an attorney with Newman Du Wors LLP, counsel for Defendants Spire Vision LLC et al. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2.      On Friday, September 6, I received a copy of a letter to the Court from Dan Balsam, counsel for Plaintiff Christopher Wagner. This letter makes numerous misstatements of fact and law and completely misrepresents the parties' meet and confer efforts. In particular, Mr. Balsam has committed perjury by claiming that his "text of communications" between us is a true and correct copy. Instead, it is an improper sur-reply that excerpts only a small portion of the parties' exchange.

3.      It is worth noting at the outset that Mr. Balsam's excerpt omits his rude and unprofessional tone. Specifically, Mr. Balsam has yelled at me by typing in all caps (http://networketiquette.net/core_rules_do_not_use_all_caps.html), ordered me to "Get a grip," and accused me that I am "nuts."

4.      Attached as **Exhibit 1** is a true and correct copy of the letters and emails exchanged between Mr. Balsam and I, in chronological order. A brief review of this correspondence demonstrates that Mr. Balsam has mischaracterized the parties' positions.

5.      There are essentially two concerns that drove this exchange: (1) a reasonable request to limit this proceeding to the 49 emails currently at issue, and (2) a reasonable request that Plaintiff produce the 49 emails at issue so that Defendants could provide a timely response as to each email.

6.      Plaintiff flatly refused to limit this proceeding to 49 emails even though he fought remand on the basis that there were only 49 emails at issue and that, as such, the amount in controversy for federal diversity jurisdiction was not present. (*See* Reply to Opposition to Remand, dated February 15, 2013, attached as **Exhibit 2** at 14:6-11.)

7.      While Defendants want to make sure they do not continue to send Plaintiff further commercial email, they cannot do that unless Plaintiff provides his email

addresses. In fact, that is the only way to ever guarantee that Defendants will not send more spam to Plaintiff. And yet, Plaintiff refused to do even that, citing two articles that simply encourage email users not to "respond to unsolicited email." (*See* Letter from Balsam, dated September 1, 2013, Exhibit B at p. 3) Defendants are not asking Plaintiff to respond to the email at issue. Defendants are simply asking Plaintiff—in the context of litigation—to provide his email addresses for the limited purpose of ensuring they will not send him further commercial correspondence. Plaintiffs do not contend that Defendants could not request these addresses through the formal discovery process. But by refusing to take even this modest step, Plaintiff has frustrated Defendants efforts to cease sending him unsolicited email, has undermined the intention of his lawsuit (which was initiated without a formal demand), and will ensure there is "no foreseeable end to these proceedings."

8.     Because Plaintiff was unwilling to provide his email addresses, Defendants suggested that the parties agree to limit this proceeding to the 49 emails at issue and leave future emails to another proceeding, if necessary. Again Plaintiff refused, claiming that California Civil Code, Section 1668, prevents such an agreement. (*See* Letter from Balsam, dated September 1, 2013, Exhibit B at pp. 2-3) Plaintiff misstates and misapplies the law. Section 1668 prohibits agreements condoning fraud or intentional injury as follows:

> All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own ***fraud***, or ***willful injury*** to the person or property of another, or violation of law, whether ***willful or negligent***, are against the policy of the law.

(Emphasis added.) Section 1668 has no relevance to these proceedings. Plaintiff does not claim that he was willfully, let alone negligently, defrauded by the emails, nor has Plaintiff claimed a compensable injury. Plaintiff merely claims that Defendants are strictly liable for sending improperly labeled emails and that he is entitled to liquidated damages. If Plaintiff were willing to waive such claims, there is nothing in Section 1668 that would prohibit such waiver. Even so, Defendants are *not* seeking a waiver. They are

1    simply asking Plaintiff to agree —for the sake of maintaining a reasonable limit to this

2    proceeding—not to amend his complaint to include further non-tortious claims and leave

3    them for a later date, if necessary. Again, Plaintiff refused this modest step.

4         9.     Mr. Balsam's falsified excerpt of the parties' communications fails to

5    address Defendants' request that Plaintiff produce the 49 emails at issue. As I explained

6    in an email, dated August 28, Defendants cannot be expected to answer a single set of

7    form interrogatories for every email at issue until the emails at issue are produced:

8
9              It is your client's responsibility to disclose the emails at issue. Because the
               Court declined to consider the merits of Defendants' demurrer, there was
10             no opportunity to discuss how Wagner failed to allege sufficient facts to
               support his claims by failing to attach the emails to the complaint. If you
11             would rather force my clients through the exercise of demanding the emails
               at issue, we are certainly willing to do that. But you only delay responses to
12             your discovery since the Court has already ruled that 8 Defendants should
               answer 22 form interrogatories for every email at issue, and Defendants
13             cannot do that until they know what emails are at issue.

14   And yet, Plaintiff refused to produce the emails unless Defendants sought them through

15   formal discovery. On Thursday, September 5, the Spire Vision Defendants served

16   Plaintiff with 14 discovery requests and a deposition notice. The Spire Vision Defendants

17   suspect this will constitute *all* of the discovery necessary to resolve Plaintiff's claims

18   with respect to all 49 emails. Once Plaintiff provides complete responses to this

19   discovery, Defendants are willing to review the emails at issue and respond to 8,624 form

20   interrogatories (22 requests x 49 emails). But a protective order or discovery referee is

21   needed with respect to Plaintiff's remaining 6,000 special interrogatories, requests for

22   admission and requests for production which are completely unprecedented, unwarranted,

23   needlessly harassing and vexatious.

24   //

25   //

26

27

28

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct.

3

4        Executed in San Francisco, California on September 9, 2013.

5

6

7                                           _____

8                                           Leeor Neta

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 1**

| | |
|---|---|
| **From:** | Leeor Neta |
| **To:** | Dan Balsam |
| **Cc:** | John Du Wors |
| **Subject:** | Wagner v. Spire Vision |
| **Date:** | Tuesday, August 27, 2013 4:23:01 PM |

Dan:

I am in receipt of your letter, dated August 22, 2013.

My concern relates to the term, "the 49 commercial email advertisements at issue in this Action." This statement, which was not part of the tentative, suggests that this suit will be limited to the 49 emails currently at issue. So I write to confirm that you will not later move to amend your complaint to add additional email messages.

Also, while my client is certainly willing to respond to discovery, we require copies of the 49 email messages at issue in order to proceed. Please confirm that you will send copies of these messages in native format as soon as possible.

Thank you,
Leeor Neta
Of Counsel
Newman Du Wors
1201 Third Ave, Ste 1600
Seattle, Washington 98101
leeor@newmanlaw.com
www.newmanlaw.com
Email privileged and confidential - please destroy if you are not the intended recipient

| From: | Dan Balsam |
|-------|-----------|
| To: | Leeor Neta |
| Cc: | John Du Wors; Timothy Walton |
| Subject: | Re: Wagner v. Spire Vision |
| Date: | Tuesday, August 27, 2013 4:47:52 PM |

1. Good point, we should take out the reference to "49."  Should Wagner receive more Spire Vision spams, you can bet he'll move to amend the complaint.

2. Spire Vision is "certainly willing to respond to discovery"?  When did THAT happen?

3. What do you think "native format" means?  Different people seem to have different interpretations of the term.  I believe that "native format" means ascii text, but that's not going to include clickthrough/redirect links, and the graphics and links are almost certainly dead by now. So, what EXACTLY do you want?

4. You should propound RFPDs for the spams, and Wagner will respond with verifications in far less than 30 days.  I'm disinclined to produce the spams "informally" now because you'll probably make me produce again later on so you can have verifications. So let's just do this once.


================================================
Dan Balsam
Sue a Spammer! www.DanHatesSpam.com
_____

**From:** Leeor Neta <Leeor@newmanlaw.com>
**To:** Dan Balsam <legal@danbalsam.com>
**Cc:** John Du Wors <John@newmanlaw.com>
**Sent:** Tuesday, August 27, 2013 4:23 PM
**Subject:** Wagner v. Spire Vision

Dan:

I am in receipt of your letter, dated August 22, 2013.

My concern relates to the term, "the 49 commercial email advertisements at issue in this Action." This statement, which was not part of the tentative, suggests that this suit will be limited to the 49 emails currently at issue. So I write to confirm that you will not later move to amend your complaint to add additional email messages.

Also, while my client is certainly willing to respond to discovery, we require copies of the 49 email messages at issue in order to proceed. Please confirm that you will send copies of these messages in native format as soon as possible.

Thank you,
Leeor Neta
Of Counsel

Newman Du Wors

1201 Third Ave, Ste 1600

Seattle, Washington 98101
leeor@newmanlaw.com
www.newmanlaw.com
Email privileged and confidential - please destroy if you are not the intended recipient

| From: | Leeor Neta |
|-------|------------|
| To: | Dan Balsam |
| Cc: | John Du Wors; Timothy Walton |
| Subject: | RE: Wagner v. Spire Vision |
| Date: | Wednesday, August 28, 2013 1:33:52 PM |

Dan,

I respond to each of your points in order:

1. Your suggestion is not in keeping with Judge Shaffer's order. During the hearing last week, Judge Shaffer agreed that 8 Defendants should answer one set of form interrogatories (with the exception of 17.1) for every email at issue. In your proposed order, you calculate that this would result in 8,624 interrogatory responses. Defendants are certainly willing to comply with these terms. But by removing any reference to the number "49", the 8 Defendants have no way of determining how many interrogatory responses to lodge, let alone any way of fashioning a response regarding emails that are not even at issue. And Defendants have a legitimate reason to be concerned that if you amend the complaint to add additional email messages (as you are already attempting to do in another matter), that there will be no foreseeable end to these proceedings. There needs to be a reasonable limitation to this action. The Court deserves as much. My clients cannot agree to your proposed terms.

2. As described above, my clients are certainly willing to respond to discovery. On Demand Research has already responded to a host of discovery in this matter. And my clients will continue to respond to discovery that is not vexatious and harassing.

3. The emails should be made available in an electronically searchable form in order to facilitate a method of searching across all files. Thousands of printouts serve little use.

4. It is your client's responsibility to disclose the emails at issue. Because the Court declined to consider the merits of Defendants' demurrer, there was no opportunity to discuss how Wagner failed to allege sufficient facts to support his claims by failing to attach the emails to the complaint. If you would rather force my clients through the exercise of demanding the emails at issue, we are certainly willing to do that. But you only delay responses to your discovery since the Court has already ruled that 8 Defendants should answer 22 form interrogatories for every email at issue, and Defendants cannot do that until they know what emails are at issue.

Leeor Neta
Newman Du Wors
150 California Street, Suite 2100
San Francisco, California 94111
leeor@newmanlaw.com
www.newmanlaw.com
Email privileged and confidential - please destroy if you are not the intended recipient

---

**From:** Dan Balsam [legal@danbalsam.com]
**Sent:** Tuesday, August 27, 2013 4:47 PM
**To:** Leeor Neta
**Cc:** John Du Wors; Timothy Walton
**Subject:** Re: Wagner v. Spire Vision

1. Good point, we should take out the reference to "49." Should Wagner receive more Spire Vision spams, you can bet he'll move to amend the complaint.

2. Spire Vision is "certainly willing to respond to discovery"? When did THAT happen?

3. What do you think "native format" means?  Different people seem to have different interpretations of the term.  I believe that "native format" means ascii text, but that's not going to include clickthrough/redirect links, and the graphics and links are almost certainly dead by now. So, what EXACTLY do you want?

4. You should propound RFPDs for the spams, and Wagner will respond with verifications in far less than 30 days.  I'm disinclined to produce the spams "informally" now because you'll probably make me produce again later on so you can have verifications. So let's just do this once.


==================================================
Dan Balsam
Sue a Spammer! www.DanHatesSpam.com

---

**From:** Leeor Neta <Leeor@newmanlaw.com>
**To:** Dan Balsam <legal@danbalsam.com>
**Cc:** John Du Wors <John@newmanlaw.com>
**Sent:** Tuesday, August 27, 2013 4:23 PM
**Subject:** Wagner v. Spire Vision

Dan:

I am in receipt of your letter, dated August 22, 2013.

My concern relates to the term, "the 49 commercial email advertisements at issue in this Action." This statement, which was not part of the tentative, suggests that this suit will be limited to the 49 emails currently at issue. So I write to confirm that you will not later move to amend your complaint to add additional email messages.

Also, while my client is certainly willing to respond to discovery, we require copies of the 49 email messages at issue in order to proceed. Please confirm that you will send copies of these messages in native format as soon as possible.

Thank you,
Leeor Neta
Of Counsel
Newman Du Wors
1201 Third Ave, Ste 1600
Seattle, Washington 98101
leeor@newmanlaw.com
www.newmanlaw.com
Email privileged and confidential - please destroy if you are not the intended recipient

| From: | Dan Balsam |
|---|---|
| To: | Leeor Neta |
| Cc: | John Du Wors; Timothy Walton |
| Subject: | Re: Wagner v. Spire Vision |
| Date: | Wednesday, August 28, 2013 1:53:23 PM |

1. First you don't want references to 49, now you do? I think I'll just say "49 as of now." You'll know how many to respond to after we provide the emails. (See #4.) That said, if your clients send more spam to Wagner, then he's entitled to amend. There's a real easy way to prevent that, and it's entirely within YOUR client's power to do so. These aren't MY terms, and I don't really care all that much if you agree to them or not. I'm prepared to send the proposed order to the court, as I think the court intended it to be based on the hearing, and I'll note your objections.

2. On Demand Research has responded to a LITTLE bit of set 2 discovery. It joined the motion for protective order as to set 1 with all the other Ds. Wagner has not propounded any vexatious and harassing discovery in this Action. The discovery is what it is because you insisted on separate discovery to each of your clients and refused various stipulations that could have reduced it.

3. I was planning on producing electronically as opposed to paper. But electronic v. paper does not address the question I asked you re: format. Apples & oranges. I can produce native format electronically if you want, but I don't think it's going to help you because graphics and links are almost assuredly all dead at this point. What CONTENT, electronically, do you want?

4. Well then you'd better hurry up and send Wagner RFPDs so you can timely comply with the court's forthcoming order. I think it would probably take you about 3 minutes to write "RFPD 1: Produce documents evidencing all alleged unsolicited commercial emails that Wagner received that are currently at issue in this Action. Documents should be produced electronically, in XXXXX format." Actually, less than 15 minutes, because I just wrote it for you. I already told you I'll respond a lot faster than 30 days.


===================================================
Dan Balsam
Sue a Spammer! www.DanHatesSpam.com

---

**From:** Leeor Neta <Leeor@newmanlaw.com>
**To:** Dan Balsam <legal@danbalsam.com>
**Cc:** John Du Wors <John@newmanlaw.com>; Timothy Walton <timothy.walton.47@gmail.com>
**Sent:** Wednesday, August 28, 2013 1:33 PM
**Subject:** RE: Wagner v. Spire Vision

Dan,

I respond to each of your points in order:

1. Your suggestion is not in keeping with Judge Shaffer's order. During the hearing last week, Judge Shaffer agreed that 8 Defendants should answer one set of form interrogatories (with the exception of 17.1) for every email at issue. In your proposed order, you calculate that this would result in 8,624 interrogatory responses. Defendants are certainly willing to comply with these terms. But by removing any reference to the number "49", the 8 Defendants have no way of determining how many interrogatory responses to lodge, let alone any way of fashioning a response regarding emails that are not even at issue. And Defendants have a legitimate reason to be concerned that if you amend the complaint to add additional email messages (as you are already attempting to do in another matter), that there will be no foreseeable end to these proceedings. There needs to be a reasonable limitation to this action. The Court deserves as much. My clients cannot agree to your proposed terms.

2. As described above, my clients are certainly willing to respond to discovery. On Demand Research has already responded to a host of discovery in this matter. And my clients will continue to respond to discovery that is not vexatious and harassing.

3. The emails should be made available in an electronically searchable form in order to facilitate a method of searching across all files. Thousands of printouts serve little use.

4. It is your client's responsibility to disclose the emails at issue. Because the Court declined to consider the merits of Defendants' demurrer, there was no opportunity to discuss how Wagner failed to allege sufficient facts to support his claims by failing to attach the emails to the complaint. If you would rather force my clients through the exercise of demanding the emails at issue, we are certainly willing to do that. But you only delay responses to your discovery since the Court has already ruled that 8 Defendants should answer 22 form interrogatories for every email at issue, and Defendants cannot do that until they know what emails are at issue.

Leeor Neta

Newman Du Wors

150 California Street, Suite 2100

San Francisco, California 94111

leeor@newmanlaw.com

www.newmanlaw.com

Email privileged and confidential - please destroy if you are not the intended recipient

---

**From:** Dan Balsam [legal@danbalsam.com]
**Sent:** Tuesday, August 27, 2013 4:47 PM
**To:** Leeor Neta
**Cc:** John Du Wors; Timothy Walton
**Subject:** Re: Wagner v. Spire Vision

1. Good point, we should take out the reference to "49." Should Wagner receive more Spire Vision spams, you can bet he'll move to amend the complaint.

2. Spire Vision is "certainly willing to respond to discovery"? When did THAT happen?

3. What do you think "native format" means? Different people seem to have different interpretations of the term. I believe that "native format" means ascii text, but that's not going to include clickthrough/redirect links, and the graphics and links are almost certainly dead by now. So, what EXACTLY do you want?

4. You should propound RFPDs for the spams, and Wagner will respond with verifications in far less than 30 days. I'm disinclined to produce the spams "informally" now because you'll probably make me produce again later on so you can

have verifications. So let's just do this once.

===================================================
Dan Balsam
Sue a Spammer! www.DanHatesSpam.com

---

**From:** Leeor Neta <Leeor@newmanlaw.com>
**To:** Dan Balsam <legal@danbalsam.com>
**Cc:** John Du Wors <John@newmanlaw.com>
**Sent:** Tuesday, August 27, 2013 4:23 PM
**Subject:** Wagner v. Spire Vision

Dan:

I am in receipt of your letter, dated August 22, 2013.

My concern relates to the term, "the 49 commercial email advertisements at issue in this Action." This statement, which was not part of the tentative, suggests that this suit will be limited to the 49 emails currently at issue. So I write to confirm that you will not later move to amend your complaint to add additional email messages.

Also, while my client is certainly willing to respond to discovery, we require copies of the 49 email messages at issue in order to proceed. Please confirm that you will send copies of these messages in native format as soon as possible.

Thank you,
Leeor Neta
Of Counsel
Newman Du Wors
1201 Third Ave, Ste 1600
Seattle, Washington 98101
leeor@newmanlaw.com
www.newmanlaw.com
Email privileged and confidential - please destroy if you are not the intended recipient

| From: | Leeor Neta |
|---|---|
| To: | Dan Balsam |
| Cc: | John Du Wors; Timothy Walton |
| Subject: | RE: Wagner v. Spire Vision |
| Date: | Wednesday, August 28, 2013 6:15:19 PM |

Dan,

1. If your intention is to draft an order that is in keeping with the hearing, then you need to limit it to "49." As a demonstration of good faith, you should also agree not to later amend your complaint to add additional emails. But whether or not you refuse, I encourage you to provide *all* of Wagner's email addresses so that I can do my best to ensure he is sent no further email from my clients. If your client refuses to do that or at least click on the unsubscribe links, there is not much else my clients can do.

2. Your discovery *is* vexatious and harassing. Eight of my clients are willing to respond to 1,000 discovery requests each. Another of my clients has responded to multiple sets. You insist on multiple times more and insist on reserving the right to expand this lawsuit to include an unlimited number of future emails. I simply cannot see how we are not being forthcoming or how you are being reasonable.

3. The emails should be made available in an electronically searchable form in order to facilitate a method of searching across all files. In terms of "content," I think it is obvious that the emails must be disclosed.

4. If you are going to force my clients to demand the emails via discovery, that will only delay responses to your discovery.

Leeor Neta
Newman Du Wors
150 California Street, Suite 2100
San Francisco, California 94111
leeor@newmanlaw.com
www.newmanlaw.com
Email privileged and confidential - please destroy if you are not the intended recipient

---

**From:** Dan Balsam [legal@danbalsam.com]
**Sent:** Wednesday, August 28, 2013 1:53 PM
**To:** Leeor Neta
**Cc:** John Du Wors; Timothy Walton
**Subject:** Re: Wagner v. Spire Vision

1. First you don't want references to 49, now you do?  I think I'll just say "49 as of now."  You'll know how many to respond to after we provide the emails.  (See #4.)  That said, if your clients send more spam to Wagner, then he's entitled to amend.  There's a real easy way to prevent that, and it's entirely within YOUR client's power to do so.  These aren't MY terms, and I don't really care all that much if you agree to them or not.  I'm prepared to send the proposed order to the court, as I think the court intended it to be based on the hearing, and I'll note your objections.

2. On Demand Research has responded to a LITTLE bit of set 2 discovery.  It joined the motion for protective order as to set 1 with all the other Ds.  Wagner has not propounded any vexatious and harassing discovery in this Action.  The discovery is what it is because you insisted on separate discovery to each of your clients and refused various stipulations that could have reduced it.

3. I was planning on producing electronically as opposed to paper.  But electronic v. paper does not address the question I asked you re: format.  Apples & oranges.  I can produce native format electronically if you want, but I don't think it's going to help you because graphics and links are almost assuredly all dead at this point.  What CONTENT, electronically, do you want?

4. Well then you'd better hurry up and send Wagner RFPDs so you can timely comply with the court's forthcoming order.  I think it would probably take you about 3 minutes to write "RFPD 1: Produce documents evidencing all alleged unsolicited commercial emails that Wagner received that are currently at issue in this Action.  Documents should be produced electronically, in XXXXX format."  Actually, less than 15 minutes, because I just wrote it for you.  I already told you I'll respond a lot faster than 30 days.


==================================================
Dan Balsam
Sue a Spammer! www.DanHatesSpam.com

---

**From:** Leeor Neta <Leeor@newmanlaw.com>
**To:** Dan Balsam <legal@danbalsam.com>
**Cc:** John Du Wors <John@newmanlaw.com>; Timothy Walton <timothy.walton.47@gmail.com>
**Sent:** Wednesday, August 28, 2013 1:33 PM
**Subject:** RE: Wagner v. Spire Vision

Dan,

I respond to each of your points in order:

1. Your suggestion is not in keeping with Judge Shaffer's order. During the hearing last week, Judge Shaffer agreed that 8 Defendants should answer one set of form interrogatories (with the exception of 17.1) for every email at issue. In your proposed order, you calculate that this would result in 8,624 interrogatory responses. Defendants are certainly willing to comply with these terms. But by removing any reference to the number "49", the 8 Defendants have no way of determining how many interrogatory responses to lodge, let alone any way of fashioning a response regarding emails that are not even at issue. And Defendants have a legitimate reason to be concerned that if you amend the complaint to add additional email messages (as you are already attempting to do in another matter), that there will be no foreseeable end to these proceedings. There needs to be a reasonable limitation to this action. The Court deserves as much. My clients cannot agree to your proposed terms.

2. As described above, my clients are certainly willing to respond to discovery. On Demand Research has already responded to a host of discovery in this matter. And my clients will continue to respond to discovery that is not vexatious and harassing.

3. The emails should be made available in an electronically searchable form in order to facilitate a method of searching across all files. Thousands of printouts serve little use.

4. It is your client's responsibility to disclose the emails at issue. Because the Court declined to consider the merits of Defendants' demurrer, there was no opportunity to discuss how Wagner failed to allege sufficient facts to support his claims by failing to attach the emails to the complaint. If you would rather force my clients through the exercise of demanding the emails at issue, we are certainly willing to do that. But you only delay responses to your discovery since the Court has already ruled that 8

Defendants should answer 22 form interrogatories for every email at issue, and Defendants cannot do that until they know what emails are at issue.

Leeor Neta
Newman Du Wors
150 California Street, Suite 2100
San Francisco, California 94111
leeor@newmanlaw.com
www.newmanlaw.com
Email privileged and confidential - please destroy if you are not the intended recipient

---

**From:** Dan Balsam [legal@danbalsam.com]
**Sent:** Tuesday, August 27, 2013 4:47 PM
**To:** Leeor Neta
**Cc:** John Du Wors; Timothy Walton
**Subject:** Re: Wagner v. Spire Vision

1. Good point, we should take out the reference to "49." Should Wagner receive more Spire Vision spams, you can bet he'll move to amend the complaint.

2. Spire Vision is "certainly willing to respond to discovery"? When did THAT happen?

3. What do you think "native format" means? Different people seem to have different interpretations of the term. I believe that "native format" means ascii text, but that's not going to include clickthrough/redirect links, and the graphics and links are almost certainly dead by now. So, what EXACTLY do you want?

4. You should propound RFPDs for the spams, and Wagner will respond with verifications in far less than 30 days. I'm disinclined to produce the spams "informally" now because you'll probably make me produce again later on so you can have verifications. So let's just do this once.


===================================================
Dan Balsam
Sue a Spammer! www.DanHatesSpam.com

---

**From:** Leeor Neta <Leeor@newmanlaw.com>
**To:** Dan Balsam <legal@danbalsam.com>
**Cc:** John Du Wors <John@newmanlaw.com>
**Sent:** Tuesday, August 27, 2013 4:23 PM
**Subject:** Wagner v. Spire Vision

Dan:

I am in receipt of your letter, dated August 22, 2013.

My concern relates to the term, "the 49 commercial email advertisements at issue in this Action." This statement, which was not part of the tentative, suggests that this suit will be limited to the 49 emails

currently at issue. So I write to confirm that you will not later move to amend your complaint to add additional email messages.

Also, while my client is certainly willing to respond to discovery, we require copies of the 49 email messages at issue in order to proceed. Please confirm that you will send copies of these messages in native format as soon as possible.

Thank you,
Leeor Neta
Of Counsel
Newman Du Wors
1201 Third Ave, Ste 1600
Seattle, Washington 98101
leeor@newmanlaw.com
www.newmanlaw.com
Email privileged and confidential - please destroy if you are not the intended recipient

| | |
|---|---|
| **From:** | Dan Balsam |
| **To:** | Leeor Neta |
| **Cc:** | John Du Wors; "Timothy Walton" |
| **Subject:** | RE: Wagner v. Spire Vision |
| **Date:** | Wednesday, August 28, 2013 6:30:52 PM |

1. I intend to draft a proposed order that reflects what the Court said.  As of NOW, there are 49 emails at issue.  I will NOT agree that I won't amend the complaint if Wagner receives more emails.  Wagner declines your invitation to provide any other email addresses he might have to such notorious and prolific spammers as the Spire Vision entities.

2. The discovery is NOT vexatious and harassing.  You VOLUNTEERED to have 8 of your clients respond to 49 x 22 FROGs each.  On Demand Research LLC has responded to a few questions, some with bogus answers.  I offered you numerous opportunities and means to reduce the quantity of discovery.  And you bet I reserve the right to expand this lawsuit to include future emails if any are sent.  You frequently say "I cannot see" but that phrase doesn't carry much weight; you also "couldn't see" how the court could deny you the right to file a demurrer in state court after answering in federal court and remand, and yet, it happened.

3. You are still not answering the question, which leads me to believe that you don't actually understand what you're asking for or what you want.  Let me attempt to explain.  "Native format" means a bunch of ascii text.  It could be produced on paper or electronically; that's not the issue.  Ascii text will show "img ref=" for links to images stored on servers and "ahref=" for clickable links.  Native format is not going to show graphics, and it's not going to include clickthroughs to Spire Vision's websites that will give you the tracking codes you need to identify the affiliates.  But if that's what you want, you got it.  Please confirm.

4. You have not explained why you can't copy & paste the line I wrote before into a RFPD, once you figure out the format that you really want.  On the other hand, I have explained that I'm disinclined to produce documents twice, once now and once again when you demand Wagner's verification.  My request that you propound discovery will NOT delay your responses to Wagner's discovery, because a) You're on notice now that you need to do it and it'll take you only a couple minutes to put together a SINGLE DOCUMENT REQUEST that I already mostly wrote for you, and b) Your time to respond is going to be a function of the date I serve notice of the court's entry of order.

Why must you always be so difficult?

---

**From:** Leeor Neta [mailto:Leeor@newmanlaw.com]
**Sent:** Wednesday, August 28, 2013 6:15 PM
**To:** Dan Balsam
**Cc:** John Du Wors; Timothy Walton
**Subject:** RE: Wagner v. Spire Vision

Dan,

1. If your intention is to draft an order that is in keeping with the hearing, then you need to limit it to "49." As a demonstration of good faith, you should also agree not to later amend your complaint to add additional emails. But whether or not you refuse, I encourage you to provide *all* of Wagner's email addresses so that I can do my best to ensure he is sent no further email from my clients. If your client refuses to do that or at least click on the unsubscribe links, there is not much else my clients can do.

2. Your discovery *is* vexatious and harassing. Eight of my clients are willing to respond to 1,000 discovery requests each. Another of my clients has responded to multiple sets. You insist on multiple times more and insist on reserving the right to expand this lawsuit to include an unlimited number of future emails. I simply cannot see how we are not being forthcoming or how you are being reasonable.

3. The emails should be made available in an electronically searchable form in order to facilitate a method of searching across all files. In terms of "content," I think it is obvious that the emails must be disclosed.

4. If you are going to force my clients to demand the emails via discovery, that will only delay responses to your discovery.

Leeor Neta
Newman Du Wors
150 California Street, Suite 2100
San Francisco, California 94111
leeor@newmanlaw.com
www.newmanlaw.com
Email privileged and confidential - please destroy if you are not the intended recipient

---

**From:** Dan Balsam [legal@danbalsam.com]
**Sent:** Wednesday, August 28, 2013 1:53 PM
**To:** Leeor Neta
**Cc:** John Du Wors; Timothy Walton
**Subject:** Re: Wagner v. Spire Vision

1. First you don't want references to 49, now you do?  I think I'll just say "49 as of now."  You'll know how many to respond to after we provide the emails.  (See #4.)  That said, if your clients send more spam to Wagner, then he's entitled to amend.  There's a real easy way to prevent that, and it's entirely within YOUR client's power to do so.  These aren't MY terms, and I don't really care all that much if you agree to them or not.  I'm prepared to send the proposed order to the court, as I think the court intended it to be based on the hearing, and I'll note your objections.

2. On Demand Research has responded to a LITTLE bit of set 2 discovery.  It joined the motion for protective order as to set 1 with all the other Ds.  Wagner has not propounded any vexatious and harassing discovery in this Action.  The discovery is what it is because you insisted on separate discovery to each of your clients and refused various stipulations that could have reduced it.

3. I was planning on producing electronically as opposed to paper.  But electronic v. paper does not address the question I asked you re: format.  Apples & oranges.  I can produce native format electronically if you want, but I don't think it's going to help you because graphics and links are almost assuredly all dead at this point.  What CONTENT, electronically, do you want?

4. Well then you'd better hurry up and send Wagner RFPDs so you can timely comply with the court's forthcoming order.  I think it would probably take you about 3 minutes to write "RFPD 1: Produce documents evidencing all alleged unsolicited commercial emails that Wagner received that are currently at issue in this Action.  Documents should be produced electronically, in XXXXX format."  Actually, less than 15 minutes, because I just wrote it for you.  I already told you I'll respond a lot faster than 30 days.

=======================================================
Dan Balsam
Sue a Spammer! www.DanHatesSpam.com

---

**From:** Leeor Neta <Leeor@newmanlaw.com>
**To:** Dan Balsam <legal@danbalsam.com>
**Cc:** John Du Wors <John@newmanlaw.com>; Timothy Walton <timothy.walton.47@gmail.com>
**Sent:** Wednesday, August 28, 2013 1:33 PM
**Subject:** RE: Wagner v. Spire Vision

Dan,

I respond to each of your points in order:

1. Your suggestion is not in keeping with Judge Shaffer's order. During the hearing last week, Judge Shaffer agreed that 8 Defendants should answer one set of form interrogatories (with the exception of 17.1) for every email at issue. In your proposed order, you calculate that this would result in 8,624 interrogatory responses. Defendants are certainly willing to comply with these terms. But by removing any reference to the number "49", the 8 Defendants have no way of determining how many interrogatory responses to lodge, let alone any way of fashioning a response regarding emails that are not even at issue. And Defendants have a legitimate reason to be concerned that if you amend the complaint to add additional email messages (as you are already attempting to do in another matter), that there will be no foreseeable end to these proceedings. There needs to be a reasonable limitation to this action. The Court deserves as much. My clients cannot agree to your proposed terms.

2. As described above, my clients are certainly willing to respond to discovery. On Demand Research has already responded to a host of discovery in this matter. And my clients will continue to respond to discovery that is not vexatious and harassing.

3. The emails should be made available in an electronically searchable form in order to facilitate a method of searching across all files. Thousands of printouts serve little use.

4. It is your client's responsibility to disclose the emails at issue. Because the Court declined to consider the merits of Defendants' demurrer, there was no opportunity to discuss how Wagner failed to allege sufficient facts to support his claims by failing to attach the emails to the complaint. If you would rather force my clients through the exercise of demanding the emails at issue, we are certainly willing to do that. But you only delay responses to your discovery since the Court has already ruled that 8 Defendants should answer 22 form interrogatories for every email at issue, and Defendants cannot do that until they know what emails are at issue.

Leeor Neta
Newman Du Wors
150 California Street, Suite 2100
San Francisco, California 94111
leeor@newmanlaw.com
www.newmanlaw.com
Email privileged and confidential - please destroy if you are not the intended recipient

---

**From:** Dan Balsam [legal@danbalsam.com]
**Sent:** Tuesday, August 27, 2013 4:47 PM
**To:** Leeor Neta
**Cc:** John Du Wors; Timothy Walton
**Subject:** Re: Wagner v. Spire Vision

1. Good point, we should take out the reference to "49."  Should Wagner receive more Spire Vision spams, you can bet he'll move to amend the complaint.

2. Spire Vision is "certainly willing to respond to discovery"?  When did THAT happen?

3. What do you think "native format" means?  Different people seem to have different interpretations of the term.  I believe that "native format" means ascii text, but that's not going to include clickthrough/redirect links, and the graphics and links are almost certainly dead by now. So, what EXACTLY do you want?

4. You should propound RFPDs for the spams, and Wagner will respond with verifications in far less than 30 days.  I'm disinclined to produce the spams "informally" now because you'll probably make me produce again later on so you can have verifications. So let's just do this once.


================================================
Dan Balsam
Sue a Spammer! www.DanHatesSpam.com

---

**From:** Leeor Neta <Leeor@newmanlaw.com>
**To:** Dan Balsam <legal@danbalsam.com>
**Cc:** John Du Wors <John@newmanlaw.com>
**Sent:** Tuesday, August 27, 2013 4:23 PM
**Subject:** Wagner v. Spire Vision

Dan:

I am in receipt of your letter, dated August 22, 2013.

My concern relates to the term, "the 49 commercial email advertisements at issue in this Action." This statement, which was not part of the tentative, suggests that this suit will be limited to the 49 emails currently at issue. So I write to confirm that you will not later move to amend your complaint to add additional email messages.

Also, while my client is certainly willing to respond to discovery, we require copies of the 49 email messages at issue in order to proceed. Please confirm that you will send copies of these messages in native format as soon as possible.

Thank you,
Leeor Neta
Of Counsel
Newman Du Wors
1201 Third Ave, Ste 1600
Seattle, Washington 98101
leeor@newmanlaw.com
www.newmanlaw.com

Email privileged and confidential - please destroy if you are not the intended recipient

| | |
|---|---|
| **From:** | Dan Balsam |
| **To:** | Leeor Neta |
| **Cc:** | John Du Wors; "Timothy Walton" |
| **Subject:** | Wagner Proposed Order |
| **Date:** | Friday, August 30, 2013 4:14:11 PM |
| **Importance:** | High |

So are we agreed that the sentence in dispute can say:

Nevertheless, this Court accepts Defendants' offer that each of those eight defendants (Achieve Opportunities, AgreeWizard, FurturesDrive, JunctionLights, Opportunity Central, Paths Direct, PullSmart, YourAdsHere) will respond to a set of form interrogatories (except for 17.1) for each of the 49 commercial email advertisements at issue in this Action as of now, for a total of 8 x 22 x 49 = 8,624 interrogatories.

| | |
|---|---|
| **From:** | Leeor Neta |
| **To:** | Dan Balsam |
| **Cc:** | John Du Wors; Timothy Walton |
| **Subject:** | Re: Wagner Proposed Order |
| **Date:** | Friday, August 30, 2013 6:00:58 PM |

No. You should:

1. Stipulate not to amend your complaint to add additional emails;

2. Help my clients make sure that Wagner receives no further email; *and*

3. Include language in the proposed order providing that discovery responses are contingent upon your production of the 49 emails.

Sent from my iPhone

On Aug 30, 2013, at 4:14 PM, "Dan Balsam" <legal@danbalsam.com> wrote:

> So are we agreed that the sentence in dispute can say:
>
> Nevertheless, this Court accepts Defendants' offer that each of those eight defendants (Achieve Opportunities, AgreeWizard, FurturesDrive, JunctionLights, Opportunity Central, Paths Direct, PullSmart, YourAdsHere) will respond to a set of form interrogatories (except for 17.1) for each of the 49 commercial email advertisements at issue in this Action as of now, for a total of 8 x 22 x 49 = 8,624 interrogatories.

| | |
|---|---|
| **From:** | Dan Balsam |
| **To:** | Leeor Neta |
| **Cc:** | John Du Wors; "Timothy Walton" |
| **Subject:** | RE: Wagner Proposed Order |
| **Date:** | Friday, August 30, 2013 6:42:10 PM |

1. Get a grip, Leeor.  If you actually think that I'm going to let you squeeze a limit on Wagner's right to amend his complaint into the order on your motion for a protective order, you're nuts.

2. That's your clients' problem, not Wagner's.

3. That also was not part of the tentative order.  If you want Wagner to produce the emails then, as I've told you repeatedly, propound a single RFPD, that I've already written for you.  And, I'll point out, you STILL haven't addressed your lack of understanding as to what format you really want & need.

---

**From:** Leeor Neta [mailto:Leeor@newmanlaw.com]
**Sent:** Friday, August 30, 2013 6:01 PM
**To:** Dan Balsam
**Cc:** John Du Wors; Timothy Walton
**Subject:** Re: Wagner Proposed Order

No. You should:

1. Stipulate not to amend your complaint to add additional emails;

2. Help my clients make sure that Wagner receives no further email; *and*

3. Include language in the proposed order providing that discovery responses are contingent upon your production of the 49 emails.

Sent from my iPhone

On Aug 30, 2013, at 4:14 PM, "Dan Balsam" <legal@danbalsam.com> wrote:

So are we agreed that the sentence in dispute can say:

Nevertheless, this Court accepts Defendants' offer that each of those eight defendants (Achieve Opportunities, AgreeWizard, FurturesDrive, JunctionLights, Opportunity Central, Paths Direct, PullSmart, YourAdsHere) will respond to a set of form interrogatories (except for 17.1) for each of the 49 commercial email advertisements at issue in this Action as of now, for a total of 8 x 22 x 49 = 8,624 interrogatories.

**Exhibit 2**

1   Timothy J. Walton (State Bar No. 184292)
    Jim C. Twu (State Bar No. 175032)
2   WALTON TWU LLP
    9515 Soquel Drive Suite #207
3   Aptos, CA 95003
    Phone: (831) 685-9800
4   Fax: (650) 618-8687

5   Daniel L. Balsam (State Bar No. 260423)
    THE LAW OFFICES OF DANIEL BALSAM
6   2912 Diamond Street #218
    San Francisco, CA 94131
7   Tel. & Fax: (415) 869-2873

8   Attorneys for Plaintiff
    CHRISTOPHER WAGNER

9

10              UNITED STATES DISTRICT COURT

11      NORTHERN DISTRICT OF CALIFORNIA (OAKLAND DIVISION)

12  CHRISTOPHER WAGNER,              ) Case No.      4:13-cv-00054 (YGR)
                                     )
13          Plaintiff,               ) **PLAINTIFF'S REPLY TO**
                                     ) **DEFENDANTS' OPPOSITION TO**
14      vs.                          ) **PLAINTIFF'S MOTION TO REMAND**
                                     ) **TO CALIFORNIA SUPERIOR COURT,**
15  SPIRE VISION LLC *et al*,        ) **AND REQUEST FOR COSTS [28 U.S.C.**
                                     ) **§ 1447(c)]**
16          Defendants.             )
                                     ) Date:         Mar. 5, 2013
17                                   ) Time:         2:00 p.m.
                                     ) Courtroom:    5, 2nd Floor
18  _____ ) Judge:        Hon. Yvonne Gonzales Rogers

19

20

21

22

23

24

                                     i

# <u>TABLE OF CONTENTS</u>

**Page**

Table of Contents ............................................................................................................ ii

Table of Authorities ....................................................................................................... iii

I.  INTRODUCTION ...............................................................................................1

II.  STATEMENT OF FACTS ...................................................................................1

III.  DISCUSSION .......................................................................................................3

    A.  Spire Vision Is Wrong About Numerous Facts ...........................................3

    B.  Spire Vision Did Not Obtain Consent From All Defendants Prior to Removal, and *Still* Has Not Obtained Their Consent to Removal ...............4

    C.  There are Proper California Defendants, and Spire Vision Admits There is No Geographic Diversity .............................................................................6
        1.  *Spire Vision Itself is Located in California* ..........................................6
        2.  *Advertising Networks Accelerize New Media Inc. and Adconion Inc. are Proper California Defendants* .....................................................6
        3.  *LifeScript Inc. is Not Fraudulently Joined* .......................................10

    D.  Spire Vision Has *Not* Established That Wagner's Claims Exceed $75,000 ...............11
        1.  *Attorneys' Fees are Calculated at the Time of Removal* .....................11
        2.  *Spire Vision Knew that Wagner Dismissed Two Defendants Before Removal, Reducing Wagner's Claims from $64,000 to $50,500* ...........14

    E.  This Court Should Award Wagner His Attorneys' Fees Incurred Due to Spire Vision's Baseless Removal ...............................................................15

IV.  CONCLUSION ..................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page**

3
**Federal Cases**

*Abrego v. Dow Chemical Company*,
4
    443 F.3d 676 (9th Cir. 2006) ..........................................................13

*Archuleta v. American Airlines, Inc.*,
5
    2000 U.S. Dist. LEXIS 21076 (C.D. Cal. May 8, 2000) ....................................9

*Asis Internet Services v. Member Source Media LLC*,
6
    No. C-08-1321 EMC, 2010 U.S. Dist. LEXIS 47865 (N.D. Cal. Apr. 20,
    2010) ....................................................................................3

*Asis Internet Services v. SubscriberBase Inc.*,
7
    No. 09-3503 SC, 2009 U.S. Dist. LEXIS 112852 (N. D. Cal. Dec. 4, 2009)
8
    (order granting defendants' motion to dismiss)..................................................3

*Asis Internet Services v. SubscriberBase Inc.*,
9
    No. 09-3503 SC, 2010 U.S. Dist. LEXIS 33645 (N.D. Cal. Apr. 1, 2010) ......................2

*Awasthi v. Infosys Technologies Ltd.*,
10
    2010 U.S. Dist. LEXIS 57824 (N.D. Cal. May 21, 2010) ................................11

*Birkhead v. Parker*,
11
    2012 U.S. Dist. LEXIS 148854 (N.D. Cal. Oct. 15, 2012)..................................9

*Celestino v. Renal Advantage Inc.*,
12
    2007 U.S. Dist. LEXIS 33827 (N.D. Cal. Apr. 24, 2007) (order denying
    plaintiff's motion to remand) ..............................................................12

*Davison Design & Development Inc. v. Riley*,
13
    No. 4:11-cv-02970 (PJH) (N.D. Cal.)..........................................................2, 3

*Faulkner v. Astro-Med Inc.*,
14
    1999 U.S. Dist. LEXIS 15801 (N.D. Cal. Oct. 1, 1999)....................................11

*Galt G/S v. JSS Scandinavia*,
15
    142 F. 3d 1150 (9th Cir. 1998) ..............................................................12

*Gordon v. Virtumundo Inc.*,
16
    575 F.3d 1040 (9th Cir. 2009) .............................................................2, 4

*Green v. Party City Corp.*,
17
    2002 U.S. Dist. LEXIS 7750 (C.D. Cal. Apr. 9, 2002) ....................................13

*Hoang v. Reunion.com Inc.*,
18
    No. C-08-3518 MMC, 2010 U.S. Dist. LEXIS 34466 (N.D. Cal. Mar. 31,
19
    2010) (order . . . denying defendants' motion to dismiss first amended
    complaint) ....................................................................................4

*Hunter v. Philip Morris USA*,
20
    582 F.3d 1039 (9th Cir. 2009) ..............................................................8

*Kantor v. Wellesley Galleries Ltd.*,
21
    704 F.2d 1088 (9th Cir. 1983) .............................................................15

*Kroske v. US Bank Corporation*,
22
    432 F.3d 976 (9th Cir. 2005) ..............................................................13

*Libhart v. Santa Monica Dairy Co.*,
23
    592 F.2d 1062 (9th Cir. 1979) .............................................................15

24

# TABLE OF AUTHORITIES

Page

**Federal Cases (Cont.)**
*MIC Philberts Investments v. American Casualty Company of Reading*,
    2012 U.S. Dist. LEXIS 80651 (E.D. Cal. June 8, 2012)....................13
*Ritchey v. Upjohn Drug Co.*,
    139 F.3d 1313 9th Cir. 1998)...........................................................9
*Simmons v. PCR Technology*,
    209 F. Supp. 2d 1029 (N.D. Cal. 2002) .....................................12, 13
*Singer v. State Farm Mutual Auto Insurance Co.*,
    116 F.3d 373 (9th Cir. 1997) ..........................................................13
*United Steel v. Shell Oil Company*,
    549 F.3d 1204 (9th Cir. 2008) ..........................................................4
*Valdez v. Allstate Insurance. Company*,
    372 F.3d 1115 (9th Cir. 2004) ...................................................11, 12

**California Cases**
*Balsam v. Trancos Inc. et al,*
    203 Cal. App. 4th 1083 (1st Dist. 2012), *petition for review denied*, 2012
    Cal. LEXIS 4979 (Cal. May 23, 2012), *petition for certiori denied*, 2012
    U.S. LEXIS 8423 (U.S. Oct. 29, 2012), *petition for rehearing denied*,
    2013 U.S. LEXIS 243 (U.S. Jan. 7, 2013) ..................................6, 7
*Hypertouch v. ValueClick Inc.*,
    192 Cal. App. 4th 805 2d Dist. 2011) ..............................................6
*Infinite Monkeys & Co., LLC v. Global Resource Systems Corp.*,
    No. 1-05-CV039918 (Super. Ct. Cal. Cty. of Santa Clara Sep. 14, 2005)
    (order re: demurrer, motion to strike, and motion for preliminary
    injunction)..............................................................................8, 10

**Federal Statutes**
28 U.S.C. § 1446........................................................................................4
28 U.S.C. § 1332...................................................................................6, 11
28 U.S.C. § 1447......................................................................................15
CAN-SPAM Act, 15 U.S.C. § 7701 *et seq.*.............................................2, 4

**California Statutes**
Cal. Bus. & Prof. Code § 17529.5 ..................................................... *passim*
Cal. Bus. & Prof. Code § 17538.5 ...............................................................14

iv

# I.  INTRODUCTION

Spire Vision LLC removed this Action from the Superior Court of California, County of Sonoma, claiming diversity.  Plaintiff Christopher Wagner ("Wagner") filed a [Renewed] Motion to Remand (Docket #14) because there are California Parties on both sides, Spire Vision did not allege that the amount in controversy exceeded $75,000 at the time of removal, and Spire Vision failed to obtain consent to remove from all of the Defendants who had been served.

In between unwarranted and inaccurate personal attacks at Daniel Balsam ("Balsam"), one of Wagner's attorneys, Spire Vision's Opposition (Docket #43) spins a tangled web of falsities to attempt to justify federal jurisdiction.  The Opposition is supported by no less than five declarations, but nothing in the Opposition changes the underlying facts.  This Court should see through Spire Vision's malarkey, remand this Action to state court, and award Wagner his attorneys' fees.

# II.  STATEMENT OF FACTS

Wagner incorporates by reference the Statement of Facts from his Motion to Remand at 3:20-4:9 and adds the following facts:

Wagner first approached Balsam to ask for representation in suing unlawful spammers, not the other way around.  Difficult as it may be for Spire Vision to conceive, Wagner is an independent individual, and not a proxy for Balsam, *see* Opposition at 1:3 and 2:2-8, and Wagner developed his dislike for unlawful spam entirely without Balsam's aid.  Declaration of Christopher Wagner ("Wagner Decl.") at ¶ 2.

Notwithstanding Spire Vision's Opposition at 2:6-8, Balsam has never "bilked" spammers out of any money, whether acting on his own behalf or while representing clients.  Balsam and his clients (including Wagner) have done nothing more than exercise the rights granted to them by the California Legislature via California Business & Professions Code

**1**

1  § 17529.5 ("Section 17529.5") to make claims against unlawful spammers.  Declaration of

2  Daniel Balsam ("Balsam Decl.") at ¶ 2, Wagner Decl. at ¶ 2.

3        On September 13, 2012, Judge Hamilton *initially* dismissed Riley's counter-claims under

4  Section 17529.5 in the matter of *Davison Design & Development Inc. v. Riley*, No. 4:13-cv-

5  02970 (PJH), currently pending in the Northern District of California, but she did not apply

6  Ninth Circuit precedent.[1]  The Declaration of John Du Wors at ¶ 6 (Docket #47) and the

7  Opposition at 3:9-12 attempt to mislead this Court by omitting the fact that on January 16, 2013,

8  Judge Hamilton denied Spire Vision's Motion for Summary Judgment *and* partially reversed her

9  previous order when she orally stated that Riley's claims were *not* entirely preempted, and that

10  she would allow Riley to reinstate some of her claims that were previously dismissed.  Judge

11  Hamilton has not yet issued a written order.  Balsam Decl. at ¶ 3.

12        On January 10, 2013, Balsam sent an email to Spire Vision's attorney Leeor Neta stating

13  that this federal Court does not have jurisdiction in this matter and demanding that Spire Vision

14  *immediately* stipulate to remand to state court; otherwise Wagner would move to remand and

15  seek attorneys' fees and costs.  *See* Declaration of Leeor Neta, Exhibit H (Docket #46-8).  Neta

16  asked for a week to obtain the other Defendants' assent, which is rather suspect in light of the

17  fact that Spire Vision LLC did not obtain the other Defendants' consent to remove the Action in

18  the first place, *infra*.  Neta did not immediately stipulate to remand, so Wagner filed his Motion

19  to Remand shortly thereafter as he warned he would do.  Balsam Decl. at ¶ 4.

20  _____

21  [1] Based on markedly different facts, the Ninth Circuit case to which Spire Vision refers, *Gordon

22  v. Virtumundo*, 575 F.3d 1040 (9th Cir. 2009), ruled that the federal CAN-SPAM Act preempted
    Washington's anti-spam law not based on the question of whether the exception to preemption is

23  based on fraud or falsity, but rather because Washington's anti-spam law was overbroad,
    prohibiting even truthful spam.  In contrast, Section 17529.5 is limited to false and misleading

24  spam.  *See Asis Internet Services v. SubscriberBase Inc.*, No. 09-3503 SC, 2010 U.S. Dist.
    LEXIS 33645 at *31-32 (N.D. Cal. Apr. 1, 2010).

**2**

1

### III. <u>DISCUSSION</u>

2

**A.  <u>Spire Vision Is Wrong About Numerous Facts</u>**

3
4
5
6

Spire Vision begins its Opposition by attacking one of Wagner's attorneys.  Spire Vision proceeds to refer to Balsam throughout, even though Balsam is neither a Party to this Action nor the only attorney representing Wagner.  Wagner is not a proxy for anybody.  Wagner wanted to sue Spire Vision for its unlawful spamming and he chose his attorneys carefully.

7
8
9
10
11
12
13

Spire Vision's counsel have accused another member of the California State Bar of "bilking" money from the email marketing industry and wasting court resources.  Opposition at 2:6-8 and  Du Wors Decl. at ¶ 2 (Docket #47).  They provide no factual support, much less evidence, but simply attempt to smear Balsam's name.  Similarly, they misrepresent the nature of the *Davison* action.  Neither the plaintiffs nor the claims are similar, much less identical, and the judge in that case has indicated on the record that she is reversing her decision about claims against Spire Vision, as well as denying Spire Vision's motion for summary judgment.

14
15

Spire Vision is also mistaken in asserting that all torts require reliance and damages.  But the issue now before this Court is whether to remand.

16
17
18
19
20
21

As much as Spire Vision would love to tell this Court what it "must do," Judge Hamilton's unpublished ruling in the *Davison* action is *not* preclusive on *this* Court.  *See* Opposition at 1:8, 8:22, and 12:13-14.  This Court is *not* bound by the ruling of another District Court judge.  In fact, if Spire Vision were correct that one District Court's ruling is binding on another, then Judge Hamilton and this Court would both be bound by the earlier rulings of at least three District Courts from the Northern District of California,[2] all *after* the Ninth Circuit's

22

23
24

[2] *Asis Internet Services v. Member Source Media LLC*, No. C-08-1321 EMC, 2010 U.S. Dist. LEXIS 47865 (N.D. Cal. Apr. 20, 2010); *Asis v. SubscriberBase,* No. 09-3503 SC, 2009 U.S. Dist. LEXIS 112852 (N. D. Cal. Dec. 4, 2009) (order granting defendants' motion to dismiss);

**3**

1    ruling in *Gordon*, that ruled that spam recipients' claims under Section 17529.5 are *not*

2    preempted by the federal CAN-SPAM Act.

3         Spire Vision did not obtain consent to removal from all Defendants who had been served

4    at the time.  Indeed, Spire Vision *still* has not obtained everyone's consent.  Spire Vision

5    attempts to explain away its failure to obtain EverydayFamily Inc., Insite Marketing Group LLC,

6    and Zulu Marketing LLC's consent by suggesting that those Defendants do not even exist.

7    Opposition at 9:7.  However, all three have been served, and Wagner's attorneys have had

8    conversations with representatives of EverydayFamily and Zulu Marketing.   Balsam Decl. at

9    ¶¶ 5-6 and Ex. A, Walton Decl. at ¶ 2.

10        Spire Vision claims that Wagner seeks to avoid the *purportedly* preclusive ruling of

11   another District Court Judge, when in fact it is trying to avoid the *actually* preclusive rulings of

12   two California State Courts of Appeal.

13   **B.   Spire Vision Did Not Obtain Consent From All Defendants Prior to Removal, and *Still*
         Has Not Obtained Their Consent to Removal**

14

15        All defendants who have been joined and served in a state court action must join or

16   consent to remove the action to federal court.  28 U.S.C. § 1446(b)(2)(A).

17        The "failure" of all Defendants in this Action to consent to removal is *not* a "mere

18   procedural defect."  Opposition at 8:27.  Spire Vision's claim that "*nearly* every identifiable co-

19   defendant that has not settled with Wagner has now joined in the removal," Opposition at 9:21-

20   22 (emphasis added) is insufficient, as it does not comply with the "Rule of Unanimity," which

21   "has traditionally required that *all* defendants consent to, or join in, removal."  *United Steel v.*

22   *Shell Oil Company*, 549 F.3d 1204, 1208 (9th Cir. 2008) (emphasis added).

23   _____

24   *Hoang v. Reunion.com Inc.*, No. C-08-3518 MMC, 2010 U.S. Dist. LEXIS 34466 (N.D. Cal.
     Mar. 31, 2010) (order . . . denying defendants' motion to dismiss first amended complaint).

**4**

As noted in Wagner's Motion to Remand, Wagner served all Defendants before Spire Vision LLC removed this Action to federal court. LeadRival did not consent to removal before Wagner dismissed it. Declaration of Daniel Balsam in Support of Motion to Remand at ¶ 7 and Ex. F. (Docket #14-1). EverydayFamily Inc., Insite Marketing Group LLC, and Zulu Marketing LLC did not consent prior to removal, and *still* have not consented as of February 15, as Wagner files this Reply. Spire Vision makes the argument that "Wagner offers no evidence that these entities still exist," Opposition at 9:7, but all three have been served, and Wagner's attorneys have had conversations with representatives of EverydayFamily Inc. and Zulu Marketing LLC. Balsam Decl. at ¶¶ 5-6 and Ex. A, Walton Decl. at ¶ 2.

Furthermore, Spire Vision's attempt to gloss over the fact that EverydayFamily, Insite Marketing Group, and Zulu Marketing did not consent to removal by claiming that they were not advertiser clients during the operative time period, Opposition at 9:7-9 and Declaration of Daniel Berger at ¶¶ 13-15 (Docket #44), does not comport with the facts:

- Wagner received six spams advertising EverydayFamily from May 4-12, 2012. Three spams were sent from the domain names *themagnify.net*, *theinitial.net*, and *thetraction.net*, which are registered to YourAdsHere, and Spire Vision admits it owns the domain name. Verified Complaint at ¶¶ 67-69, Balsam Decl. at ¶ 7 and Ex. B, and Opposition at 4:17. Three spams were sent from the domain names *eprimary.net*, *myimpactful.net*, and *thededicatedblog.com*, which are registered to FuturesDrive [sic], which Spire Vision admits is one of its "brands." Verified Complaint at ¶¶ 67-69, Balsam Decl. at ¶ 8 and Ex. C, and Opposition at 4:3.

- Wagner received one spam advertising Insite Marketing Group on April 20, 2012, sent from the domain name *mycircumstances.com*, which is registered to AgreeWizard, which Spire Vision admits is one of its "brands." Verified Complaint at ¶¶ 61-63, Balsam Decl. at ¶ 9 and Ex. D, and Opposition at 3:27.

- Wagner received three spams advertising Zulu Marketing on May 5-7, 2012. Two were sent from the domain names *eprglobal.com* and *engagementtarget.com*, which are registered to PullSmart, which Spire Vision admits is one of its "brands." Verified Complaint at ¶¶ 79-81, Balsam Decl. at ¶ 10 and Ex. E, and Opposition at 4:11. One was sent from the domain name *eproductiveblog.com*, which is registered to AgreeWizard, which Spire Vision admits is one of its

"brands." Verified Complaint at ¶¶ 79-81, Balsam Decl. at ¶ 11 and Ex. F, and Opposition at 3:27.

## C. There are Proper California Defendants, and Spire Vision Admits There is No Geographic Diversity

### 1. Spire Vision Itself is Located in California

Spire Vision's boldfaced section heading states that "*Nearly* Every Single Defendant is Diverse." Opposition at 3:23 (emphasis added). Thus, Spire Vision admits that there is not *complete* diversity, as is required for federal jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

Wagner sued 18 Spire Vision Defendants in this Action, including "JunctionLights" and "YourAdsHere," business entities of unknown organization, which claim business addresses in Rosemead, California. Verified Complaint at ¶¶ 27, 31 and Balsam Decl. at ¶ 12 and Ex. G.

Spire Vision admits that eight of the Spire Vision Defendants, including JunctionLights and YourAdsHere – are "brands" or "mere domain names" owned by Spire Vision… not "true entities." Opposition at 3:26-4:27. Therefore, by Spire Vision's own admission, since JunctionLights and YourAdsHere are *not* legal companies but rather brands or domain names, then logically Spire Vision *itself* is located in California, defeating geographic diversity.

### 2. Advertising Networks Accelerize New Media Inc. and Adconion Inc. are Proper California Defendants

*Hypertouch v. ValueClick Inc. et al* expressly held that advertisers are strictly liable for unlawful spamming by their agents. 192 Cal. App. 4th 805, 820-21, 829 (2d Dist. 2011). *Balsam v. Trancos Inc. et al* also held that advertisers' contracted agents are liable for unlawful spams when it affirmed the trial court's judgment against Trancos; plaintiff had dismissed the advertisers prior to trial. 203 Cal. App. 4th 1083, 1088 (1st Dist. 2012), *petition for review denied*, 2012 Cal. LEXIS 4979 (Cal. May 23, 2012), *petition for certiori denied*, 2012 U.S.

**6**

1    LEXIS 8423 (U.S. Oct. 29, 2012), *petition for rehearing denied*, 2013 U.S. LEXIS 243 (U.S.

2    Jan. 7, 2013).

3         Wagner did describe Accelerize New Media Inc. ("Accelerize") and Adconion Inc.

4    ("Adconion") as "middlemen" in the Verified Complaint at ¶¶ 34-35, *see* Opposition at 5:10-13,

5    by which Wagner meant that: a) Spire Vision (Juniper Marketing LLC) hired Accelerize, and

6    Accelerize hired Adconion, and Adconion outsourced to others to actually hit the send button, or

7    b) Spire Vision (On Demand Research LLC) hired Accelerize to send the spams, and Accelerize

8    outsourced to Spire Vision (AgreeWizard, Opportunity Central, Paths Direct, and YourAdsHere)

9    to actually hit the send button.  Wagner did *not* concede that neither Accelerize nor Adconion

10   sent or advertised in the emails he received.  *Id.*  Verified Complaint at ¶¶ 34-35.  Wagner

11   implicitly alleged agent-principal liability, and expressly alleged joint and several liability.  *Id.*

12        By claiming that Accelerize and Adconion are "sham" defendants, Opposition at 1:9,

13   Spire Vision is in effect arguing that even though both the advertiser (at the top of the ladder)

14   and the spammer (at the bottom of the ladder) are undisputedly liable for unlawful spamming,

15   the networks whom Spire Vision hired and who in turn hired the spammers are somehow *not*

16   liable.  Such an argument has little merit, particularly because agent-principal liability is a

17   "vertical" concept, and it is difficult to conceive how liability can flow "up the ladder" with a

18   *non*-liable party in between the bottom and top rungs, breaking the flow of liability.

19        Even if Accelerize could avoid liability for the unlawful spams on a vertical agent-

20   principal theory (Wagner has dismissed Adconion), Wagner could amend the Verified Complaint

21   to allege that Accelerize is liable on the basis of civil conspiracy.  Indeed, for the nine of the

22   spams, Spire Vision hit the send button, and a recipient who clicked the links in these spams

23   would be redirected through Accelerize dba *cktrk.net* and land at On Demand Research LLC's

24

**7**

website.  Verified Complaint at ¶¶ 86-94.  Accelerize knew with whom it was contracting, and

the spam links would not have functioned without Accelerize's participation.

Wagner is not aware of any California Court of Appeal cases specifically addressing the

liability of entities such as Accelerize and Aconion under substantive California law, but Wagner

submits as persuasive authority a trial court order in the matter of *Infinite Monkeys & Co., LLC v.*

*Global Resource Systems Corp.*, which stated that *all parties* involved in spamming are liable.

> The Court finds that the Legislature intended the phrase "advertise in a commercial e-mail advertisement" contained in Business and Professions Code § 17529.5(a) to be construed broadly and to include all entities involved in the creation and dissemination of an e-mail advertisement.  Thus the entity that sponsored a commercial email-advertisement, the parties that prepared and organized the dissemination of the advertisement, and the parties that effected delivery of the e-mail to recipients are all proper defendants in a Business & Professions Code § 17529.5(a) cause of action.  Any other construction of the statute would . . . fail to achieve the Legislative purpose stated in Business & Professions Code § 17529.

No. 1-05-CV039918 at *1-2 (Super. Ct. Cal. Cty. of Santa Clara Sep. 14, 2005) (order re:

demurrer, motion to strike, and motion for preliminary injunction).  *See* Balsam Decl. at ¶ 13 and

Ex. H.  Wagner's Motion to Remand is not the proper vehicle to fully argue Accelerize and

Adconion's liability on the merits, but Wagner points to *Infinite Monkeys* to show that it is

*possible* that a trial court could find them liable.  This possibility is sufficient to require remand,

so there is no fraudulent joinder, as discussed below.

In *Hunter v. Philip Morris USA*, the Ninth Circuit cited a Fifth Circuit case with

approval, holding that

> "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." . . . . "[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary."

582 F.3d 1039, 1044 (9th Cir. 2009) (citations omitted).  Similarly:

**8**

> The removing defendant's burden of demonstrating that the non-diverse defendant's joinder is a "sham" is a heavy one. In determining whether a non-diverse defendant's joinder is fraudulent, the court must resolve all disputed questions of fact, and all ambiguities in the controlling state law, in favor of the non-removing party. All doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand, and a lack of clear precedent does not render the joinder fraudulent.
>
> Applying these standards, if there is even a possibility that plaintiff may prevail, remand is warranted. "The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court . . .,". The court's job is not to determine whether the plaintiff will actually or even probably prevail on merits of his claim, but rather to evaluate whether there is any possibility plaintiff may do so. For this reason, merely showing that an action is likely to be dismissed as against the purported "sham" defendant does not demonstrate fraudulent joinder. . . .

*Archuleta v. American Airlines, Inc.*, 2000 U.S. Dist. LEXIS 21076 at *16-17 (C.D. Cal. May 8, 2000) (citations omitted). And, just four months ago in the Northern District:

> The defendant seeking removal based on fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant, but must show that there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant.
>
> . . . Given Defendants' heavy burden of persuasion and the presumption against finding fraudulent joinder, Defendants have not demonstrated that Parker is a fraudulently joined defendant. Plaintiff's motion to remand is therefore granted.

*Birkhead v. Parker*, 2012 U.S. Dist. LEXIS 148854 at *9-10 (N.D. Cal. Oct. 15, 2012).

Accelerize attempts to separate itself altogether from the spams at issue in this Action, but the Declaration by Damon Stein, general counsel for a division of Accelerize (Docket #45), does not achieve that goal. First, Stein claims that it sold its online marketing division in September 2012, but even if true, it is irrelevant, because Wagner received the spams involving Accelerize from May-July 2012. Verified Complaint at ¶¶ 86-94 and 105-111.

Second, Wagner disputes Stein's claim that Accelerize has no relation to the facts alleged in this lawsuit. After a recipient clicks the links in some of the spams at issue, s/he is redirected

**9**

through *cktrk.net* en route to landing pages belonging to Juniper Marketing LLC or On Demand Research LLC (Spire Vision companies).  Verified Complaint at ¶¶ 86-94 and 105-107; Balsam Decl. at ¶ 14 and Ex. I.  *Cktrk.net* was proxy-registered to hide the identity of the operator of the domain name, but Domains By Proxy Inc. (which, incidentally, prohibits all use of its services for spamming) identified Accelerize as the registrant of the domain name.  Balsam Decl. at ¶ 15 and Ex. J-K.  By its own admission, Accelerize makes it "so easy for our customers to target their campaigns based on location, mobile device and traffic source" and its "suppression list management integrates with third party solutions."  Balsam Decl. at ¶ 16 and Ex. L.  Therefore, Accelerize admits to sending, assisting with sending, or conspiring to send commercial emails, because campaign targeting and list suppression are both part of the sending process.

*Infinite Monkeys* suggests that a trial court may find Accelerize (and Adconion, if Wagner hadn't already dismissed it) liable for its role in the unlawful spamming at issue in this Action, so Wagner maintains that Accelerize is a proper Defendant.  If there is *any* possibility that Wagner can establish liability against Accelerize under Cal. Business & Professions Code § 17529.5, this Court should remand.  *See also Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998).

### 3.  *LifeScript Inc. is Not Fraudulently Joined*

Spire Vision claims that it does not own the domain name *targetedspecials.com*, and that *targetedspecials.com* is not associated with Spire Vision's Commission Wizard affiliate network, Opposition at 12:8-27, and therefore the LifeScript spams have nothing to do with Spire Vision.

However, a visit to the *www.targetedspecials.com* website shows that it is, in fact, Spire Vision's Commission Wizard affiliate network.  In fact, the *www.targetedspecials.com* website displays Spire Vision's logos, trademarks, and copyright notice.  Balsam Decl. at ¶ 17 and Ex. M.  Moreover, the *www.commissionwizard.com*, *www.targetedspecials.com*, and *www.ondemand*

**10**

1    *affiliates.com* websites (the latter presumably related to On Demand Research LLC, a Spire

2    Vision company) are all on hosted on the same server located at IP address 67.215.174.103.

3    Balsam Decl. at ¶ 18 and Ex. N.

4    **D.  Spire Vision Has *Not* Established That Wagner's Claims Exceed $75,000**

5        *1.  Attorneys' Fees are Calculated at the Time of Removal*

6            For a federal court to have jurisdiction, in addition to complete geographic diversity, the

7    amount in controversy must also exceed $75,000.  28 U.S.C. § 1332(a).  Wagner and Spire

8    Vision agree that attorneys' fees are included in the calculation, *but* Spire Vision argues that

9            There is no support for [Wagner's] position [] that the amount in controversy
             includes only those damages and attorneys' fees already incurred at the time of
10           filing.

11   Opposition at 13:22-23.  Spire Vision is wrong; Wagner does have support.

12           "Removal jurisdiction requires complete diversity both at the time of commencement of

13   the action *[and] at the time of removal*; both must be alleged in the notice of removal."  *Awasthi*

14   *v. Infosys Technologies Ltd.*, 2010 U.S. Dist. LEXIS 57824 at *21-22 (N.D. Cal. May 21, 2010)

15   (emphasis added).  "The amount in controversy is determined as of the date of removal.  A

16   speculative argument as to the amount in controversy is insufficient."  *Faulkner v. Astro-Med*

17   *Inc.*, 1999 U.S. Dist. LEXIS 15801 at *5 (N.D. Cal. Oct. 1, 1999).

18           In *Valdez v. Allstate Insurance. Company*, the Ninth Circuit held that

19           Since "it [was] not facially evident from the complaint that more than $ 75,000
             [was] in controversy," Allstate should have "proven, by a preponderance of the
20           evidence, that the amount in controversy [met] the jurisdictional threshold." []
             Allstate did not.  Its only effort was the statement in its "Petition for Removal"
21           that "upon information and belief, [it] submits that the amount in controversy . . .
             exceeds $ 75,000.00."  "Information and belief" hardly constitutes proof "by a
22           preponderance of the evidence." []  "Conclusory allegations as to the amount in
             controversy are insufficient."  To discharge its burden, Allstate needed to
23           "provide evidence establishing that it is 'more likely than not' that the amount in
             controversy exceeds that amount." . . . [A] conclusory allegation "neither
24           overcomes the 'strong presumption' against removal jurisdiction, nor satisfies [the

**11**

1    defendant]'s burden of setting forth, in the removal petition itself, the *underlying*
2    *facts* supporting its assertion that the amount in controversy exceeds" the
     applicable dollar value.

3    372 F.3d 1115, 1117 (9th Cir. 2004) (citations omitted; emphasis in original).

4         Here, Spire Vision's Notice of Removal at ¶ 8 (Docket #4) claims that "Plaintiff's fee

5    claim *potentially* exceeds $26,000, causing the amount in controversy to exceed $75,000"

6    (emphasis added). Spire Vision failed to state facts in support of its conclusory assumption.

7    Spire Vision did not allege that the amount in controversy – including Wagner's attorneys' fees

8    *at that time* – exceeded $75,000; therefore, there was not complete diversity.

9         Spire Vision's citation in its Opposition at 13:26-14:2 to *Celestino v. Renal Advantage*

10   *Inc.*, 2007 U.S. Dist. LEXIS 33827 (N.D. Cal. Apr. 24, 2007) (order denying plaintiff's motion

11   to remand) does not help its position. While the order does include the quoted text – "[T]he

12   amount in controversy includes not only damages accrued up to the time of removal, but also a

13   reasonable assessment of damages likely to be accrued," *id*. at *11, Spire Vision incorrectly

14   reads *damages* as if it said *attorneys' fees.* In fact, the court noted that at the time of removal,

15   Celestino had already claimed a loss of *income and benefits* exceeding $55,000 and stated that he

16   would be out of work for six months, costing him more than $39,000 in future loss of *income*

17   *and benefits*. *Id*. at *11-12. Thus, the ruling had nothing to do with anticipated *attorneys' fees*.

18        Wagner admits that in *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1034 (N.D.

19   Cal. 2002), the District Court included anticipated attorneys' fees to determine the amount in

20   controversy. *See* Opposition at 13:25-26. However, Wagner points out that the *Simmons* court

21   reached its conclusion based on *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150 (9th Cir. 1998), and

22   in *Galt G/S*, federal subject matter jurisdiction depended on the fact that one party was claiming

23   $13,500 plus $44,266.65 in attorneys' fees *actually incurred*, such that the total exceeded the

24   $50,000 threshold amount in controversy *at the time of removal*. *Id.* at 1155.

**12**

Moreover, *Simmons* is a District Court case from 2002, and Wagner noted in his Motion to Remand that two newer Ninth Circuit cases – *Abrego v. Dow Chemical Company*, 443 F.3d 676, 690 (9th Cir. 2006) and *Kroske v. US Bank Corporation*, 432 F.3d 976, 980 (9th Cir. 2005) – support his position that the amount in controversy depends on attorneys' fees at the time of removal.  *See also Singer v. State Farm Mutual Auto Insurance Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (ruling that the amount in controversy is determined at the time of removal).

Spire Vision attempts to include Wagner's attorneys' time spent seeking remand and several others [sic] motions into the amount in controversy.  Opposition at 14:11-14.  But as established above, this time is irrelevant; because those hours were spent *after* Spire Vision had already removed this Action.  The only thing that Wagner's attorneys did prior to removal was prepare, file, and serve the Verified Complaint.  *See Green v. Party City Corp.*, 2002 U.S. Dist. LEXIS 7750 at *7 and n.3 (C.D. Cal. Apr. 9, 2002) (noting that the amount of fees incurred up to the point of removal is *de minimus* . . . because the only work done by plaintiff's counsel prior to removal was the filing of the complaint).

A 2012 quote from the Central District of California best sums up this subsection:

> While the Ninth Circuit Court of Appeals has not yet spoken on the issue, the Court notes that it appears that a nascent consensus may be emerging among the district courts of this Circuit, finding that *attorneys' fees not yet incurred may not be included in the amount in controversy calculation.  See Reames v. AB Car Rental Servs.*, 2012 U.S. Dist. LEXIS 31956 (D. Or. Feb. 2, 2012) (split among the Ninth Circuit is best resolved by adoption of the reasoning that attorney fees anticipated but unaccrued at the time of removal are not properly in controversy for jurisdictional purposes).

*MIC Philberts Investments v. American Casualty Company of Reading*, 2012 U.S. Dist. LEXIS 80651 at *16 (E.D. Cal. June 8, 2012) (emphasis added).

## 2. *Spire Vision Knew that Wagner Dismissed Two Defendants Before Removal, Reducing Wagner's Claims from $64,000 to $50,500*

Furthermore, Spire Vision's math is incorrect, because Spire Vision knew that Wagner had dismissed two Defendants before removal. Spire Vision's attorney Neta stated that shortly after learning of this Action, and *before* removing the Action, he learned that Wagner had dismissed Adconion and AdHarmonics Inc. Neta Decl. at ¶¶ 2-3 (Docket #46).

Of the 49 spams at issue in this Action, 11 involved Adconion and one of those 11 also involved AdHarmonics. Verified Complaint at ¶¶ 55-60 and 105-111. Wagner seeks the statutory remedy of $1,000 per spam pursuant to Section 17529.5. *Id.* at ¶¶ 7, 153. By dismissing those two Defendants, who accounted for 11 spams, Wagner reduced the amount in controversy under Section 17529.5 by $11,000 to **$38,000** before removal.

Furthermore, Spire Vision dba JunctionLights sent the Adharmonics/Adconion spam, and JunctionLights claims its address to be a box at the branch of The UPS Store in Rosemead, California. *Id.* at ¶¶ 55, 57 and Balsam Decl. at ¶ 12 and Ex. G. Thus, this spam constituted one of Wagner's six claims for violations of Section 17538.5, which carries a civil fine of $2,500 per violation. *Id.* at ¶¶ 164-165. By dismissing the Adharmonics/Adconion spam, Wagner reduced the amount in controversy under Section 17538.5 by $2,500 to **$12,500** before removal.

In short, whereas Spire Vision claims the amount in controversy was **$64,000** for liquidated damages and civil fines at the time of removal (not including punitive damages, disgorgement of profits, and attorneys' fees, which were and still are entirely speculative and thus not included in the amount in controversy for jurisdictional purposes), the amount in controversy was actually **$50,500**. Spire Vision does not claim that Wagner incurred more than $24,500 for attorneys' fees for writing, filing, and serving the Verified Complaint, such that the amount in controversy at the time of removal exceeded $75,000.

**E. This Court Should Award Wagner His Attorneys' Fees Incurred Due to Spire Vision's Baseless Removal**

Spire Vision did not attempt to meet and confer with Walton, lead attorney, either before or after removal. Spire Vision did not agree to Balsam's demand to immediately stipulate to remand the Action. There were no objective grounds for removal in the first place. Spire Vision's purpose for removing to Federal Court was to delay the proceedings. The removal was frivolous; 28 U.S.C. § 1447(c) authorizes attorneys' fees and costs for a successful remand; and this is precisely the sort of situation that justifies the statute.

Wagner asks this Court to award him his costs, including attorneys' fees, to be paid jointly and severally against Spire Vision LLC and its attorneys Newman Du Wors. Wagner increases his request to $7,275 (24.3 hours at $250 per hour for Balsam and 3.0 hours at $400 per hour for Walton) associated with remanding this Action to state court. Balsam Decl. at ¶ 19, Walton Decl. at ¶ 3.

## IV. CONCLUSION

Any doubt as to whether federal jurisdiction exists is resolved *against* a finding of federal jurisdiction. *Kantor v. Wellesley Galleries Ltd.*, 704 F.2d 1088, 1092 (9th Cir. 1983). The removal statute is similarly strictly construed against federal jurisdiction. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). For the reasons set forth above, this Court should remand this Action to the Superior Court of California, County of Sonoma and order Spire Vision and its attorneys, jointly and severally, to pay Wagner's attorneys' fees incurred for remand in the amount of $7,275.

THE LAW OFFICES OF DANIEL BALSAM

Dated: February 15, 2013

/s/ Daniel L. Balsam
Daniel L. Balsam
Attorney for Plaintiff Christopher Wagner

**15**

**Box 145**

By Fax

COPY

POS-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Leeor Neta (State Bar 233454 ) Newman Du Wors 1201 Third Avenue, Suite 1600 Seattle, WA 98101 TELEPHONE NO.: (206) 274-2800    FAX NO. *(Optional):* (206) 274-2801 E-MAIL ADDRESS *(Optional):* ATTORNEY FOR *(Name):* Spire Vision LLC et al. | ENDORSED FILED SEP 09 2013 SUPERIOR COURT OF CALIFORNIA COUNTY OF SONOMA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sonoma
STREET ADDRESS: 3055 Cleveland Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Rosa CA 95403
BRANCH NAME: Civil and Family Law Courthouse

PLAINTIFF/PETITIONER: Wagner

DEFENDANT/RESPONDENT Spire Vision LLC et al.

| | |
|---|---|
| **PROOF OF SERVICE—CIVIL** | CASE NUMBER: SCV-252580 |
| Check method of service *(only one):* | |
| ☐ **By Personal Service**   ☐ **By Mail**   ✓ **By Overnight Delivery** ☐ **By Messenger Service**   ☐ **By Fax**   ☐ **By Electronic Service** | JUDGE: Nancy Case Shaffer DEPT.: 18 |

*(Do not use this proof of service to show service of a Summons and complaint.)*

1. At the time of service I was over 18 years of age and **not a party to this action.**

2. My residence or business address is:

   1201 Third Avenue, Suite 1600, Seattle, WA 98101

3. ☐ The fax number or electronic notification address from which I served the documents is *(complete if service was by fax or electronic service):*

4. On *(date):* September 9, 2013    I served the following **documents** *(specify):*

   SUPPLEMENTAL DECLARATION OF LEEOR NETA REGARDING MEET AND CONFER CONFERENCE ON DEFENDANTS' MOTION FOR PROTECTIVE ORDER OR FOR A STAY OF DISCOVERY AND IMPLEMENTATION OF A CASE MANAGEMENT ORDER

   ☐ The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:

   a. Name of person served: Daniel L. Balsam

   b. ✓ *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*

      Business or residential address where person was served:

      Law Offices of Daniel Balsam, 2912 Diamond Street #218, San Francisco, CA 94131

   c. ☐ *(Complete if service was by fax or electronic service.)*

      (1) Fax number or electronic notification address where person was served:

      (2) Time of service:

   ✓ The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify):*

   a. ☐ **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

   *(Continued on back)*

| Form Approved for Optional Use Judicial Council of California POS-040 [Rev. January 1, 2009] | **PROOF OF SERVICE—CIVIL** **(Proof of Service)** | Code of Civil Procedure., §§ 1010.6, 1011, 1013, 1013a, 2015.5;  Cal. Rules of Court, rules 2.260, 2.306 www.courtinfo.ca.gov American LegalNet, Inc. www.FormsWorkflow.com |

POS-040

| CASE NAME | CASE NUMBER: |
|---|---|
| Wagner v. Spire Vision LLC | SCV-252580 |

6. b. ☐ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one):*

   (1) ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

   (2) ☐ placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

   I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):*

c. ☑ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. ☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. ☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

f. ☐ **By electronic service.** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in item 5. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: September 9, 2013

Lindsey Rowson
—————————————————
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

### DECLARATION OF MESSENGER

☐ **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
(NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**

POS-040(P)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Wagner v. Spirevision LLC et al | SCV-252580 |

## ATTACHMENT TO PROOF OF SERVICE—CIVIL (PERSONS SERVED)

*(This attachment is for use with form POS-040.)*

**NAMES, ADDRESSES, AND OTHER APPLICABLE INFORMATION ABOUT PERSONS SERVED:**

| **Name of Person Served** | **Where Served** | **Time of Service** |
|---|---|---|
| *(If the person served is an attorney, the party or parties represented should also be stated.)* | *(Provide business or residential address where service was made by personal service, mail, overnight delivery, or messenger service. For other means of service, provide fax number or electronic service address, as applicable.)* | *(Complete for service by fax transmission or electronic service.)* |
| Lifescript, Inc.<br>Kevan Fornasero | Perkins Coie LLP<br>4 Embarcadero Center, Suite 2400<br>San Francisco, CA 94111 | Time: _____ |
| Christopher Wagner<br>Timothy James Walton | Law Offices of Timothy Walton<br>9515 Soquel Drive, Suite 207<br>Aptos, CA 95003 | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |
| | | Time: _____ |

Timothy J. Walton (State Bar No. 184292)
Jim C. Twu (State Bar No. 175032)
WALTON TWU LLP
9515 Soquel Drive, Suite 207
Aptos, CA 95003-4137
Phone (831) 685-9800
Fax: (650) 618-8687

Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2912 Diamond Street #218
San Francisco, CA 94131
Phone: (415) 869-2873
Fax: (415) 869-2873

Attorneys for Plaintiff Christopher Wagner

ENDORSED
FILED
SEP 12 2013
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

Received
SEP 19 2013
NEWMAN | DUWORS

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SONOMA (UNLIMITED JURISDICTION)

| | |
|---|---|
| CHRISTOPHER WAGNER, | ) Case No.:   SCV-252580 |
| | ) |
| Plaintiff, | ) [PROPOSED] FIRST ORDER RE: |
| | ) DEFENDANTS' MOTION FOR |
| v. | ) PROTECTIVE ORDER OR, IN THE |
| | ) ALTERNATIVE, FOR A STAY OF |
| SPIRE VISION LLC et al, | ) DISCOVERY AND IMPLEMENTATION OF |
| | ) A CASE MANAGEMENT ORDER |
| Defendants. | ) |
| | ) Date:       August 21, 2013 |
| | ) Time:       3:30 p.m. |
| | ) Judge:      Hon. Nancy Case Shaffer |
| | Dept:       18 |

The "Motion for Protective Order Or, In the Alternative, For a Stay of Discovery and Implementation of a Case Management Order" filed jointly by Defendants Spire Vision LLC *et al* "Spire Vision" and Accelerize New Media Inc. ("Accelerize") came on regularly for hearing by the Court on August 21, 2013 in Department 18 of the Superior Court of Sonoma County. The Parties appeared through their counsel of record. Having considered the papers submitted and oral argument, the Court determined accordingly:

1

[PROPOSED] FIRST ORDER RE: DEFENDANTS' MOTION FOR PROTECTIVE ORDER [ ]

Defendants' Motion for Protective Order is denied as to the eight defendants who were served with only 23 form interrogatories. Good cause has not been shown as to why the eight parties served with 23 form interrogatories should be included in a protective order. The court concludes that the phrase used in the form interrogatories, "sending commercial emails to [Plaintiff]" is not vague. Nevertheless, this Court accepts Defendants' offer that each of those eight defendants (Achieve Opportunities, AgreeWizard, FurturesDrive, JunctionLights, Opportunity Central, Paths Direct, PullSmart, YourAdsHere) will ~~by D's choice~~ respond to a set of form interrogatories (except for 17.1) for each of the 49 commercial email advertisements at issue in this Action, for a total of 8 x 22 x 49 = 8,624 interrogatories. Defendants shall respond within ___30___ days of ~~service of Notice of Entry of this Order.~~ *delivery of emails on Dropbox*

With respect to the remaining ten parties and the respective production requests, special interrogatories, form interrogatories, and requests for admission, defendants either inadvertently failed to include exhibits 1-4 with the declaration of Leeor Neta in support of the protective order or they have been misplaced. These exhibits are required in order to rule on this issue. Defendants are ordered to resubmit the declaration of Leeor Neta, with exhibits, by August 28, 2013 and are further ordered to conform the declaration and exhibits to California Rule of Court, rule 3.1110. This matter is continued to September 11, 2013 for a ruling on the balance of the motion to compel.

Defendants' request for a stay, pending disposition of defendants' demurrer to complaint of Christopher Wagner, is moot, as this court has already ruled on that demurrer.

Defendants' request for a case management order and a discovery referee is denied without prejudice.

IT IS SO ORDERED.

Date: ___9/12/13___          By: _____

HON. NANCY CASE SHAFFER

[PROPOSED] FIRST ORDER RE: DEFENDANTS' MOTION FOR PROTECTIVE ORDER [ ]

SCV-252580

## PROOF OF SERVICE BY MAIL

I certify that I am an employee of the Superior Court of California, County of Sonoma, and that my business address is 600 Administration Drive, Room 107-J, Santa Rosa, CA 95403; that I am not a party to this cause; that I am over the age of 18 years; that I am readily familiar with this office's practice for collection and processing of correspondence for mailing with the United States Postal Service; and that on the date shown below I placed a true copy of the foregoing attached papers in an envelope, sealed and addressed as shown below, for collection and mailing at Santa Rosa, California, first class, postage fully prepaid, following ordinary business practices.

Date: September 12, 2013

JOSÉ OCTAVIO GUILLÉN
COURT EXECUTIVE OFFICER

by _____

Deputy Clerk

--ADDRESSEES--

BALSAM, DANIEL L
2912 DIAMOND ST # 218
SAN FRANCISCO, CA 94131

DU WORS, JOHN
NEWMAN DU WORS LLP
1201 THIRD AVE # 1600
SEATTLE, WA 98101

FORNASERO, KEVAN
4 EMBARCADERO CTR STE 2400
SAN FRANCISCO, CA 94111-4131

NETA, LEEOR
NEWMAN DU WORS LLP
1201 THIRD AVE STE 1600
SEATTLE, WA 98101

1  Timothy J. Walton (State Bar No. 184292)
2  Jim C. Twu (State Bar No. 175032)
   WALTON TWU LLP
3  9515 Soquel Drive, Suite 207
   Aptos, CA 95003-4137
4  Phone (831) 685-9800
5  Fax: (650) 618-8687
6
7  Daniel L. Balsam (State Bar No. 260423)
   THE LAW OFFICES OF DANIEL BALSAM
8  2912 Diamond Street #218
   San Francisco, CA 94131
9  Phone: (415) 869-2873
   Fax: (415) 869-2873
10
11 Attorneys for Plaintiff Christopher Wagner
12
13
14          SUPERIOR COURT OF THE STATE OF CALIFORNIA
15          COUNTY OF SONOMA (UNLIMITED JURISDICTION)
16
   CHRISTOPHER WAGNER,              ) Case No.:   SCV-252580
17                                  )
                                    ) [PROPOSED] SECOND ORDER RE:
18          Plaintiff,             ) DEFENDANTS' MOTION FOR
                                    ) PROTECTIVE ORDER [ ]
19      v.                         )
                                    )
20 SPIRE VISION LLC et al,         ) Date:       September 11, 2013
21                                  ) Time:       3:30 p.m.
          Defendants.             ) Judge:      Hon. Nancy Case Shaffer
22 _____ ) Dept:       18
23
24         After a hearing on August 21, 2013 resolved part of the "Motion for Protective Order Or,
25 In the Alternative, For a Stay of Discovery and Implementation of a Case Management Order"
26 filed jointly by Defendants Spire Vision LLC et al "Spire Vision" and Accelerize New Media
27 Inc. ("Accelerize"), the remainder of the Motion came on regularly for hearing by the Court on
28 September 11, 2013 in Department 18 of the Superior Court of Sonoma County. The Parties
29 appeared through their counsel of record. Having considered the papers submitted and oral
30 argument, the Court determined accordingly:
31
32
33                                          1

   [PROPOSED] SECOND ORDER RE: DEFENDANTS' MOTION FOR PROTECTIVE ORDER [ ]

ENDORSED
FILED
SEP 12 2013
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

Received
SEP 19 2013
NEWMAN | DuWORS

1    Motion of defendants Accelerize New Media Inc., Achieve Opportunities,

2    AgreeWizard, Digital Publishing Corporation, Furturesdrive, Junctionlights,

3    Juniper Marketing, MediActivate LLC, On Demand Research LLC, Opportunity

4    Central, Paths Direct, Prime Advertisers LLC, PullSmart, Serve Clicks LLC, Spire

5    Vision LLC, Spire Vision Holdings Inc., Ward Media, Inc., XL Marketing

6    Corporation and Youradshere for a protective order is DENIED as to the form

7    interrogatories, ~~requests for admission,~~ *RFAs- Authentication* and requests for production.  These

8    requests, taken separately or together, are not burdensome with respect to the

9    individual defendant entities to which they are directed.  Defendants shall

10   respond within ___*30*___ days of ~~service of Notice of Entry of this Order~~

11   *From delivery of emails via Dropbox*

12       The court will continue the hearing in this matter to September 25, 2013,

13   for ruling on the motion for protective order with respect to the special

14   interrogatories. *and RFAs* The court will rule on the request to appoint a discovery referee

15   in this matter at the continued hearing on ~~September 25,~~ *October 16* 2013, after the court

16   has had an opportunity to review the 241 special interrogatories *and RFAs* in more detail.

17   The court will also consider whether to refer this matter to the court's discovery

18   facilitator program.

19

20       The motion for a case management order is denied at this time, without

21   prejudice.  Although the relationships between the individual defendants appear

22   to be somewhat complex, based on the information available to the court at this

23   time, this does not appear to be complex litigation.

24

25       The request for a stay of discovery pending ruling on defendant's

26   demurrer to the complaint is moot.  The court overruled defendant's demurrer to

27   the complaint on August 7, 2013.

28

29   IT IS SO ORDERED.

30   Date: *9/12/13*    By: _____

31                          HON. NANCY CASE SHAFFER

32

33                                    2

[PROPOSED] SECOND ORDER RE: DEFENDANTS' MOTION FOR PROTECTIVE ORDER [ ]

SCV-252580

## PROOF OF SERVICE BY MAIL

       I certify that I am an employee of the Superior Court of California, County of Sonoma, and that my business address is 600 Administration Drive, Room 107-J, Santa Rosa, CA 95403; that I am not a party to this cause; that I am over the age of 18 years; that I am readily familiar with this office's practice for collection and processing of correspondence for mailing with the United States Postal Service; and that on the date shown below I placed a true copy of the foregoing attached papers in an envelope, sealed and addressed as shown below, for collection and mailing at Santa Rosa, California, first class, postage fully prepaid, following ordinary business practices.

Date: September 12, 2013

                                      JOSÉ OCTAVIO GUILLÉN
                                      COURT EXECUTIVE OFFICER

                                      by_____

                                        Deputy Clerk

--ADDRESSEES--

BALSAM, DANIEL L
2912 DIAMOND ST # 218
SAN FRANCISCO, CA 94131

DU WORS, JOHN
NEWMAN DU WORS LLP
1201 THIRD AVE # 1600
SEATTLE, WA 98101

FORNASERO, KEVAN
4 EMBARCADERO CTR STE 2400
SAN FRANCISCO, CA 94111-4131

NETA, LEEOR
NEWMAN DU WORS LLP
1201 THIRD AVE STE 1600
SEATTLE, WA 98101

CIV-110

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Daniel L. Balsam (State Bar No. 260423)<br>THE LAW OFFICES OF DANIEL BALSAM<br>2912 Diamond Street #218<br>San Francisco, CA 94131<br>TELEPHONE NO.: 415-869-2873    FAX NO. (Optional): 415-869-2873<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Plaintiff Christopher Wagner | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sonoma
STREET ADDRESS: 600 Administration Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Rosa, CA 95403
BRANCH NAME:

PLAINTIFF/PETITIONER: Christopher Wagner

DEFENDANT/RESPONDENT: Spire Vision LLC et al

| REQUEST FOR DISMISSAL | CASE NUMBER |
|---|---|
| ☐ Personal Injury, Property Damage, or Wrongful Death<br>  ☐ Motor Vehicle  ☐ Other<br>☐ Family Law  ☐ Eminent Domain<br>☑ Other (specify): Bus. & Prof. Code 17529.5, 17538.5 | SCV-252580 |

- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -

1. TO THE CLERK: Please **dismiss** this action as follows:
  a. (1) ☑ With prejudice  (2) ☐ Without prejudice
  b. (1) ☑ Complaint  (2) ☐ Petition
    (3) ☐ Cross-complaint filed by (name):             on (date):
    (4) ☐ Cross-complaint filed by (name):             on (date):
    (5) ☐ Entire action of all parties and all causes of action
    (6) ☑ Other (specify):* Only as to Defendant LIFESCRIPT INC., a Delaware corporation

2. *(Complete in all cases except family law cases.)*
  ☐ Court fees and costs were waived for a party in this case. *(This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed).*

Date: Oct. 2, 2013

Daniel L. Balsam        ▶ _(signature)_
TYPE OR PRINT NAME OF ☑ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)      (SIGNATURE)
*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.
Attorney or party without attorney for:
☑ Plaintiff/Petitioner  ☐ Defendant/Respondent
☐ Cross-Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**
  Date:

        ▶
TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)      (SIGNATURE)
**If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).
Attorney or party without attorney for:
☐ Plaintiff/Petitioner  ☐ Defendant/Respondent
☐ Cross-Complainant

*(To be completed by clerk)*
4. ☑ Dismissal entered as requested on (date): OCT – 3 2013
5. ☐ Dismissal entered on (date):    as to only (name):
6. ☐ Dismissal **not entered** as requested for the following reasons (specify):

7. a. ☑ Attorney or party without attorney notified on (date): OCT – 3 2013
  b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
    ☐ a copy to be conformed  ☐ means to return conformed copy

Date: OCT – 3 2013  Clerk, by _____ Kayla Felkins _____, Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. July 1, 2009]        **REQUEST FOR DISMISSAL**        Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com