IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER WAGNER,

    Plaintiff,

v.

DIGITAL PUBLISHING CORPORATION *et al.*,

    Defendants.

No. C 13-04952 WHA

**ORDER DENYING SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; AND VACATING HEARING**

### INTRODUCTION

In this action alleging spam e-mails in violation of California state law, plaintiff has filed a second motion for partial summary judgment. Defendants oppose with evidentiary objections and a request for monetary sanctions. For the reasons discussed below, the motion for partial summary judgment is **DENIED**. All evidentiary objections, as well as the request for monetary sanctions, are **DENIED AS MOOT**. The hearing on October 16, 2014, is **VACATED**.

### STATEMENT

The background of this action is set forth in a prior order (*see* Dkt. No. 53). In brief, plaintiff Christopher Wagner claims that defendants sent him 49 spam messages to his e-mail address, which he accesses in California. Wagner further alleges that those spam e-mails all contained "materially falsified, misrepresented, and/or forged information," in violation of Sections 17529.5 and 17538.5 of the California Business and Professions Code.

This action began in Sonoma County Superior Court on October 25, 2012. Following removal to this court based on diversity jurisdiction and two months of jurisdictional discovery thereafter, Wagner moved for partial summary judgment on one legal question: whether state law claims that do not allege every element of common law fraud — specifically, the elements of reliance or damages — are preempted by the federal CAN-SPAM Act. On that question, an order dated March 3, 2014, granted summary judgment in favor of Wagner, holding that he need not plead reliance or damages to avoid preemption of his California state law claims under the CAN-SPAM Act (Dkt. No. 53).

Now, Wagner has filed a second motion for partial summary judgment on only four spam e-mails sent by defendant Spire Vision Holdings Inc. and its "other parent/sister/subsidiary companies and 'brands'" (Br. 1). Defendants oppose, arguing that they need more time to discover whether Wagner consented to receiving the four spam e-mails. In particular, defendants argue that further discovery would reveal Wagner's consent to the four spam e-mails from an IP address — 159.150.101.117 — which is assigned to the University of Arkansas.

An order dated August 11, 2014, thus continued the hearing on Wagner's present motion, and permitted defendants three more weeks to complete discovery as follows (Dkt. No. 75) (emphasis added):

> [T]he issue of consent (direct or otherwise) and any other issues necessary to oppose plaintiff's second motion for partial summary judgment. No extensions will be given. *If plaintiff does not fully cooperate with discovery, however, the motion* [for partial summary judgment] *will be denied on that ground alone*.

Having considered full briefing and supplemental responses from both sides, this order decides below.

## ANALYSIS

**1.    MOTION FOR PARTIAL SUMMARY JUDGMENT.**

In his present motion, Wagner makes three arguments. *First*, he contends that the headers of all four spam e-mails contain false and misleading information in their "from" names because those names do not identify who sent the spams. *Second*, he asserts that those headers contain similarly inaccurate domain names that fail to identify or readily trace back to Spire

2

Vision. *Third*, Wagner claims that three of the four spam e-mails contain false and misleading information in their subject lines. All four e-mails, as well as their "from" names, domain names, and subject lines, are provided below:

| # | E-Mail Sent Date | Subject Line | "From" Name | Domain Name | Domain Name Registrant | LLC Creation Date |
|---|---|---|---|---|---|---|
| 1 | May 5, 2012 | "Receive a $20 giftcard Christopher Wagner. Complete our survey" | May Giftcard Survey | adtargets.net | Paths Direct | June 10, 2012 |
| 2 | May 7, 2012 | "AntiBullying Survey: Claim your $20 Dunkin Donut Giftcard" | May Giftcard Survey | deliveredintranets.net | Paths Direct | June 10, 2012 |
| 3 | May 8, 2012 | "Claim a $25 Giftcard for completing our Fling Survey" | GiftCard Survey | changeempower.com | Paths Direct | June 10, 2012 |
| 4 | May 8, 2012 | "Take Courses to be an App Developer, Christopher Wagner" | Apps Developers Courses | alertlinks.com | Achieve Opportunities | June 11, 2012 |

On this record, partial summary judgment is denied. As a preliminary matter, Wagner delayed his responses to defendants' discovery requests during the three additional weeks permitted by the August 11 order. Indeed, that order had warned Wagner that failure to cooperate fully with discovery on "the issue of consent (direct or otherwise) *and any other issues necessary to oppose plaintiff's second motion for partial summary judgment*" would lead to denial of his motion "on that ground alone" (Dkt. No. 75) (emphasis added).

Indeed, the following is uncontested by the parties. Three days afer the August 11 order, defense counsel served Wagner with requests for documents, request for admission, and interrogatories. At least some of those requests had asked whether Wagner ever provided direct consent to receive e-mail advertisements, either from defendants or others, and what IP addresses he has ever used. A week then passed before Wagner's attorney e-mailed the defense about "some time issues affecting this case" and his plans to file a discovery motion. No such motion was ever filed. Nonetheless, Wagner's attorney agreed to meet-and-confer with the

3

1  defense the next day and to send some materials in preparation thereof, but he did neither. Two
2  more weeks passed before the defense heard from Wagner's attorney on September 10, 2014, but
3  by that point, the three-week period for additional discovery had expired on September 1, 2014.
4  Only on September 12, 2014, did Wagner provide responses to defendant's written discovery
5  requests (Neta Decl. ¶¶ 2–10; Twu Exhs. A–C).

6  Moreover, this order denies partial summary judgment for another reason: there exists a
7  triable issue of fact as to whether there are material misstatements in the "from" names, domain
8  names, or subject lines of the spam e-mails now at issue. To that end, Section 17529.5(a)(2)
9  prohibits "falsified, misrepresented, or forged header information in e-mail advertisements. But
10 in the background is the CAN-SPAM Act, which preempts any state statute that regulates the use
11 of e-mail for commercial messages, *unless* the state statute is limited to "falsity or deception" in
12 commercial e-mails. *See* 15 U.S.C. 7707(b). The issue thus presented is whether "falsity or
13 deception," as used in the CAN-SPAM Act, requires a showing of certain elements of common
14 law fraud (*i.e.*, material misrepresentation) to avoid preemption of Wagner's Section 17529.5
15 claims here.

16 Previously, the March 3 order addressed preemption by the CAN-SPAM Act, but not the
17 precise legal question of whether the federal law preempts Section 17529.5 claims that do not
18 allege *material misrepresentation*. Rather, the March 3 order only determined as a matter of law
19 that Wagner need not plead *reliance and damages* to avoid preemption of his state law claims
20 under the CAN-SPAM Act (*see* Dkt. No. 53 at 3–6).

21 Two circuits have interpreted the CAN-SPAM Act's preemption clause in the context of
22 materiality. In *Omega World Travel, Inc. v. Mummagraphics, Inc.*, the Fourth Circuit affirmed
23 the district court's holding that the CAN-SPAM Act preempted a defendant's Oklahoma
24 statutory counterclaims "insofar as they applied to *immaterial misrepresentations*." 469 F.3d
25 348, 353–57 (4th Cir. 2006) (emphasis added). In reviewing the scope of preemption under the
26 CAN-SPAM Act and its use of "falsity or deception" in saving certain state laws from
27 preemption, *Omega* reasoned that a materiality component supported the purpose underlying the
28 CAN-SPAM Act, and that a contrary reading "would upend this balance and turn an exception to

4

1    a preemption provision into a loophole so broad that it would virtually swallow the preemption
2    clause itself."

3    Our court of appeals later "reach[ed] the same conclusion" as did *Omega* with respect to
4    the CAN-SPAM Act's scope of preemption. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040,
5    1061–64 (9th Cir. 2009). In *Gordon*, the plaintiff alleged false e-mails under Washington state
6    law, claiming that those e-mails' headers "fail[ed] to clearly identify Virtumundo as the e-mails'
7    sender and therefore misrepresent or obscure the identity of the sender." Examples of reportedly
8    inaccurate "from lines" in those e-mails included "CriminalJustice@vm-mail.com,"
9    "PublicSafetyDegrees@vmadmin.com," and "TradeIn@vm-mail.com." Even so, *Gordon* held
10   that such claims were "for, at best, 'incomplete' or less than comprehensive information"
11   regarding the sender (Virtumundo), as the plaintiff had conceded that the domain names were
12   properly registered to the sender and that a publicly available online database search on WHOIS
13   accurately identified the sender as the domain names' registrant and provided other identifying
14   information. *Gordon* thus concluded that the plaintiff's "technical allegations regarding the
15   header information find no basis in traditional tort theories and therefore fall beyond the ambit of
16   the exception language in the CAN–SPAM Act's express preemption clause."

17   Here, Wagner's best argument is that the four spam e-mails' "from" names — *i.e.*, May
18   Giftcard Survey, GiftCard Survey, and Apps Developers Courses — and those e-mails' domain
19   names — *i.e.*, adtargets.net, deliveredintranets.net, changeempower.com, and alertlinks.com —
20   violate Section 17529.5(a)(2) because those "from" names and domain names fail to identify
21   Spire Vision as the spam sender or provide information that readily traces back to Spire Vision.
22   He further contends that there is no way to trace the domain names back to Spire Vision on a
23   publicly accessible database such as WHOIS, because Paths Direct and Achieve Opportunities
24   are listed as the reported registrants for those domain names, and because Paths Direct and
25   Achieve Opportunities allegedly did not even exist as legal entities when the four spam e-mails
26   were sent in May 2012.

5

1   This order is unpersuaded. There is a genuine issue of material fact as to whether Paths
2   Direct and Achieve Opportunities were legal entities at the time the spam e-mails were sent in
3   May 2012. Wagner has provided two "separate series agreements" that appear to have created
4   Paths Direct and Achieve Opportunities as limited liability companies in Delaware in June 2012
5   — *i.e.*, after the spam e-mails were sent — but the record also contains other mentions of Paths
6   Direct and Achieve Opportunities at other points in time, some even preceding the date on which
7   the spam e-mails were sent (*see* Balsam Exhs. G1–F2). Spire Vision's general counsel have also
8   declared that Paths Direct and Achieve Opportunities were "brands," but that declaration makes
9   no mention of Paths Direct and Achieve Opportunities being fake entities back in May 2012, as
10  Wagner now suggests (Berger Decl. ¶ 2). In short, it is unclear whether Paths Direct and
11  Achieve Opportunities existed as legal entities when the spam e-mails were sent.

12  Nor does *Balsam v. Trancos, Inc.*, 203 Cal. App. 4th 1083, 1096, 1102–03 (2012), aid
13  Wagner's position. While recognizing *Omega* and *Gordon*'s holdings that "state law claims
14  based on no more than immaterial or nondeceptive inaccuracies or omissions in commercial
15  e-mails are preempted" by the CAN-SPAM Act, *Balsam* nonetheless found no preemption
16  applicable because the defendant's "*deliberate use* of randomly chosen, untraceable domain
17  names on the 'From' line of the subject e-mails for the stated purpose of concealing its role in
18  sending them *does involve deception as to a material matter — the sender's identity — as well*
19  *as an element of wrongful conduct*." (emphasis added). Specifically, it was undisputed that the
20  defendant there had intentionally used only *privately registered domain names* "to prevent e-
21  mail recipients from being able to identify it as the sender . . . ." In contrast, there is no evidence
22  here that defendants used privately registered domain names to hide their identities in connection
23  with the four spam e-mails. Wagner even concedes this point in his brief (Br. 14).

24  Putting aside the four spam e-mails' "from" names and domain names, Wagner further
25  asserts that the subject lines of those spam e-mails merit summary judgment in his favor. On this
26  issue, Section 17529.5(a)(3) prohibits e-mail subject lines "that a person knows would be *likely*
27  *to mislead* a recipient, acting reasonably under the circumstances, about a material fact regarding
28  the contents or subject matter of the message." (emphasis added). Wagner therefore argues that

6

the subject lines of the spam e-mails here — *e.g.*, "Receive a $20 giftcard Christopher Wagner. Complete our survey" — violate Section 17529.5(a)(3) because they mislead a recipient into thinking that he can simply take a survey to get the giftcard, when he reportedly "must also purchase and/or sign up for various goods and services" (Br. 17). For support, he cites *Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 837 (2011), in which the California Court of Appeal held that Section 17529.5(a)(3) can apply even where "the subject line creates the false impression that the recipient may receive a free gift when, in fact, the contents of the e-mail reveal that is untrue."

This order disagrees. While the subject lines at issue suggest that a recipient will get the giftcard if he takes the survey, a reasonable juror could also find that the subject lines are too good to be true, and that they are thus not "likely to mislead" a recipient into thinking that all he needs to do is to take the survey to get the giftcard. Indeed, this is a reasonable inference that must be drawn in favor of defendants, at least at the summary-judgment stage, and therefore should be left to the jury. *Porter v. California Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005).

Partial summary judgment is therefore **DENIED**.

**2.   EVIDENTIARY OBJECTIONS AND REQUEST FOR MONETARY SANCTIONS.**

In opposing the present motion, defendants have filed evidentiary objections to Wagner's declarations, and have further requested monetary sanctions against Wagner for his delay in responding to the discovery permitted by the August 11 order. Because this order need not reach those contested declarations, the evidentiary objections are **DENIED AS MOOT**. This order further finds that monetary sanctions are unwarranted at this time.

**CONCLUSION**

For the reasons discussed above, partial summary judgment is **DENIED**. All evidentiary objections, as well as the request for monetary sanctions, are **DENIED AS MOOT**. The hearing on October 16, 2014, is **VACATED**.

**IT IS SO ORDERED.**

Dated: October 10, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7