IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER WAGNER,

    Plaintiff,

  v.

SPIRE VISION LLC, ACHIEVE OPPORTUNITIES LLC, AGREEWIZARD LLC, DIGITAL PUBLISHING CORPORATION, FUTURESDRIVE LLC, JUNCTIONLIGHTS LLC, JUNIPER MARKETING LLC, MEDIACTIVATE LLC, ON DEMAND RESEARCH LLC, OPPORTUNITY CENTRAL LLC, PATHS DIRECT LLC, PRIME ADVERTISERS LLC, PULLSMART LLC, SERVE CHICKS LLC, SPIRE VISION HOLDINGS, INC., WARD MEDIA INC., XL MARKETING CORPORATION, and YOURADSHERE LLC,

    Defendants.

No. C 13-04952 WHA

**ORDER RE SUMMARY JUDGMENT AND EXCLUSION OF EXPERT TESTIMONY**

## INTRODUCTION

In this spam email action asserting claims under California's Business and Professions Code, defendants move for summary judgment and to exclude plaintiff's expert testimony. Defendants' summary judgment motion is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion to exclude plaintiff's expert testimony is **GRANTED**.

## STATEMENT

Defendant Spire Vision LLC operates an email marketing network. Its affiliates and marketing agents comprise all defendants in this matter. Those entities are Achieve Opportunities

LLC, Agreewizard LLC, Digital Publishing Corporation, Futuresdrive LLC, Junctionlights LLC, Juniper Marketing LLC, Mediactivate LLC, On Demand Research LLC, Opportunity Central LLC, Paths Direct LLC, Prime Advertisers LLC, Pullsmart LLC, Serve Chicks LLC, Spire Vision Holdings, Inc., Ward Media Inc., XL Marketing Corporation, and Youradshere LLC  (Vine Decl. ¶2).

All defendants are connected, as they all operate under the Spire Vision umbrella and Spire Vision controls all of them.  The parties refer to defendants as affiliates and marketing agents that function within the "Spire Vision Family" (*ibid*).

The gravamen of plaintiff Christopher Wagner's case is that defendants, which operate under a single network, bombarded him with unwanted and illegal spam email advertisements.  These emails advertised an array of consumer products and services.  In total, defendants sent Wagner 25 spam emails, which Wagner accessed in California.  Wagner argues that these 25 emails contained "materially falsified, misrepresented, and/or forged header information" and materially misleading subject lines, in violation of Sections 17529.5 and 17538.5 of the California Business and Professions Code (Wagner Decl. Exhs. A1–A25).  The California Supreme Court has defined header information as "the source, destination, and routing information attached to an electronic mail message, including the originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message." *Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 340 (2010).

Defendants now move for summary judgment on all of plaintiff's claims.  In defendants' motion, they originally asserted that 24 emails were still at issue in this case and appended those 24 emails as exhibits.  In his opposition, plaintiff replied that 25 emails were still at issue — 13 of the emails defendants had included in their summary judgment motion (plaintiff had already dismissed his claims surrounding the other 11 emails), along with 12 additional emails not included in their summary judgment motion.  In their reply, defendants now state that Wagner dismissed some claims, but never specified which emails still needed to be adjudicated before filing his opposition.  Nevertheless, defendants agree that the 25 emails Wagner identified comprise all of the emails still at issue in our case.  The parties thus agree about which emails are

2

at issue, all of these 25 emails can be found in the record, and the summary judgment motion can move forward.

In addition to his opposition brief, plaintiff submitted a document titled "Objections to Evidence" (Dkt. No. 100). Local Rule 7–3 requires "any evidentiary and procedural objections to the motion [to] be contained within the brief or memorandum." Plaintiff's separate submission was improper and will not be considered.

Defendants also move to exclude plaintiff's expert testimony. Following full briefing and oral argument, this order decides as follows.

## ANALYSIS

Summary judgment is proper, Rule 56(a) provides, when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F.3d 474, 480 (9th Cir. 2000).

### 1. JUDICIAL NOTICE.

Plaintiff requests judicial notice of Exhibits A–C. Exhibit A is the trial court's decision in *Balsam v. Trancos Inc. et al*, No. CIV471797 (Super Ct. Cal. Cty. of San Mateo, Mar. 10, 2010). Exhibit B is defendants' opposition to plaintiff's motion to remand in *Wagner v. Spire Vision LLC et al*, No. 13-CV-00054-YGR (N.D. Cal. Feb. 8, 2013). Exhibit C is the declaration of Daniel Berger in support of defendants' opposition in the same matter as Exhibit B. Defendants do not oppose. Exhibits A–C are public court documents that "can be accurately and readily determined from sources whose accuracy cannot be questioned." FRE 201(b). Accordingly, plaintiff's request for judicial notice of Exhibits A–C is **GRANTED**.

### 2. SECTION 17529.5 AND THE CAN-SPAM ACT.

California Business and Professions Code Section 17529.5, passed in 2003, prohibits certain deceptive practices in commercial email, as enumerated in subdivision (a) as follows:

> (a) It is unlawful for any person or entity to advertise in a commercial email advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:

3

> (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information;
>
> (3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

But in the background lies the federal CAN-SPAM Act, which preempts any state statute that regulates the use of e-mail for commercial messages, *unless* the state statute is limited to "falsity or deception" in commercial e-mails. *See* 15 U.S.C. 7707(b). One issue thus presented is whether "falsity or deception," as used in the CAN-SPAM Act, requires a showing of certain elements of common law fraud (*i.e.*, material misrepresentation) to avoid preemption of Wagner's Section 17529.5 claims here.

Two circuits have interpreted the CAN-SPAM Act's preemption clause in the context of materiality. In *Omega World Travel, Inc. v. Mummagraphics, Inc*., the Fourth Circuit affirmed a district court's holding that the CAN-SPAM Act preempted a defendant's Oklahoma statutory counterclaims "insofar as they applied to *immaterial misrepresentations*." 469 F.3d 348, 353–57 (4th Cir. 2006) (emphasis added). In reviewing the scope of preemption under the CAN-SPAM Act and its use of "falsity or deception" in saving certain state laws from preemption, *Omega* reasoned that a materiality component supported the purpose underlying the CAN-SPAM Act, and that a contrary reading "would upend this balance and turn an exception to a preemption provision into a loophole so broad that it would virtually swallow the preemption clause itself." *Id.* at 355.

Our court of appeals later "reach[ed] the same conclusion" as did *Omega* with respect to the CAN-SPAM Act's scope of preemption. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1061–64 (9th Cir. 2009). In *Gordon*, the plaintiff alleged false emails under Washington state law, claiming that those emails' headers "fail[ed] to clearly identify Virtumundo as the e-mails' sender and therefore misrepresent or obscure the identity of the sender." Examples of reportedly inaccurate "from lines" in those emails included "CriminalJustice@vm-mail.com," "PublicSafetyDegrees@vmadmin.com," and "TradeIn@vm-mail.com." Even so, *Gordon* held that such claims were "for, at best, 'incomplete' or less than comprehensive information"

4

1  regarding the sender (Virtumundo), as the plaintiff had conceded that the domain names were
2  properly registered to the sender and that a publicly available online database search on WHOIS
3  accurately identified the sender as the domain names' registrant and provided other identifying
4  information. *Gordon* concluded that the plaintiff's "technical allegations regarding the header
5  information find no basis in traditional tort theories and therefore fall beyond the ambit of the
6  exception language in the CAN–SPAM Act's express preemption clause." *Id*. at 1064.

7  Thus, in order to prevail, Wagner must be able to demonstrate that the header information
8  in the emails he received not only violated the California statute, but contained *material*
9  misrepresentations to avoid preemption under the CAN-SPAM Act. Any other claims are
10 preempted "insofar as they applied to immaterial misrepresentations." *Omega*, 469 F.3d at 353.

### 3.  SECTION 17529.5(a)(2) CLAIMS.

Wagner asserts that each of the 25 emails at issue violated Section 17529.5(a)(2) of the California Business and Professions Code. This section makes unlawful emails that contain materially "falsified, misrepresented, or forged header information." The California Supreme Court defined header information as "the source, destination, and routing information attached to an electronic mail message, including the originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message." *Kleffman*, 49 Cal. 4th at 340. In *Kleffman*, the plaintiff sued under Section 17529.5(a)(2), alleging Vonage, by and through its marketing agents, sent him 11 unsolicited email advertisements for its broadband telephone services using 11 different domain names: superhugeterm.com; formycompanysite.com; ursunrchcntr.com; urgrtquirkz.com; countryfolkgospel.com; lowdirectsme.com; yearnfrmore.com; openwrldkidz.com; ourgossipfrom.com; specialdlvrguide.com; and struggletailssite.com. These 11 domain names could all be traced to a physical address in Nevada. *Kleffman* held that the use of domain names that do not make clear the identity of either the sender or the merchant-advertiser do not violate Section 17529.5(a)(2) because such use does not in fact make any representation, express or implied, regarding the email's source. *Id*. at 338, 346.

In *Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403 (2014), the California Court of Appeal addressed emails from which the domain name could not be traced, but the bodies of the emails contained identifying information, such that the sender could be readily ascertained. *Rosolowski* is the only decision to have ever addressed such emails under Business and Professions Code Section 17529.5. In evaluating decisions from state intermediate appellate courts, our court of appeals has stated: "We must defer to the California Court of Appeal's interpretation of the [statute at issue] unless there is convincing evidence that the California Supreme Court would decide the matter differently." *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1099 (9th Cir. 2003).

In *Rosolowski*, the domain names ("Proactiv Special Offer," "Wen Hair Care," "Proactiv Special Bonus Deal," "Wen Healthy Hair," "Wen by Chaz Dean," "Proactiv Bonus Deal," "Proactiv Bonus Gift," and "Proactiv: Special Offer") could not be traced to the emails' sender. Moreover, these domain names did not include "names of existing companies or persons, there are no such entities or persons, and no such entities or persons are registered as fictitious business names. Further, the purported senders were not the people or entities advertising in the emails. The domains from which these emails originated were not traceable to [Guthy]. A WHOIS search would not identify [Guthy] as the registrant of the domains from which the emails originated." *Id.* at 1415.

Nevertheless, *Rosolowski* found: "Irrespective of the allegedly untraceable domain names herein, the identity of the sender was readily ascertainable from the body of the emails; therefore, Plaintiffs failed to state a cause of action against Guthy for misrepresented header information under Section 17529.5, subdivision (a)(2)." *Id.* at 1414–15. The decision went on to conclude that because the emails "provided a hyperlink to the sender's website, and provided an unsubscribe notice as well as a physical address . . . Plaintiffs cannot plausibly allege that Guthy attempted to conceal its identity." *Id.* at 1416.

So too here. All but seven of the emails at issue in our case provided a hyperlink to the advertiser's website, an unsubscribe link, and a mailing address for the sender. The sender's identity could thus be readily ascertained from the bodies of the emails. The emails were not

6

materially falsified, misrepresented, or forged and met the criteria that the *Rosolowski* standard requires. Email 4 and Emails 20–25 constitute the exceptions, inasmuch as Email 4 did not provide an unsubscribe link or a mailing address and Emails 20–25 failed to provide active hyperlinks. They will be addressed later in this order. Wagner does not dispute that the emails contained this identifying information. He provides no evidence to rebut the fact that the senders' names appeared in the bodies of the emails and that the opt-out link, website information, and mailing addresses led to the emails' senders. Rather, Wagner attempts to create disputes of material fact in the following ways.

*First*, Wagner argues that the emails' domain names, such as "Dream Car," "Favorite Snacks Survey," and "Radiology Courses," were all generic and thus violated Section 17529.5. The case law clearly rejects this theory. The California Supreme Court held that merely because a domain name is "random, varied, garbled, and nonsensical" does not mean that the email constitutes a violation of Section 17529.5(a)(2). *Kleffman*, 49 Cal. 4th at 346–47. Rather, what matters is whether the sender's identity can be readily ascertained from the body of the email. Wagner provides no evidence that through the hyperlink to the sender's website, the active unsubscribe link, and the physical mailing address, the sender's identity could not be readily ascertained. The only evidence Wagner supplies relates to a single letter he sent to a Michigan address that he claims belonged to AgreeWizard LLC, which went unanswered (Wagner Decl. ¶ 52). None of the emails' bodies, however, provided a Michigan mailing address and it is unclear where Wagner got this Michigan address or what it proves. The sending of a single letter to an address that did not appear in any of the emails at issue does not create an issue of material fact as to whether the emails' senders could be readily ascertained from the information contained in the emails' bodies.

*Second*, Wagner takes issue with the corporate legitimacy of the entities that sent him the emails. Primarily, he asserts that several of the entities' LLC agreements "were fraudulently backdated [sic] to in attempt to make it look as though they were created in 2011–2012" (Opp. 4). Wagner provides no real evidence for this claim — merely conspiracy theories surrounding Gary Lee, the executive who signed the FuturesDrive and Opportunity Central LLC agreements. He

argues that because Lee referred to FuturesDrive and Opportunity Central as "brands" in a 2013 declaration, the LLC agreements must have been fraudulently backdated (Wagner Exh. C). These bare suspicions and accusations of fraudulent backdating do not create an issue of material fact as to whether the emails were traceable to their senders via the information contained in their bodies.

Wagner then argues that even if defendants did not fraudulently backdate the LLC agreements for the various entities, four of the emails were sent before the entities that sent them became LLCs. Paths Direct, which sent Emails 7, 10, and 11 in May 2012, did not become a Delaware Series LLC until June 10, 2012. Achieve Opportunities, which sent Email 15 in May 2012, did not become a Delaware Series LLC until June 11, 2012. Instead, Wagner asserts that these entities constituted "brands" rather than LLCs when they sent the emails, and thus there is an issue of fact as to whether the emails contained materially falsified, misrepresented, or forged header information (Opp. 9; Balsam Decl. ¶¶ 5–6, Exhs. C–D). Not so. Whether these entities existed as formal LLCs or brands when defendants sent the emails was not a material fact. Under *Rosolowski*, the test is whether the email's body provided sufficient information such that the recipient could readily ascertain the sender. Again, Wagner cannot dispute that these four emails contained the hyperlink, unsubscribe link, and mailing address required by *Rosolowski* and provides no evidence to suggest that any of this information was false or misrepresented.

*Third*, Wagner argues that because he could not trace the domain names in the from lines of the emails to their senders, the emails violated Section 17529.5(a)(2). He states that in some of his attempts to trace the domain names, his search led to mailing addresses that were different than those contained in the bodies of the emails. *Rosolowski* explicitly rejected this argument. As stated above, that decision held (230 Cal. App. 4th at 1416) (emphasis added):

> We conclude a header line does not misrepresent the identity of the sender merely because it does not identify the official name of the entity which sent the email, or merely *because it does not identify an entity whose domain name is traceable* via a database such as WHOIS, *provided* the sender's identity is readily ascertainable from the body of the email.

By supplying a hyperlink to the sender's website, a mailing address, and an unsubscribe link, each of the emails' bodies provided sufficient information such that the senders' identities could be readily ascertained.

8

In making the argument regarding the traceability of the emails' domain names, Wagner relies on *Balsam v. Trancos*, *Inc.*, 203 Cal. App. 4th 1083 (2012). In *Balsam*, "the domain names were not traceable to the actual sender. The header information was falsified or misrepresented because Trancos deliberately created it to prevent the recipient from identifying who sent the message." *Id*. at 1098. There, the defendant conceded that it deliberately tried to hide its identity and provided no identifying information in the bodies of the emails it sent. Moreover, the *Balsam* decision explicitly "express[ed] no judgment about other circumstances in which (1) header information might be falsified or misrepresented for purposes of the statute, or *(2) the presence of other information identifying the sender of the body of the email could affect liability under the statue.*" *Id*. at 1101 (emphasis added).

The facts of our case are distinguishable from those in *Balsam*. Here, the emails contained identifying information in their bodies, as described above. Not so in *Balsam*. Moreover, in *Balsam*, the defendant explicitly conceded that it deliberately tried to hide its identity by scrambling the domain names. No such concession exists in our case, and the identifying information defendants provided in the body of the emails suggests that they were not trying to conceal the senders' identities.

*Fourth*, Wagner asserts that even if the case law rejects his domain name traceability argument, several of the emails did not provide sufficient identifying information in their bodies, as required under *Rosolowski*. Wagner states that Email 5 had neither a mailing address nor an unsubscribe link.. He also states Emails 14–17 and 19 failed to adequately identify advertisers in their bodies.

A viewing of the emails themselves demonstrates that Wagner's assertions are simply false. Email 5 clearly stated: "This is an email promotion. Our address is 221 N. Hogan Street #386 Jacksonville, FL 32202. To be removed from future mailings, please follow this link." Emails 14–17 clearly identified the advertiser as "D.P.C., 1357 Broadway, #553 New York, NY 10018." Email 19 clearly identified the advertiser as "Golden Meadow Marketing, 601 South Figueroa Street, Suite 4050, Los Angeles, CA, 90017."

9

*Lastly*, Wagner argues that *Rosolowski* was wrongly decided. He states that the *Rosolowski* court "did not understand the facts or technology of email marketing, which created errors that ripple throughout the ruling" (Opp. 16). He goes on to argue that *Rosolowski* "violates unequivocal legislative intent," was "confused," and is "overbroad and violates public policy." If we were writing on a clean slate, the undersigned judge would favor more honesty in email advertising than required by *Rosolowski*. Nevertheless, it must be followed as the best statement of the law in California, (even though it is from an intermediate appellate court and not the California Supreme Court). *See California Pro-Life Council*, 238 F.3d at 1099.

For the reasons stated above, defendants' motion for summary judgment for emails 1–3 and 5–19 is **GRANTED**.

### A. Emails 4 and 20–25.

Unlike the other emails at issue in our case, Email 4 did not contain the requisite identifying information in its body. It provided neither an unsubscribe link nor a mailing address for the sender. Furthermore, the email's domain name could not be traced via a WHOIS search.

Defendants argue that the email could be traced using other means. It came from "Cobra Health," Cobra.Health@warriorwsos.info, and included a link to Cobra's website in the body that included "about us," "terms of service," and "privacy policy" sections. The body of the email, however, did not contain an unsubscribe link or a mailing address, as required by *Rosolowski*.

Emails 20–25 did not contain active unsubscribe links or active hyperlinks to the sender's website. In fact, the bodies of these emails contained jumbled up sequences of letters, characters, and numbers that any frequent email user is all too familiar with. These character sequences were not underlined or colored, and gave no indication that they were active hyperlinks.

At oral argument, defendants asserted that the emails Wagner received appeared differently on his computer screen than they appeared in the printed versions Wagner submitted with his opposition (Wagner Exhs. A20–A25). Defendants, however, conceded that they had no records to back up this claim. Thus, there exists a material factual dispute as to whether Emails 20–25 actually contained active hyperlinks and unsubscribe links.

Defendants' motion for summary judgment of Emails 4 and 20–25 is **DENIED.**

### 4. CLAIMS REGARDING THE EMAILS' SUBJECT LINES.

Wagner claims that nine of the emails' subject lines violated both Sections 17529.5(a)(2) and 17529.5(a)(3) of the California Business and Professions Code. As stated above, Section 17529.5(a)(2) covers emails that contain materially "falsified, misrepresented, or forged header information." Section 17529.5(a)(3) makes an email unlawful if it "has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."

As the California Supreme Court stated in *Kleffman*, header information is defined as "the source, destination, and routing information attached to an electronic mail message, including the originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message." 49 Cal. 4th at 340. This definition clearly does not include an email's subject line and the subsequent section of the statute explicitly covers subject lines. Thus, Wagner may only make claims regarding the emails' subject lines under Section 17529.5(a)(3).

Only two decisions have thoroughly evaluated emails' subject lines under Section 17529.5(a)(3). In *Hypertouch Inc. v. ValueClick Inc., et. al.*, 192 Cal. App. 4th 805, 838 (2011), the California Court of Appeal held:

> If a subject line creates the impression that the content of the email will allow the recipient to obtain a free gift by doing one act (such as opening the email or participating in a single survey), and the content of the email reveals that the 'gift' can only be obtained by undertaking more onerous tasks (such as paying money for the gift or agreeing to partake in other offers), the subject line is misleading about the contents of the email.

*Rosolowski*, the other decision to address Section 17529.5(a)(3), however, rejected *Hypertouch's* reasoning in regards to subject lines (230 Cal. App. 4th at 1418):

> Unlike *Hypertouch*, we view an email's subject line in conjunction with the body of the email, rather than in isolation. We conclude the subject lines' offer of a free gift was not likely to mislead a recipient, acting reasonably under the circumstances, about a material fact . . . because the email advertisements made it clear that a free gift was conditional upon a purchase. Accordingly, Plaintiffs failed to state a cause of action under Section 17529.5, subdivision (a)(3).

11

Nevertheless, under either the *Hypertouch* or *Rosolowski* standard, an issue of material fact exists in our case as to whether the subject lines at issue violated Section 17529.5(a)(3). Emails 5–13 contained the following six different subject lines:

- "Fruit or Chocolate? Take Our $25 Snack Giftcard Survey" (Emails 5 and 8)
- "Receive a $20 giftcard Christopher Wagner. Complete our survey" (Emails 6 and 7)
- "AntiBullying Survey: Claim your $20 Dunkin Donut Giftcard" (Emails 9 and 10)
- "Claim a $25 Giftcard for completing our Fling Survey" (Email 11)
- "Claim a $25 Giftcard for completing our Snacks Survey" (Email 12)
- "Receive a $20 DD giftcard for completing our survey" (Email 13)

Additionally, in response to these emails, Wagner asserts that he went to the OnDemandResearch.com website, which stated: "To get your Prize, you must complete the survey page and continue through the special offers for sampling and purchasing products of interest, in addition to completing all other requirements of the Prize" (Balsam Decl. ¶ 14; Exh. I).

The bodies of Emails 5, 6, 8, 11 and 12 contained no clarifying information regarding the offer in the subject line. They merely reiterated that the recipient could receive a free gift card by taking the survey. The bodies of Emails 7, 9, 10, and 13 stated: "To receive your gift: 1) Register 2) Complete our survey & sponsor offers 3) Verify & confirm your information." The fact that the On Demand Research website stated that additional steps needed to be taken to get the gift card conflicted with the bodies of these emails. Thus, an issue of fact remains as to whether the subject lines were materially misleading under Section 17529.5(a)(3).

Defendants argue that our facts are distinguishable from those in *Hypertouch* because in that decision, the subject lines created the impression that simply opening the email itself would allow the recipient to obtain a free gift, without any additional steps. Here, defendants argue, the

12

subject lines were clear that the recipient must complete a survey to receive the gift and that this constituted a generally accurate description of the offer (Reply 6).

This argument falls flat for several reasons. *Hypertouch* stated that if a subject line indicates that the recipient can "obtain a free gift by doing one act (such as opening the email or participating in a single survey)," and the recipient actually must do more to obtain the gift, then the subject line violates Section 17529.5(a)(3). *Hypertouch*, 192 Cal. App. 4th at 838. Defendants' characterization of *Hypertouch* is simply inaccurate. *Hypertouch* addressed the specific fact pattern presented in our case, where the subject lines stated that the recipient could obtain a gift by simply filling out a survey. Moreover, defendants' characterization that the bodies of the emails provided an accurate description of the offers is also in dispute. Wagner has provided evidence, via defendants' own website, indicating that a recipient needed to walk through several hoops before receiving his gift. Whether these subject lines were likely to mislead a reasonable recipient about a material fact regarding the offer will have to be determined by the jury.

Defendants' motion for summary judgment of plaintiff's Section 17529.5(a)(3) claims, for the nine emails discussed above, is **DENIED**.

### 5. REDUCTION IN STATUTORY DAMAGES.

California Business and Professions Code Section 17529.5(b)(1)(B) states:

> A person or entity bringing an action pursuant to subparagraph (A) may recover either or both of the following: (i) Actual damages. (ii) Liquidated damages of one thousand dollars ($1,000) for each unsolicited commercial email advertisement transmitted in violation of this section, up to one million dollars ($1,000,000) per incident.

Section 17529.5(b)(2), however, states:

> If the court finds that the defendant established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of this section, the court shall reduce the liquidated damages recoverable under paragraph (1) to a maximum of one hundred dollars ($100) for each unsolicited commercial e-mail advertisement, or a maximum of one hundred thousand dollars ($100,000) per incident.

13

Defendants argue that they had established and implemented such procedures when they sent the emails at issue and, thus, any statutory damages should be limited to $100 per email. In support of this contention, defendants offer the declaration of Steven Vine, Spire Vision's current General Counsel. Vine's declaration generally describes Spire Vision's and its affiliates' compliance procedures and states "SVF and its partners are not allowed to use false or misleading header information in email communications. . . . [and] are not allowed to use deceptive subject lines in email communications" (Vine decl. ¶¶ 69–70).

Vine, however, wrote his declaration in the present tense. For our purposes, it is irrelevant whether defendants currently have sufficient compliance procedures in place. What matters is whether defendants had established and implemented sufficient compliance procedures when defendants sent the emails at issue. In their reply brief, defendants submitted Vine's supplemental declaration, essentially putting his original declaration in the past tense. This is insufficient and did not give plaintiff ample opportunity to respond to it. Moreover, Vine did not join Spire Vision until 2013, further calling into question his ability to describe the specifics of defendants' compliance procedures in 2012 (Balsam Decl. ¶¶ 8, 10; Exhs. E, G ,H). Thus, there remains an issue of fact as to whether defendants had implemented and established sufficient compliance procedures when they sent the emails at issue.

Defendants' motion to reduce any statutory damages to $100 per email is **DENIED**. This is without prejudice to proof at trial justifying a reduction.

**6. SECTION 17538.5 CLAIM.**

Wagner alleges that Email 12 violated California Business and Professions Code Section 17538.5. This provision, however, is a criminal statute that does not provide any private right of action. It states that "[a]ny violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both."

Wagner relies on *Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 360 (1995), to support his argument that Section 17538.5 provides a private right of action. That decision, however, is completely irrelevant. *Robertson* was a defamation case that held, in the context of defamation,

14

1  that a speaker could use the word "fine" to include civil penalties without creating an actionable
2  falsehood. Nowhere did that decision address Section 17538.5. Moreover, no court has ever held
3  that Section 17538.5 provides a private right of action.

4  Defendants' motion for summary judgement on plaintiff's Section 17538.5 claim is
5  **GRANTED**.

### DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT TESTIMONY

Defendants also move to exclude the expert testimony of plaintiff's expert witnesses Christopher Wagner (plaintiff), Steve Atkins, Chris Oaks, and John Levine. The case management order required the parties to "serve a list of issues on which it will offer any expert testimony in its case-in-chief" by November 21, 2014 (Dkt. No. 38). Plaintiff produced nothing regarding expert reports until December 19, four weeks later. Defendants thus argue that plaintiff's expert report was untimely and should be excluded.

Defendants submitted this motion along with their summary judgment motion on January 22. Plaintiff failed to file any opposition to defendants' expert testimony motion. Because plaintiff served his expert disclosure four weeks late, and failed to submit any opposition, defendants' motion to exclude the expert testimony of Wagner, Atkins, Oaks, and Levine is **GRANTED**.

### PLAINTIFF'S MOTION FOR SANCTIONS

In the introduction to plaintiff's opposition, he alludes that defendants should be sanctioned for wasting plaintiff's time and resources with the present summary judgment motion. There are no further discussions of sanctions in plaintiff's brief. Plaintiff's motion for sanctions is **DENIED**.

### CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion for summary judgment of plaintiff's California Business and Professions Code Section 17529.5(a)(2) claims, for Emails 1–3 and 5–19, is **GRANTED**. Defendants' motion for summary judgment of plaintiff's Section 17529.5(a)(2) claims for Emails 4 and 20–25 is **DENIED**. Defendants' motion for summary judgment of

15

plaintiff's Section 17529.5(a)(3) claims, for Emails 5–13, is **DENIED**. Defendants' motion for a reduction in statutory damages pursuant to Section 17529.5(b)(2) is **DENIED**. Defendants' motion for summary judgment of plaintiff's Section 17538.5 claim is **GRANTED**. Defendants' motion to exclude plaintiff's expert testimony is **GRANTED**. Plaintiff's motion for sanctions is **DENIED**. There are thus sixteen emails still at issue in our case, Emails 4–13 and 20–25.

The pretrial conference will be held as scheduled at **TWO P.M. ON MARCH 11, 2015.** A jury trial will commence at **7:30 A.M. ON APRIL 13, 2015.**

**IT IS SO ORDERED.**

Dated: February 27, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

16